Melinda Bird, SBN No. 102236
melinda.bird@disabilityrightsca.org
Robert Borrelle, SBN No. 295640
Robert.borrelle@disabiiltyrightsca.org
Lauren Lystrup, SBN No. 326849
Lauren.Lystrup@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Tel.: (213) 213-8000
Fax: (213) 213-8001

David W. German, SBN No. 252395
VANAMAN GERMAN LLP
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Tel.: (818) 990-7722
Fax: (818) 501-1306
dgerman@vanamangerman.com

*Attorneys for Plaintiffs*
ADDITIONAL COUNSEL LISTED ON NEXT PAGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.E by and through her *guardian ad litem* A.J. and L.N. by and through his *guardian ad litem* K.N., on behalf of themselves and a class of those similarly situated; and DISABILITY RIGHTS EDUCATION & DEFENSE FUND, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; and CALIFORNIA DEPARTMENT OF EDUCATION, <br><br> Defendants | CASE NO.: 4:21-cv-7585 <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF:** <br><br> Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. <br><br> Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. |

ADDITIONAL COUNSEL CONTINUED FROM PREVIOUS PAGE

Claudia Center, SBN No. 158255
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline St, Ste 210
Berkeley, CA 94703
Tel: (510) 644-2555
Fax: (510) 841-8645
ccenter@dredf.org

*E.E. et al. v. State of California, et al.,* Case No.:                                Complaint

**INTRODUCTION**

1.     This is a civil rights complaint concerning discrimination by the State of California against its students with disabilities. California has adopted a new state law – Assembly Bill 130 - that sharply limits alternatives to in-person classes, leaving families whose children are at higher risk from COVID-19 with only one option: Independent Study. Alarmingly, families of students with disabilities have found that California's Independent Study program is effectively closed to them because of the program design or absence of needed accommodations.

2.     The new State statute requires school districts to automatically enroll non-disabled students in distance learning through Independent Study if their parents determine that their "health would be put at risk by in-person instruction." Cal. Educ. Code § 51745(a)(6). In contrast, students with disabilities face multiple hurdles in attempting to access the same program.

3.     Plaintiff L.N. is nine years old and has multiple disabilities, including a severely compromised immune system and chronic lung disease that put him at much higher risk from exposure to COVID-19. Nonetheless, he was able to access his educational program last year safely and effectively through distance learning. When his school started in August 2021, his mother asked for distance learning through Independent Study. However, the new State law bans students who are in special education, such as L.N., from participating in Independent Study "unless the pupil's individualized education program [IEP] specifically provides for this participation." Cal. Educ. Code § 51745(c). L.N. and his mother are still waiting for the school district to convene an IEP meeting to consider his eligibility for Independent Study or any other alternative to in-person classes. In the interim, school district personnel told L.N.'s mother that he is unlikely to qualify for Independent Study, that they will not provide any of his special education services and supports even if he were to qualify, and until then, he is expected to attend in-person despite his health conditions. To protect his health, he remains at home but has already missed a month of school.

4.     Plaintiff E.E. is six years old and has Down syndrome and associated medical

*E.E. et al. v. State of California, et al.,* Case No.:                                    Complaint

conditions that make her highly susceptible to infection and at heightened risk of serious complications if she is exposed to COVID-19. Her mother requested Independent Study for both E.E. and her twin sister, who is typically developing. The school district enrolled E.E.'s non-disabled sister immediately. E.E. had to wait several weeks with no instruction until the school could convene an IEP meeting because of Cal. Educ. Code § 51745(c). When the IEP team finally met, school district staff said E.E. would not be able to access Independent Study successfully due to her need for significant adult support, and that regardless, they would only provide her with the support services in her IEP if she attended in person, not through Independent Study. E.E. is still at home with no educational program, even though school started more than a month ago.

5.      Other disabled students have been allowed to enroll in Independent Study, but only if they sign a written waiver, agreeing to give up their right to the accommodations and supports they need to learn. As a result of the new state law, California's state education system denies disabled students the alternative to in-person classes that it provides to other students, and denies then accommodations they need in the Independent Study program.

6.      The exclusion of students with disabilities from access to distance learning through Independent Study constitutes unlawful discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Disabled students and their families now face an intolerable choice: to attend in-person classes (despite the danger of the Delta Variant to vulnerable children), or remain at home without access to their schools and the educational services they need to learn and succeed.

7.      Defendants State of California, the State Board of Education and the California Department of Education ("CDE") are collectively responsible for implementing California's public education program. By adopting and implementing the new Independent Study statute, they are administering the statewide public education program in a manner that discriminates against disabled students, and perpetuates discriminatory actions by local school districts, which are their agents and contractors.

8.      Plaintiffs, and thousands of similarly situated students with disabilities, need urgent relief in the form of a Temporary Restraining Order and Preliminary injunction. With the spread of the Delta Variant, in-person classrooms can quickly and silently become hotbeds of infection. Students under twelve years of age cannot be vaccinated, and face increased risk of illness from the Delta Variant than from earlier forms of COVID-19. Students who are medically compromised risk debilitating illness from exposure. Family members who are medically compromised also face life-threatening risks if students attend in-person classes and contract COVID. But these students also face serious risks if their families refuse to send to them to in-person classes. They will lose precious instructional time and risk truancy citations if they fail to attend. If they attempt to participate in Independent Study without the accommodations they need, they will not be able to access the curriculum and will be effectively excluded from full and equal access to their educational program.

9.      During the 2020-21 school year, the students with IEPs had "distance learning plans" that reflected how the services in their IEPs would be provided during the COVID-19 pandemic. This is the status quo – the last uncontested state between the parties in this matter. While not perfect, many students, including Plaintiffs E.E. and L.N., adapted and were able to make educational progress during distance learning. The pandemic is not over. For a significant subset of students with disabilities, being forced to attend in-person classes would put them at serious risk of harm. Allowing them to be denied access to any distance learning program, or forcing them to accept an online program with few or none of the services they require to access their education, ensures that the very students who have been harmed the most by the pandemic are now put in a position which will inevitably exacerbate their learning loss.

10.      Plaintiffs seek a temporary restraining order and preliminary injunction to restore the status quo by (a) enjoining the requirement in the new Independent Study statute, Cal. Educ. Code § 51745, that students with disabilities must obtain prior approval from their IEP team, and (b) ordering Defendants to ensure that disabled students receive the accommodations they require in Independent Study, including implementation of their existing Distance Learning Plans. Only such an order will protect the health and safety of the Student Plaintiffs and enable

*E.E. et al. v. State of California, et al.,* Case No.:                                    Complaint

them and the putative class to continue their education until they are safe to resume in-person classes. Plaintiffs also seek a permanent injunction and declaratory relief against all Defendants.

## JURISDICTION AND VENUE

11.     This action for declaratory and injunctive relief arises under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise from federal questions under the Constitution or laws of the United States. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b). The actions and omissions that are the subject of this complaint took place within the Northern District, Plaintiff Disability Rights Education and Defense Fund is located in the Oakland Division of the Northern District, and the Attorney General for the Defendant State of California has an office in Oakland.

## PARTIES

14.     Plaintiff E.E. is six years old and lives in California with her family. She has Down syndrome and associated medical conditions, and qualifies as an individual with a disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. She also qualifies for special education services on the basis of intellectual disability and has an Individual Education Plan (IEP). Plaintiff brings this action through her parent and guardian ad litem, A.J.

15.     Plaintiff L.N. is nine years old and lives in California with his family. He has multiple disabilities and qualifies as an individual with a disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. He also qualifies for special education services on the basis of Other Health Impairment and Speech or Language Impairment. He is in the fourth grade and has an IEP. He brings this action through his parent and guardian ad litem, K.N.

*E.E. et al. v. State of California, et al.*, Case No.:                    Complaint

16.     Plaintiff Disability Rights Education and Defense Fund (DREDF), founded in 1979, is a national nonprofit civil rights law and policy center located in Berkeley, California, dedicated to protecting and advancing the civil rights of people with disabilities. DREDF is directed by individuals with disabilities and parents who have children with disabilities, and pursues its mission through education, advocacy and law reform efforts. As a Parent Training and Information Center funded by the U.S. Department of Education, DREDF serves families of children with disabilities and disabled young adults in 33 California counties. The Parent Training Institute provides free assistance to families to help them understand their education rights, support their participation in special education processes at public schools, and resolve problems. DREDF provides training, technical assistance through phone and email, and referrals to support families on securing educational rights and entitlements under laws including the ADA, the Individuals with Disabilities Education Act (IDEA), and Section 504 of the Rehabilitation Act. DREDF also responds to calls and emails from across the state.

17.     Since the amended Cal. Educ. Code § 51745 went into effect, Plaintiff DREDF has been forced to divert organizational resources to respond to a substantial number of contacts from families with children with disabilities who are heightened risk of complications if exposed to COVID-19. DREDF staff have prepared "know your rights" materials about Independent Study, but more has been required. DREDF has fielded increased numbers of calls from families are struggling to find a placement for their student with a disability that meets their student's educational needs and keeps them safe from COVID-19 and its effects. These families are reporting that they are being delayed and denied access to Independent Study based on disability, and are being told that they must waive educational rights to access the program. The families with students with disabilities who are contacting DREDF about their problems finding alternatives to in-person classes are DREDF's constituents.

18.     Defendant State of California is the legal and political entity with plenary responsibility for educating all California public school students, including the responsibility to establish and maintain the system of common schools and a free education, under Article IX, section 5 of the California Constitution, and to assure that all California public school students

*E.E. et al. v. State of California, et al.,* Case No.:                        Complaint

receive their individual and fundamental right to an equal education, under the equal protection clauses of the California Constitution, Article I, section 7(a), and Article IV, section 16(a).

19.     Defendant State Board of Education and its members are responsible for determining the policies governing California's schools and for adopting rules and regulations for the supervision and administration of all local school districts. Pursuant to California Education Code sections 33030-32, the State Board of Education is required to supervise local school districts to ensure that they comply with State and federal law requirements concerning educational services.

20.     Defendant California Department of Education ("CDE") is the department of California's state government responsible for administering and enforcing laws related to education. Cal. Educ. Code § 33308. Pursuant to California Education Code sections 33300–16, CDE is also responsible for ensuring that children with disabilities in California receive a free appropriate public education ("FAPE"). 20 U.S.C. §§ 1412(a)(1)(A), (a)(11)(A).

## CLASS ALLEGATIONS

21.     Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Student Plaintiffs bring this action for injunctive and declaratory relief on their own behalf and on behalf of all similarly situated students. Student Plaintiffs seek to represent the following class in this matter, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), as follows: All California students who, now or in the future, have an Individual Education Plan and whose parent, guardian or education rights holder has determined that in-person instruction would put the student at risk.

22.     This action is an appropriate class action under Rule 23(b)(2), as the Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate.

23.     The members of the Class are so numerous that joinder of all such persons is impracticable. Approximately 721,000 students in California have disabilities and make up 11.7% of the school population. CDE California School Dashboard, https://www.caschooldashboard.org/reports/ca/2020.

*E.E. et al. v. State of California, et al.,* Case No.:                              Complaint

24.     Individual action by class members is impracticable. Class members face significant barriers to asserting their rights, including misinformation and intimidation from their school districts and their inability to join the State Defendants and to assert ADA claims in administrative hearings.

25.     There are questions of law and fact common to the Class identified above, namely:

A.   By limiting the type of distance learning programs which Local Educational Agencies may offer to a single format which is, by definition, inaccessible to most students with disabilities, the statute at issue discriminates against all class members.

B.   All members of the proposed class have been denied timely enrollment in Independent Study programs because of the requirement that an IEP be convened prior to allowing them to enroll.

C.   All members of the proposed class are denied equal access to Independent Study programs because the services, supports, and accommodations which they require to access them are being denied.

D.   All members of the proposed class have been denied the ability to access a public education program safely and in a manner that protects them from undue risk of adverse health consequences, which is equal to that afforded to their non-disabled peers.

26.     The claims of the Student Plaintiffs are typical of the claims of the Class identified above, in that they are students with a disability and have an IEP and their parent or guardian has determined that in-person instruction will place them at risk.

27.     The Student Plaintiffs are adequate class representatives because they suffer the same injury as other class members. They will fairly and adequately protect the interests of the Class. The Student Plaintiffs do not have any interests antagonistic to the members of any Class. The relief sought by Plaintiffs will inure to the benefit to the members of each Class.

*E.E. et al. v. State of California, et al.,* Case No.:                            Complaint

28.     Plaintiffs' counsel are experienced, skilled, and knowledgeable about special education, civil rights litigation, disability rights, and class action litigation.

29.     Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants or could be dispositive of the interests of the other members or substantially impair or impede the ability to protect their interests.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. A multiplicity of suits with consequent burden on the courts and Defendants should be avoided. It would be impossible for all class members to intervene as parties in this action.

## STATEMENT OF FACTS

31.     In 2020, at the beginning of the COVID-19 pandemic, California enacted new statutes to ensure that school districts offered students access to distance learning. Cal. Educ. Code § 43500 et seq. Under this program, "Distance learning shall include … [a]cademic and other supports designed to address the needs of pupils who are not performing at grade level, or need support in other areas, such as English learners, *pupils with exceptional needs*, pupils in foster care or experiencing homelessness, and pupils requiring mental health supports." *Id.* § 43503(b)(3)(emphasis added).

32.     Consequently, in the 2020-21 school year, students with IEPs had "Distance Learning Plans" that explained how their school district would provide the supports and related services they needed to learn. Some disabled students, such as Plaintiffs E.E. and L.N., adapted to distance learning and made educational progress.

33.     The distance learning provisions that California adopted in 2020 had a sunset date of June 30, 2021. *Id.,* § 43511.

34.     In July 2021, California adopted a new statute that allowed funding for distance learning only for students enrolled in the State's Independent Study program. Assembly Bill (AB) 130 (Chapter 44, Statutes of 2021), approved on July 9, 2021. The new statute provides

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

that Independent Study will be offered to students "whose health would be put at risk by in-person instruction, as determined by the parent or guardian of the pupil." Cal. Educ. Code § 51745(a)(6). No funding is available to school districts to provide distance learning other than through Independent Study.

35.     However, the new statute also provides that students with disabilities "shall not participate in independent study, unless the pupil's individualized education program [IEP] … specifically provides for that participation." Id. § 51745(c) (emphasis added). Cal. Educ. Code § 57149.5(a)(7) includes similar language: "An individual with exceptional needs, as defined in Section 56026, shall not participate in course-based independent study, unless the pupil's [IEP] developed pursuant to [the state special education statute] specifically provides for that participation."

36.     As the Delta Variant surged in California and the beginning of school approached, more parents and caregivers determined that their children were at risk from in-person classes. Due to the new state law, the only way to access the distance learning these families had in the 2020-21 school year was through Independent Study.

37.     Families of disabled children with IEP plans have faced multiple barriers to accessing distance learning through Independent Study. These include (a) an outright denial of Independent Study, (b) an offer of distance learning but without the services and accommodations that the student needs to learn and which were previously included in their distance learning plans, and (c) long delays in convening required IEPs that leave families in limbo for weeks and months.

**Plaintiffs and other similarly situated children are denied**

**the alternatives to in-person classes available to non-disabled students**

38.     Plaintiff E.E. is six years old and has Down syndrome, an intellectual disability with associated medical conditions. Her IEP provides extensive services such as a full-time behavior aide and speech, language and occupational therapy. E.E. has a twin sister who is typically developing and does not have a disability. Like many other children with Down syndrome, E.E. is at higher risk of health complications if exposed to COVID-19, so the twin's

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

1 mother, A.J., requested distance learning for both children. The school district approved

2 Independent study for her non-disabled twin, but required prior approval from E.E.'s IEP team.

3 At the IEP meeting, district staff said that E.E. would lose all her support services if she

4 enrolled in Independent Study. When A.J. protested that E.E. needed these to learn, school staff

5 said her only choice was to take E.E. to in-person classes, regardless of the risk. Because of this

6 impasse, E.E. has been home with no access to classes since school began. In contrast, her non-

7 disabled twin has been enrolled in Independent Study from the beginning.

8   39. Plaintiff L.N. is nine years old, and has developmental disabilities secondary to

9 significant medical conditions. He is at extreme risk of complications if he contracts COVID-

10 19. During the 2020-2021 school year, L.N. was able to safely access his educational program

11 through distance learning, and his mother believed this would continue in current school year.

12 But shortly before the school year began, she was informed that an IEP meeting had to be

13 convened prior to his enrollment and that, even if L.N. qualified for Independent Study, he

14 would not receive any of his special education services. A meeting was convened on the first

15 day of school but ended without the District making an offer of FAPE. District staff suggested

16 that K.N obtain a doctor's note authorizing Home Hospital Instruction for her son, but cautioned

17 that if approved, he would not receive any of his IEP services and only 1 hour a day of

18 instruction. To date, the school district has not offered a date to reconvene L.N.'s IEP, and has

19 not offered any form of interim instruction. School staff have also told K.N. that they expect her

20 son to attend school in person until his IEP is held, despite their acknowledgement that it is not

21 safe for him to do so because of his medical conditions.

22   40. On August 25, 2021, L.N.'s mother watched a virtual town hall and recorded

23 webinar from L.N.'s school district about Independent Study. District staff stated that students

24 with special needs were unlikely to qualify, but to request an IEP meeting to see if their child

25 was an exception to this general rule. School staff also said that none of the required IEP

26 meetings would be held prior to school starting, since the district had 30 days to convene the

27 IEP meeting after the start of school.

28 *//*

41.     Other similarly situated disabled students face the same barriers to distance learning as do the Student Plaintiffs. These children and their families are all constituents of DREDF and its special education advocacy.

a.  M.G. is 10 years old and in the 5th grade in a California school district. He has Down syndrome; his IEP provides educational supports, including access to an alternative curriculum, so that he was able to participate successfully in distance learning last year. M.G.'s disability and additional respiratory problems put him at higher risk of health complications if exposed to COVID-19, and he is too young to be vaccinated. His mother asked for distance learning as an alternative to in-person classes. The IEP team told her that the only option was Independent Study, but that they could not provide the alternative curriculum that her son needs as an accommodation. He attends the same school district as Plaintiff L.N., and his parent saw the same recorded webinar from their school district. District staff advised the public that Independent Study is the only alternative to in-person classes, but it is only for students who "can follow a general education curriculum" and who only need a general education teacher, not a special education teacher or other special education service provider. Without an agreement on distance learning, M.G. has been home for a month with no instruction or services.

b.  R.C. has autism and other medical conditions that place him at higher risk of health complications if exposed to COVID-19, so his parent wants him to continue in distance learning. He has an IEP and attended a non-public school last year that offered him an alternative curriculum and additional supports during distance learning. His school was ready to provide him distance learning when classes resumed in August 2021. Instead, the school district intervened, saying that R.C. could not continue in distance learning at the non-public school that had served him so well. His IEP team eventually met but refused to approve Independent Study or distance learning with her son's previous non-public

*E.E. et al. v. State of California, et al.,* Case No.:                                    Complaint

1    school. R.C. is still at home with no educational services.

2    c.    H.H. is 21 years old and has autism, cerebral palsy, and other disabilities. She

3    also has a tracheostomy tube for Tracheomalacia and chronic lung disease.

4    Through her IEP, she was able to participate successfully in distance learning last

5    year through a non-public school that offers an alternative curriculum. When she

6    started back to school remotely in August 2021, her classes were canceled after

7    one day. Her school explained that the state education agency would not allow

8    non-public schools (which are only for students with disabilities) to offer virtual

9    options. Later, the district agreed that H.H. could enroll in very limited distance

10   learning hours through Independent Study or Home Hospital but without any of

11   the services in her IEP. H.H. has now been at home with no educational

12   programing for almost a month.

13   d.    K.H. is 13 years old and has cerebral palsy, epilepsy, and additional disabilities.

14   She has a history of pneumonia due to her disabilities. She also struggles to

15   consistently wear a face mask. She is at increased risk of severe outcomes from

16   exposure to COVID-19. With adaptations to schoolwork and a 1-to-1 aide

17   paraeducator through her IEP, she was able to participate successfully in distance

18   learning last year. K.H.'s school district is offering independent study through a

19   virtual academy that allows students to customize remote classes. K.H.'s parent

20   wanted K.H.  to participate in the virtual academy with her nondisabled peers,

21   and requested an IEP. The IEP team refused to allow K.H. to enroll in the virtual

22   academy, and said that her only option is Home Hospital Instruction, a program

23   in which she would have no interaction with non-disabled peers.

24   e.    M.C. has Down syndrome and is immunocompromised, with a low count of

25   white blood cells and "infection-fighting" cells. With modifications to the

26   curriculum and a 1-to-1 aide, M.C. was able to participate successfully in

27   distance learning last school year. For 2021-22, the family requested distance

28   learning continue through Independent Study. When the district finally held an

14

*E.E. et al. v. State of California, et al.,* Case No.:                        Complaint

IEP meeting, the IEP team found that M.C. could not learn independently. The district refused to place him in Independent Study. At this point, M.C. has been in limbo for more than a month, without any access to direct educational instruction or services, waiting to see if the district approves any other alternative to in-person classes.

**The design of independent study excludes students**

**with intellectual and developmental disabilities.**

42.     The design of Independent Study excludes students who need adult assistance to learn. Many children with more severe disabilities fall into this category, including those intellectual and developmental disabilities such as autism and Down syndrome. According to data from Defendant CDE, more than 150,000 students are eligible for special education based on autism or intellectual disability. California Department of Education, "Special Education – CalEdFacts," https://www.cde.ca.gov/sp/se/sr/cefspeced.asp.

43.     For example, the IEP team for Plaintiff E.E. refused to approve her for Independent Study because she needs significant adult support to learn. Many school district IEP teams across the State are refusing to approve Independent Study on this basis for other similarly situated students.

44.     CDE supports this restriction in its Independent Study FAQ webpage, which states: "Pupils in independent study shall have the ability to work independently and maintain satisfactory educational progress" as defined under the California Education Code. Further, "success in independent study requires motivation and a strong commitment on the part of the student and, especially for a young student, his or her parents/guardians/caregivers. It also requires sufficient academic preparation to enable the student to work independently." California Department of Education, "Independent Study: Frequently Asked Questions," (updated August, 23, 2021), https://www.cde.ca.gov/sp/eo/is/faq.asp.

45.     Other districts also take the position that students who need adult assistance to learn are not eligible for Independent Study. One FAQ from a virtual "Office Hours" with the Los Angeles County Office of Education on September 7, 2021, states flatly: "Question: 'How

15

can a very involved student in a self-contained class requiring a one-on-one assistant "independently" be recommended for an independent study program?' Answer: 'The IEP team will need to make the determination. However, the term "Independent Study" implies that a child will be able to complete the work independently or with minimal adult help.'" Defendant CDE arranged this Office Hours session and endorsed this FAQ.

46.     Since Independent Study is the only way to access distance learning, this framework excludes students who need adult supports and other accommodations to learn, such as those with intellectual and developmental disabilities.

47.     The design of Independent Study also excludes disabled students who require a modified curriculum. Many students with moderate to severe disabilities, including many with intellectual and developmental disabilities, cannot access the State's "Common Core" general education curriculum without modifications, and receive instruction based on alternative achievement standards, or an "alternate curriculum." 34 C.F.R. § 200.1(d). Such curricula are "[d]esigned for students with the most significant cognitive disabilities." *Id*.

48.     However, the new California law on Independent Study provides that it is only "designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum." Cal. Educ. Code § 51745(a)(3).

49.     For example, Plaintiff L.N.'s large urban school district announced in a town hall meeting that Independent Study will only offer the general education curriculum without any special education services. Many other students with IEPs have been denied Independent Study because they are on an alternate curriculum. See, e.g., Paragraph 41, *supra*., re: M.C. (student with Down syndrome), R.C. (student with autism), H.H. (student with autism and cerebral palsy).

**No State guidance re: denial of accommodations in Independent Study**

50.     California's implementation of Independent Study permits school districts to enroll disabled students on the condition that they give up their rights to accommodations, including their rights under IDEA. Under the earlier distance learning statute in effect in the 2020-21 school year, each student had a distance learning plan that listed the accommodations

they needed. IEP teams are refusing to offer these same services through Independent Study. These IEP teams make a single offer of a Free and Appropriate Public Education ("FAPE"), which is through in-person classes only.

51.    If families insist that their child needs distance learning, districts are offering Independent Study but without the services listed in the student's IEP. In one-sided negotiations, districts often compel families to sign agreements waiving their rights under IDEA and the ADA as a condition of participating in Independent Study.

52.    Plaintiff DREDF and other groups that assist with special education issues have been contacted by and advised numerous families who report that they have been forced to sign such waivers.

53.    One local school board has developed a standard waiver agreement that it announced publicly as a "proposed solution" for students when the IEP team refuses to offer distance learning: "The agreement is that the student can participate in [the school district's] Virtual Academy (Independent Study), but the student's educational rights' holder waives all FAPE claims (since the IEP team determined Independent Study is not FAPE).[1]

54.    CDE has issued minimal guidance regarding Independent Study and students with IEPs. This guidance only reiterates that a student's IEP team must determine if Independent Study is appropriate. It fails to ensure that school districts offer disabled students equal access to distance learning through Independent Study or other means.

55.    CDE has endorsed the use of Home Hospital Instruction as an alternative "work-around" for disabled students. This is an option under California law for students who have a "temporary disability that makes attendance in the regular day classes or alternative education program impossible or inadvisable." Cal. Educ. Code § 48206.3. IEP teams can place students with disabilities on Home Hospital Instruction but only with a report from a medical provider "stating the diagnosed condition and certifying that the severity of the condition prevents the

---

[1] *See* Pleasanton USD Board materials, September 23, 2021, available from:
https://simbli.eboardsolutions.com/SB_Meetings/ViewMeeting.aspx?S=36030382&MID=8254,
https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=36030382&AID=168845&MID=8254

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

1   pupil from attending a less restrictive placement." Cal. Code Regs., tit. 5, § 3051.4(d).

2       56.     Home Hospital Instruction is not a workable alternative for students with IEPs

3   who are denied access to or accommodations in Independent Study. Plaintiff L.N.'s school

4   district held a virtual town hall in which school staff estimated that only forty children would

5   qualify for Home Hospital Instruction, out of more than 9,000 students with disabilities. School

6   staff also told L.N.'s mother that Home Hospital Instruction was only for students who would

7   miss school temporarily, for up to six weeks.

8       57.     Even those students approved for Home Hospital Instruction receive little

9   benefit. Most districts offer Home Hospital Instruction for only one hour per day, which is the

10  minimum required in the statute. Cal. Educ. Code § 48206.3(c)(1).  L.N.'s example is typical.

11  His school district told his parent that, even if he qualified, he would get only one hour of

12  instruction per day. School districts are also telling families that students in Home Hospital

13  Instruction will receive few or none of the services in the child's IEP. The mother of Plaintiff

14  L.N. was repeatedly told by school personnel that he will not be provided any of his special

15  education services and supports if he is approved for the Home Hospital program.

16      58.     Home hospital is also more isolating because it provides no opportunity for

17  interaction with nondisabled peers. For example, the school district where student K.H. attends

18  has arranged for a "Virtual Academy" for the many students who are choosing Independent

19  Study. The IEP team for student K.H. would not approve the Virtual Academy and instead

20  referred her to Home Hospital Instruction. Her mother has not agreed, because Home Hospital

21  does not provide the opportunity for interaction with nondisabled peers that the virtual academy

22  does. Interaction with friends and peers is critical to emotional and social growth for children

23  with disabilities.

24                    **No rationale for giving disabled students fewer protections**

25                  **in Independent study, versus distance learning or quarantines**

26      59.     The State treated students with disabilities far better during distance learning and

27  in emergency quarantines, both of which mandate special education rights. From March 2020-

28  June 2021, the State guaranteed that students with disabilities could participate in distance

18

learning with special education and related services required by the student's IEP. Cal. Educ. Code § 43503(b)(4); Cal. Educ. Code § 43511(b). The State also required all IEPs include a plan for service delivery in the event of qualifying emergencies where schools cannot deliver services in person. Cal. Educ. Code § 56345(a)(9).

60.     Now, the State requires that students with disabilities who quarantine may participate in Independent Study and must have access to their distance learning emergency plan. Cal. Educ. Code § 46393. This already-existing distance learning system for quarantined students demonstrates that it is a reasonable modification to provide distance learning to all students with disabilities. There is no justifiable rationale for denying this to students who are not quarantined but still need distance learning to ensure their health and safety from the pandemic.

**Discriminatory delays in accessing distance learning**

61.     Disabled students also face discriminatory delays in enrollment. Such delays are inevitable given that the Independent Study law requires that an IEP team be convened to consider the request for Independent Study before any student with an IEP can be enrolled. This process can take up to 30 days and has caused many students with disabilities to miss the first weeks of school. Some students are still awaiting an IEP team meeting, more than a month after the start of school. Non-disabled students were permitted to register immediately, did not face this delay, and were not denied an education while waiting for a meeting. For students who were permitted by their IEP teams to enroll in Independent Study, this built-in delay resulted in disabled students registering for Independent Study later than non-disabled students, thereby increasing the odds that they would end up on waiting lists for access to Independent Study.

62.     In addition, with Independent Study, students do not have the benefit of "stay put," the IDEA provision that enables students to remain in their placement until a dispute is resolved. The new law explicitly bans students from participating in Independent Study until they have an IEP that "specifically provides for that participation." Cal. Educ. Code § 51745(c).

//

//

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

**Plaintiffs will suffer irreparable injury**

63.     The Student Plaintiffs, DREDF constituents and other similarly situated children face irreparable injury from Defendants' actions if they fail to attend in-person classes – this can include truancy citations and hearings, loss of educational progress and isolation from their peers.

64.     However, attending in-person classes is an even greater threat. The Student Plaintiffs and other similarly situated students have underlying or associated medical conditions that place them at much higher risk from a COVID-19 infection. "All people with serious underlying chronic medical conditions like chronic lung disease, a serious heart condition, or a weakened immune system seem to be more likely to get severely ill from COVID-19," according to the U.S. Centers for Disease Control & Prevention (CDC).[2] The Student Plaintiffs and others profiled here display all these characteristics. Many children, such as Plaintiff E.E., have Down syndrome and are at risk of serious, life-threatening complications from COVID-19.[3] About half of all children with Down syndrome have heart defects that also diminish lung capacity.[4] Other students who need Independent Study have asthma and lung disease. According to the CDC, people with moderate to severe asthma are also more likely to get severely ill from COVID-19.[5]

65.     A return to in-person classes poses a serious risk of infection for these students, many of whom are too young to be vaccinated. Unfortunately, schools across the state continue to experience COVID-19 outbreaks and exposure of thousands of students statewide.[6] The risk

---

[2] CDC, "COVID -19 Information and Resources," https://www.cdc.gov/ncbddd/humandevelopment/covid-19/people-with-disabilities.html.
[3] *Id.*
[4] National Down Syndrome Society, "The Heart and Down Syndrome," https://www.ndss.org/resources/the-heart-down-syndrome (heart defects in children with Down syndrome lead to narrowed arteries in the lungs and increased pressure and constriction of blood flow).
[5] CDC, "COVID -19 Information and Resources," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[6] *See, e.g.,* Los Angeles Times, "Coronavirus outbreaks in L.A. schools increase," September 2, 2021, https://www.latimes.com/california/story/2021-09-02/la-county-coronavirus-outbreaks-increase-in-l-a-county-schools; Los Angeles Times, "Tracking the coronavirus in LAUSD

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

1   of exposure to COVID-19 during in-person classes is real, even with masks.

2         66.     The Student Plaintiffs and DREDF constituents described above are also

3   irreparably injured by their forced absence from their school program. Research shows that

4   absences from school have a disproportionate impact on student well-being, even after a short

5   period of time.[7] Although many students struggled with distance learning in the 2020-21 school

6   year, others made educational progress, including the Student Plaintiffs and other similarly

7   situated DREDF constituents. Their distance learning plans were effective in delivering the

8   services in their IEP plans. Consequently, the interruption of their access to distance learning,

9   whether through Independent Study or other means, has left them far behind where they would

10  otherwise be.

11        67.     Home Hospital Instruction, if offered to some students, does very little to

12  ameliorate the injury they experience, especially as compared to more robust distance learning

13  programs they had last school year, or to Independent Study. At least through Independent

14  Study, students have access to some live and classroom-style instruction. Cal. Educ. Code §

15  51747(e).

16        68.     The Student Plaintiffs, DREDF constituents and others similarly situated are

17  irreparably injured, even though they have the right to seek "compensatory education" in the

18  form of in-kind educational services through the State special education administrative appeal

19

20

21  schools, " September 26, 2021, https://www.latimes.com/projects/lausd-covid-19-cases-
    tracking-spread-outbreaks/ ("There are currently 12 schools under investigation for an outbreak,

22  which is defined as three or more cases transmitted at school over 14 days. In total, 502 of the
    888 campuses on the district's dashboard have an active case, 57% of the total."); EdSource,

23  "COVID closes rural California schools as Delta variant spreads," September 3, 2021,
    https://edsource.org/2021/covid-closes-rural-california-schools-as-delta-variant-spreads/660712;

24  CBS News, "More Schools Closing Due To COVID Outbreaks," September 6, 2012,
    https://sacramento.cbslocal.com/2021/09/06/covid-outbreaks-schools-closing/; EdSource,

25  "Covid testing was supposed to keep schools safe. What happened?" September 7, 2021,
    https://edsource.org/2021/covid-testing-was-supposed-to-keep-schools-safe-what-

26  happened/660721 (shortages of testing and inconsistent protocols lead to outbreaks and
    quarantines).

27

28  [7] See, e.g., Attendance Works, "Key Research: Why Attendance Matters for Achievement and
    How Interventions Can Help," (2016), available from
    https://awareness.attendanceworks.org/wp-content/uploads/Research2016.pdf.

*E.E. et al. v. State of California, et al.,* Case No.:          Complaint

system. *Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1496-97 (9th Cir. 1994). This remedy cannot restore the time that these children have lost. With limited hours in the day, children can only absorb so much at one time. More services later will not make up for the lost weeks of education that these children have and will continue to experience.

69.     Plaintiff DREDF is also irreparably injured by Defendants' actions, including from the diversion of resources required to respond to families facing barriers to distance learning, and by the harmful impact on DREDF's constituents.

## FIRST CAUSE OF ACTION

### Violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq.

70.     Plaintiffs incorporate by reference every allegation contained in the foregoing paragraphs.

71.     Congress enacted the ADA, 42 U.S.C. § 12101 et seq., to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and to provide strong and consistent standards for identifying such discrimination. 42 U.S.C. § 12101(b)(1)&(2).

72.     The ADA is based on Congress's findings that, inter alia, (i) "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," 42 U.S.C. § 12101(a)(2). In addition, "individuals with disabilities continually encounter various forms of discrimination, including … relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

73.     In enacting the ADA, Congress also found that "discrimination against individuals with disabilities persists in such critical areas as … education." 42 U.S.C. § 12101(a)(3).

74.     Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.130.

75.     Title II of the ADA applies to all of the activities of public entities, including providing education. Each Defendant is either a public entity subject to Title II of the ADA or an official responsible for supervising the operations of a public entity subject to Title II of the ADA. 42 U.S.C. § 12131(1).

76.     The ADA directs the Attorney General to promulgate regulations enforcing Title II of the ADA and provides guidance on their content. The regulations promulgated by the Attorney General require public entities to "make reasonable modifications" to their programs and services "when the modifications are necessary to avoid discrimination." 28 C.F.R. § 35.130(b)(7).

77.     The regulations also specify that it is unlawful discrimination for a public entity to:

a.     "Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 35.130(b)(1)(ii);

b.     "Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," 28 C.F.R. § 35.130(b)(1)(iii);

c.     Fail to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), which the Attorney General has defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible," 28 C.F.R. pt. 35, App. A, p. 450; or

d.     "[U]tilize criteria or methods of administration … [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

disabilities," 28 C.F.R. § 35.130(b)(3)(ii).

78.     Plaintiffs E.E. and L.N are qualified individuals with a disability within the meaning of the ADA. Both have disabilities that substantially limit one of more major life activities, including communication, cognitive functioning, ability to learn and developing and maintaining relationships.

79.     As school-aged children, both are qualified to participate in Defendants' educational programs and services. 42 U.S.C. § 12131(2).

80.     Defendant State of California, the State Board of Education and the California Department of Education are all "public entit[ies]" within the meaning of Title II of the ADA.

81.     During the 2020-21 school year, the Student Plaintiffs were able to participate safely in a virtual classroom with their non-disabled peers through distance learning, and made educational progress. However, because of their disabilities, they require accommodations and modifications to access educational materials.

82.     Defendants have administered the State's Independent Study program so as to discriminate against and exclude the Student Plaintiffs and others similarly situated.

83.     The State's discriminatory Independent Study program directly resulted in the Student Plaintiffs' unequal access to the benefits of a public education, and which denied them and others similarly situated from equal opportunities to benefit from their education.

84.     The injury experienced by the Student Plaintiffs and others similarly situated due to their exclusion from distance learning and from safe alternatives to in-person instruction is directly traceable to Defendants' administration of the state educational program, its adoption of a discriminatory Independent Study program, and its failure to ensure that Defendants and other school districts comply with the ADA.

85.     Under the ADA, public entities are liable for discrimination in the programs they administer, even if they are not directly engaged with the disabled individuals who participate in these programs. The ADA applies to "all services, programs, and activities provided or *made available* by public entities." 28 C.F.R. 35.102(a) (emphasis added).

//

24

86.     Here, Defendants have "made available" public educational services through their local educational agencies. "A public entity, in providing any aid, benefit, or service, may not, directly or *through contractual, licensing, or other arrangements,* on the basis of disability" discriminate against individuals with disabilities. 28 C.F.R. § 35.130(b)(1) (emphasis added).

87.     Further, a public entity may not "[a]id or perpetuate discrimination . . . by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" 28 C.F.R. § 35.130(b)(1)(v).

88.     Under state and federal law, CDE is responsible for the oversight and supervision of local school districts. 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149(a); *see also* Cal. Ed. Code §§ 56100 and 56205.

89.     Defendants, including CDE, have failed to instruct the local school districts that they oversee about the application of the ADA to Independent Study, including their obligation to provide needed accommodations to enable disabled students to participate in the public educational programs they offer.

90.     Defendants have adopted a method of administration that results in discrimination by local education agencies in access to distance learning and the denial of safe alternatives to in-person learning, and by its failure to monitor and supervise local districts, which are part of its educational program.

91.     In addition, Defendants' Independent Study program perpetuates discrimination by local districts, which also provide services to the disabled students who are beneficiaries of California's public education program.

92.     CDE has failed to ensure that the local school districts that it oversees comply with the ADA regarding distance learning and Independent Study.

93.     Through its acts and omissions described above, Defendants are violating the ADA with regard to the Student Plaintiffs and others similarly situated by:

a.     Denying them an opportunity to participate in and benefit from educational services that is equal to that afforded other students;

*E.E. et al. v. State of California, et al.,* Case No.:                                    Complaint

b.     Failing to provide educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other students;

c.     Denying the opportunity to receive educational programs and services in the most integrated setting appropriate to their needs;

d.     Failing to reasonably modify its programs and services as needed to avoid discrimination;

e.     Utilizing methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs; and

f.     Perpetuating the discrimination of local school districts.

94.     Other district courts in California have held Defendant CDE accountable for discriminatory actions by school districts, including violations of the ADA. *Emma C. v. Eastin,* 985 F. Supp. 940, 948 (N.D. Cal. 1997). There, the court found that CDE "failed to monitor [the district's] compliance with state and federal laws," denied the state's motion to dismiss and found that the complaint adequately alleged that the state agency "perpetuated this discrimination." *Id.*

95.     Congress specifically provided for a private right of action to enforce Title II. 42 U.S.C. § 12133 (incorporating the remedies and enforcement procedures available under Title VI of the Civil Rights Act, which includes a private right of action).

96.     The Title II regulations upon which Plaintiffs rely were promulgated at the specific direction of Congress and do not impose obligations beyond the reach of Title II. 42 U.S.C. § 12134(a).

97.     As a result of Defendants' actions and inaction, Plaintiffs and others similarly situated have suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, the Student Plaintiffs have suffered, and continue to suffer loss of equal educational opportunity, denial of their access to appropriate programs, accommodations, modifications, services and

access required for Plaintiffs' disabilities, and its exclusion of Student Plaintiffs.

98.     Plaintiff DREDF has also suffered injury from the diversion of its limited resources to respond to the consequences of Defendants' actions and inaction.

99.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs and others similarly situated continue to suffer harm and therefore speedy and immediate relief is appropriate.

100.    Plaintiff seeks injunctive and declaratory relief, damages and attorneys' fees and costs as a result.

**SECOND CAUSE OF ACTION**

**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)**

101.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

102.    Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

103.    The regulations implementing Section 504 provide protections that parallel those under the ADA. 45 C.F.R. §§ 84.4(b), 84.21, 84.52.

104.    All Defendants are recipients of federal financial assistance within the meaning of Section 504, and its implementing regulations.

105.    Special education services are a "program or activity receiving Federal financial assistance" because Defendants receive federal financial assistance for these services.

106.    The Student Plaintiffs are qualified individuals with disabilities within the meaning of Section 504. They have impairments that limit their life activities. They are otherwise qualified to participate in and receive benefits from Defendants' programs and services. 29 U.S.C. § 794(b).

*E.E. et al. v. State of California, et al.,* Case No.:                    Complaint

107.    At all times relevant, Defendants received federal financial assistance for the public educational services and programs they provide.

108.    Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

109.    Under Section 504, the phrase "program or activity" includes state and local educational agency. 29 U.S.C. § 794(b)(2)(B).

110.    Recipients of federal financial assistance are prohibited from denying a qualified person with a disability any health, welfare, or other social services or benefits on the basis of disability. 45 C.F.R. § 84.52(a)(1).

111.    Recipients of federal financial assistance may not afford a qualified individual with a disability an opportunity to receive health, welfare, or other social services or benefits that is not equal to that afforded people without disabilities. 45 C.F.R. § 84.52(a)(2).

112.    Recipients of federal financial assistance may not, on the basis of disability, provide a qualified person with a disability health, welfare, or other social services or benefits that are not as effective as the benefits or services provided to others. 45 C.F.R. § 84.52(a)(3).

113.    Recipients of federal financial assistance may not provide any health, welfare, or other social services or benefits in a manner that limits or has the effect of limiting the participation of qualified individuals with disabilities. 45 C.F.R. § 84.52(a)(4).

114.    Recipients of federal financial assistance must ensure that the aids, benefits and services provided "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement." 34 C.F.R. §104.4(b)(2).

115.    Recipients of federal financial assistance may not "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," *Id*. at §104.4(b)(1)(iii), and may not "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." *Id*. at §104.4(b)(1)(ii); see also 34 CFR § 104.43 & 104.44.

116.    Like the regulations implementing the ADA, the regulations implementing Section 504 also prohibit discriminatory methods of administration. "A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(b)(4); 45 C.F.R. § 84.4(b)(4).

117.    Defendants have violated Section 504 by adopting and implementing a new Independent Study law that discriminates against the Student Plaintiffs and other students with disabilities.

118.    Defendants have adopted methods of administering this statute that result in and perpetuate discrimination, that exclude Plaintiffs from participation in distance learning and safe alternatives to in-person learning, and that provide them with a benefit that is not equal to and less effective than that provided to others.

119.    Defendants violated Section 504 through adopting, approving and implementing a practice that the only alternative to in-person learning is Independent Study, a practice that results in discrimination against students with disabilities, and by failing to oversee local school districts to ensure that they do not discriminate.

120.    Defendants have adopted methods of administration that result in discrimination by local education agencies in the provision of safe alternatives to in-person learning, and by allowing districts to deny students accommodations in Independent Study. Defendants have failed to monitor and supervise local districts, which are part of its educational program.

121.    In addition, Defendants' Independent Study program perpetuates discrimination by local districts, which are also agencies of the State of California within the meaning of Section 504. See, e.g., *Emma C. v. Eastin,* 985 F. Supp. 940, 948 (N.D. Cal. 1997) (holding that a recipient of federal funds discriminates on the basis of disability when it perpetuates

discrimination by providing assistance to another entity that in turn discriminates).

122.     Defendants committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiffs' rights, particularly given the length of time the problems persisted and the severity of the problems.

123.     The Student Plaintiffs and others similarly situated suffered injury in fact, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continues to suffer loss of equal educational opportunity. Plaintiff DREDF has suffered injury in fact as a result of the diversion of its resources to respond to Defendants' illegal acts.

124.     Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

125.     Plaintiffs seek injunctive and declaratory relief, damages and attorneys' fees and costs as a result.

## PRAYER FOR RELIEF

Plaintiffs pray this Court to enter judgment and provides the following relief:

1.     A declaration that Defendants' conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and 28 C.F.R. §§ 35.104, 36.104 (the "ADA") and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq. ("Section 504").

2.     An order certifying the class set out above.

3.     An injunction ordering Defendants to comply with Title II of the ADA and Section 504 of the Rehabilitation Act, and to ensure that their contractors, agents and assign also comply.

4.     An injunction requiring Defendants to establish a process for providing compensatory education in an amount to be determined by proof, including but not limited to damages under 42 U.S.C. § 12133, 29 U.S.C. § 794(a), including all applicable statutory damages to Plaintiffs and class members.

*E.E. et al. v. State of California, et al.,* Case No.:                              Complaint

1    5.    Any other such damages as may be allowed under all the above federal and state

2    laws.

3    6.    Plaintiffs' reasonable attorneys' fees and costs incurred in litigating both the

4    administrative due process complaint and the instant action, including, but not limited to, fees

5    arising under 42 U.S.C. §12205, 29 U.S.C. §794(b), and 20 U.S.C. § 1415(i)(2)(B).

6    Such other and further relief as the Court deems just and proper.

7

8    Dated: September 28, 2021                    Respectfully submitted,
                                                   /s/Melinda Bird (as authorized on Sept. 28, 2021)
9                                                 Melinda Bird
10                                                Disability Rights California

11                                                 /s/David German (as authorized on Sept. 28, 2021)
12                                                David German
                                                  Vanaman German LLP
13
                                                   /s/Claudia Center (as authorized on Sept. 28, 2021)
14                                                Claudia Center
15                                                DREDF

16                                                *Attorney for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

*E.E. et al. v. State of California, et al.*, Case No.:                    Complaint