Melinda Bird, SBN No. 102236
melinda.bird@disabilityrightsca.org
Robert Borrelle, SBN No. 295640
Robert.borrelle@disabiiltyrightsca.org
Lauren Lystrup, SBN No. 326849
Lauren.Lystrup@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Tel.: (213) 213-8000
Fax: (213) 213-8001

David W. German, SBN No. 252395
VANAMAN GERMAN LLP
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Tel.: (818) 990-7722
Fax: (818) 501-1306
dgerman@vanamangerman.com

*Attorneys for Plaintiffs*
Additional Attorneys Listed on Next Page

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.E by and through her *guardian ad litem* A.J. and L.N. by and through his *guardian ad litem* K.N., on behalf of themselves and a class of those similarly situated; and DISABILITY RIGHTS EDUCATION & DEFENSE FUND, Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; and CALIFORNIA DEPARTMENT OF EDUCATION, <br><br> Defendants | CASE NO.: 4:21-cv-07585-AGT <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION** <br><br> Judge: Hon. Alex G. Tse <br> Courtroom: A, 15th floor <br><br> *Date Action Filed: September 29, 2021* |

1

ADDITIONAL COUNSEL CONT'D

2

Claudia Center, SBN No. 158255
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND
3075 Adeline St, Ste 210
Berkeley, CA 94703
Tel: (510) 644-2555
Fax: (510) 841-8645
ccenter@dredf.org

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum ISO Ex Parte Motion for TRO and OSC

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................3

A. The Student Plaintiffs and other similarly situated DREDF Constituents. .................3

B. Prior to AB 130, California made distance learning available and accessible to all students, including students with IEPs and high support needs. ...............................5

C. Through AB 130, California made Independent Study the only option for virtual learning – but it excludes disabled students by design. .................................................5

III. ARGUMENT ......................................................................................................7

A. Plaintiffs Are Likely to Succeed on the Merits. ...........................................................7

1.  Defendants Violate the ADA by Excluding Disabled Students from Virtual Learning. ...............................................................................................................9

2.  Defendants Are Violating the ADA by Denying Disabled Students Needed Accommodations in Independent Study. .............................................................10

3.  Defendants violate the ADA by not providing disabled students with an alternative to in-person classes that is as effective and safe as that available to non-disabled students. ...............................................................................................................11

B. Plaintiffs Have Demonstrated Irreparable Harm. ......................................................13

1.  Plaintiffs' Medical Evidence Demonstrates Irreparable Harm .............................14

2.  The Student Plaintiffs, DREDF and DREDF's Constituents are Suffering Irreparable Harm. ................................................................................................16

3.  Disabled students have no meaningful alternative through Home Hospital Instruction. .........................................................................................................18

C. The Proposed Injunction will Preserve the Status Quo. .............................................19

D. The Balance of Equities and the Public Interest Both Favor Granting Plaintiffs' Immediate Relief. ......................................................................................................20

IV. PLAINTIFFS SHOULD NOT BE REQUIRED TO POST BOND. ........................22

V.  CONCLUSION ................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarao v. MOL Ship Mgmt. Co., Ltd.*,
 675 F.3d 355 (4th Cir. 2012) ............................................................................................. 19

*Ahlman v. Barnes*
 445 F. Supp. 3d 671 (C.D. Cal. 2020) ........................................................................... 7, 20

*Alliance for Wild Rockies v. Cottrell*,
 632 F.3d 1127 (9th Cir. 2011) ............................................................................................. 7

*Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*,
 721 F.3d 871 (7th Cir. 2013) ............................................................................................... 9

*Basank v. Decker*,
 No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020) .............................................. 13

*Braggs v. Dunn*,
 No. 2:14CV601-MHT, 2020 WL 2395987 (M.D. Ala. May 12, 2020) .............................. 12

*Day v. D.C.*,
 894 F. Supp. 2d 1 ............................................................................................................... 12

*Duke v. Uniroyal, Inc.*,
 777 F. Supp. 428 (E.D.N.C. 1991) ..................................................................................... 13

*Dunn v. Dunn*,
 318 F.R.D. 652 (M.D. Ala. 2016) ...................................................................................... 12

*Emma C. v. Eastin*,
 985 F. Supp. 940 (N.D. Cal. 1997) ..................................................................................... 13

*Faulkner v. Jones*,
 10 F.3d 226 (4th Cir. 1993) ................................................................................................ 16

*Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc.*,
 620 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................................................... 7

*Garcia v. City of Los Angeles*,
 481 F. Supp. 3d 1031 (C.D. Cal. 2020), aff'd, 11 F.4th 1113 (9th Cir. 2021) ................. 14

*Garrity v. Gallen*,
 522 F.Supp. 171 (D .N.H. 1981) .......................................................................................... 9

iv

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*,
    415 U.S. 423 (1974) ................................................................................ 19

*Gresham v. Windrush Partners, Ltd.*,
    730 F.2d 1417 (11th Cir. 1984) ............................................................... 13

*Harris v. Bd. of Supervisors, L.A. Cty.*,
    366 F.3d 754 (9th Cir. 2004) ................................................................... 20

*Indep. Living Cent. of S. California, Inc. v. Shewry*,
    543 F.3d 1047 (9th Cir. 2008) ................................................................. 13

*Issa v. School Dist. of Lancaster*,
    847 F.3d 121 (3d Cir. 2017) .................................................................... 16

*Jackson v. Fort Stanton Hosp. & Training Sch.*,
    757 F.Supp. 1243 (D.N.M. 1990), rev'd on other grounds, 964 F.2d 980
    (10th Cir. 1992) ........................................................................................ 9

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003) ................................................................... 22

*Kathleen S. v. Dep't of Pub. Welfare of Com. of Pa.*,
    10 F. Supp. 2d 460 (E.D. Pa. 1998) ....................................................... 12

*LaRouche v. Kezer*,
    20 F.3d 68 (2d Cir. 1994) ....................................................................... 19

*Lewis v. Cain*,
    324 F.R.D. 159 (M.D. La. 2018) ............................................................ 12

*Lovell v. Chandler*,
    303 F.3d 1039 (9th Cir. 2002) ................................................................... 9

*Lynch v. Maher*,
    507 F.Supp. 1268 (D.Conn. 1981) ............................................................ 9

*M.R. v. Dreyfus*,
    663 F.3d 1100 (9th Cir. 2011), *as amended by* 697 F.3d 706 (9th Cir 2012) ...................... 13

*Martin v. Voinovich*,
    840 F.Supp. 1175 (S.D. Ohio 1993) .......................................................... 9

*Messier v. Southbury Training Sch.*,
    No. 3:94-CV-1706-EBB, 1999 WL 20910 (D. Conn. Jan. 5, 1999) ................... 10

v

*Nelson v Milwaukee County*,
    No. 04C0193, 2006 WL 290510 (E.D. Wis. Feb. 7, 2006) ....................................................9

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) ...........................................................................................19

*Olmstead v. L.C.*,
    527 U.S. 581 (1999)...........................................................................................................19

*Regents of the University of California v. American Broadcasting Companies, Inc.*,
    747 F.2d 511 (9th Cir. 1984) .......................................................................................2, 19

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ...........................................................................................14

*Save Our Sonoran, Inc. v. Flowers*,
    408 F.3d 1113 (9th Cir. 2005) ...........................................................................................22

*Schrier v. University of Colorado*,
    427 F.3d 1253 (10th Cir. 2005) .........................................................................................19

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) .............................................................................................13

*State of Connecticut Office of Protection & Advocacy for Persons with Disabilities v. Connecticut*,
    706 F. Supp. 2d 266 ..........................................................................................................12

*United Steelworkers of America., AFL–CIO v. Textron, Inc.*,
    836 F.2d 6 (1st Cir.1987) ...................................................................................................19

*Updike v. Multnomah Cty.*,
    870 F.3d 939 (9th Cir. 2017) ...............................................................................................8

*Winter v. Natural Resources  Defense Council, Inc.*,
    555 U.S. 7 (2008)..........................................................................................................7, 13

**Statutes**

20 U.S.C. § 1412(a)(11)(A) .......................................................................................................13

29 U.S.C. § 794(a) .......................................................................................................................7

42 U.S.C. § 12131..............................................................................................................2, 7, 8, 12

42 U.S.C. § 12132..............................................................................................................7, 8, 10

Cal. Code Regs., tit. 5, § 3051.4(d)............................................................................................18

Cal. Educ. Code § 41422(c) .......................................................................... 21

Cal. Educ. Code § 43500 et seq. ...................................................................... 5

Cal. Educ. Code § 43503(a)(2) ........................................................................ 5

Cal. Educ. Code § 43503(b)(4) ................................................................... 5, 20

Cal. Educ. Code § 43511(b) ........................................................................... 20

Cal. Educ. Code §§ 46300(a) .......................................................................... 10

Cal. Educ. Code § 46393(a)(1) ....................................................................... 20

Cal. Educ. Code § 48206.3 .............................................................................. 18

Cal. Educ. Code § 48206.3(c)(1) ..................................................................... 18

Cal. Educ. Code § 51745 ................................................................................. 11

Cal. Educ. Code § 51745(a)(3) .......................................................................... 6

Cal. Educ. Code § 51745(a)(6) ...................................................................... 1, 6

Cal. Educ. Code § 51745(c) ........................................................................ 1, 6, 9

Cal. Educ. Code § 51747(e)(1)-(3) .................................................................... 6

Cal. Educ. Code § 51747.5(a) .......................................................................... 10

Cal. Educ. Code § 56100 ................................................................................. 13

Cal. Educ. Code § 56205 ................................................................................. 13

Cal. Educ. Code § 56345(a)(9) ........................................................................ 20

**Rules and Regulations**

28 C.F.R. pt. 35, App. A .................................................................................. 19

28 C.F.R. § 35.102(a) ......................................................................................... 8

28 C.F.R. § 35.108(d)(2)(iii) .............................................................................. 8

28 C.F.R. § 35.130(a) ......................................................................................... 8

28 C.F.R. § 35.130(b) ......................................................................................... 8

28 C.F.R. § 35.130(b)(1) ................................................................................... 12

28 C.F.R. § 35.130(b)(1)(iii) .......................................................................................... 8

28 C.F.R. § 35.130(b)(1)(iv) ........................................................................................... 8

28 C.F.R. § 35.130(b)(1)(v) ........................................................................................... 12

28 C.F.R. § 35.130(b)(3) ................................................................................................. 8

28 C.F.R. § 35.130(b)(3)(ii) .......................................................................................... 11

28 C.F.R. § 35.130(b)(7)(i) ............................................................................................. 8

28 C.F.R. § 35.130(d) .................................................................................................... 19

34 C.F.R. § 200.1(d) ........................................................................................................ 6

34 C.F.R. § 300.149(a) .................................................................................................. 13

Fed. R. Civ. P. 65(b)(1)(A) ............................................................................................. 7

Fed. R. Civ. P. 65(c) ...................................................................................................... 22

**MEMORANDUM OF POINTS AND AUTHORITIES ISO *EX PARTE* MOTION**

**FOR TRO AND OSC RE: PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

Students with disabilities began school this fall only to find that the distance learning programs to which they had adapted during the global pandemic were closed to them, although the peril from Covid-19 continues. During the summer, before the Delta Variant surged, California adopted a new state law, Assembly Bill 130 ("AB 130"), which shifted funding for virtual instruction from distance learning to a modified form of Independent Study. Chapter 44, Statutes of 2021, Sec 53. Under the new law, a child can enroll in Independent Study if their parents decide the student's "health would be put at risk by in-person instruction." Cal. Educ. Code § 51745(a)(6). But only non-disabled students who can follow the standard state curriculum may enroll in Independent Study by right.

In contrast, special education students with an Individualized Education Plan ("IEP") cannot enroll in Independent Study unless their school IEP team approves. *Id.*, § 51745(c). And as the family declarations in support of this motion attest, IEP teams frequently will not approve Independent Study, especially for students with intellectual and developmental disabilities ("I/DD"). These students typically study on an alternative curriculum, which is barred in Independent Study, and need more adult assistance than is available through school districts' existing Independent Study programs.

As the supporting family declarations also attest, many disabled students are at such heightened risk from Covid-19 that their parents are "fully justified" in insisting that they remain in distance learning as it existed before the new state law. Declaration of Dr. Alice Kuo ("Kuo Decl."), ¶ 20. Since AB 130 restricts funding for virtual instruction only to Independent Study, children and their families denied Independent Study face an impossible choice: keep their child at home with no instruction, or send them to in-person classes despite the

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

disproportionate risk of illness and death.[1]

These harms are directly attributable to the State Defendants. The State of California is responsible for adopting a statute that discriminates against disabled students by denying them the access to virtual learning that is freely available to non-disabled students. School districts are regularly finding that Independent Study is not an appropriate placement for disabled students with IEPs, especially for students with high support needs. In these circumstances, because the State now limits funding for virtual learning to Independent Study, school districts either ask the student risk their health and safety to return in-person or waive their rights to needed services and accommodations. The State has unconscionably and illegally forced families to choose between keeping their medically vulnerable children safe from the ongoing COVID-19 pandemic or receiving an education. These students require immediate relief from the Court in the form of a preliminary injunction.

*First*, Plaintiffs are likely to succeed on the merits of their claims. Defendants' failure to ensure that COVID-vulnerable disabled students with IEPs have an equal opportunity to be educated at home as non-disabled students is a straightforward violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.

*Second*, Plaintiffs and other similarly situated students are likely to suffer irreparable harm without immediate relief. They are at increased risk of severe illness from the Delta Variant of COVID-19, and face educational regression without an appropriate at-home educational placement. Some families are facing charges of truancy. Others have accepted unconscionable offers to participate in Independent Study on the condition that they waive the student's federal and state civil rights to needed services and accommodations. Defendants must take the actions this motion seeks in order to prevent further harm to Plaintiffs and other similarly situated students identified in this motion.

*Third*, the requested injunction will maintain the *status quo ante litem* pending a

---

[1] Having I/DD is itself a major risk factor for Covid-19. Kuo Decl. ¶¶ 2, 10-13. These risks are increased for the many students who also have immune disorders, lung disease, or other conditions that put them in jeopardy. *See* Family Declarations submitted concurrently and summary of Family Declaration, Appendix A attached hereto.

2

determination of the case on the merits. *Regents of Univ. of Cal. v. Am. Broad. Co*., 747 F.2d 511, 514 (9th Cir. 1984). Here, the status quo is the situation that existed before the adoption of enactment of AB 130, when disabled students had access to distance learning with the supports they needed. The proposed injunction will restore that status quo and end the injury that the new law has imposed on Plaintiffs.

*Fourth,* the balance of equities and public interest tip sharply in favor of Plaintiffs. Any interest Defendants may have in implementing AB 130 with respect to the students at issue is outweighed by the injury that results when students with IEPs are effectively excluded from school.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Student Plaintiffs and other similarly situated DREDF Constituents.

Plaintiffs seek emergency relief for the two individual student plaintiffs and thirteen similarly situated students whose families are constituents of the Disability Rights Education and Defense Fund ("DREDF"), an organizational plaintiff here. The students have intellectual and developmental disabilities such as Down syndrome and autism, and respiratory conditions such as asthma and lung disease that place them at greatly heightened risk from COVID-19. Plaintiffs' medical expert explains that "having an intellectual disability was the strongest independent risk factor for presenting with a Covid-19 diagnosis and the strongest independent risk factor other than age for Covid-19 mortality," with a "higher concentration of COVID-19 cases at younger ages." Kuo Decl., ¶ 11-13. These risks and harms are recognized by the American Academy of Pediatrics and the Centers for Disease Control and Prevention (CDC). *See* Section III.B.1, *supra*.

One student at risk is Plaintiff E.E. She is six years old and has Down syndrome and associated medical conditions that make her highly susceptible to infection and at heightened risk of serious complications if she is exposed to COVID-19. Her mother requested Independent Study for E.E. and her twin sister when they started kindergarten this fall. After weeks of delay, school district staff said E.E. would not be able to access Independent Study successfully due to her need for significant adult support. Declaration of A.J. The district would only provide the

3

services in her IEP if she attended in person, not through Independent Study. E.E. is still is still at home with no educational program, even though school started in later August. In contrast, E.E's typically developing twin sister was able to enroll in Independent Study immediately because she did not have an IEP.  *Id.*

Another affected child is D.A., whose placement since kindergarten has been a non-public school that serves students with autism. Declaration of D.H. He is non-verbal, but was able to participate successfully in distance learning last year. Because he is at heightened risk from Covid-19, his parents asked that he continue with virtual instruction. His non-public school was happy to assist, but technical limitations in AB 130 made that impossible. As a result, he has been home with no instruction since August. Students with I/DD such as D.A. need constant reinforcement to maintain the skills they have painstakingly acquired, so this interruption will cause isolation and skills regression that they may never recoup. Decl. of Dr. Andrea Ruppar ("Ruppar Decl."), ¶¶ 3, 22-24.

The other students for whom a TRO is requested are constituents of DREDF, which is an organizational Plaintiff. They are in similar situations and have experienced the same harms. The students have Down syndrome, autism, cerebral palsy, respiratory illnesses such as asthma and lung disease, and autoimmune disorders. They include students who struggle to comply with mask and social distancing protocols as a result of their physical and intellectual disabilities. They are also at increased risk of exposure to COVID-19 and for severe outcomes from COVID-19. Their families have requested placement in Independent Study or another distance learning placement, with the services and supports that their student received last year. Some have been denied Independent Study, or have been told that they must waive their state and federal civil rights to access the program.[2] As a result of AB 130, students have been left with no educational placement, and are experiencing irreparable harms.[3] *See* Family

---

[2] Declaration of Cheryl Theis ("Theis Decl."); Declaration of Susan Henderson ("Henderson Decl.").

[3] Although hundreds and perhaps even thousands of children are affected by AB 130 and the new limits on virtual instruction, most are too fearful of retaliation to come forward. Declaration of Robert Borrelle ("Borrelle Decl."). Some have accepted one-sided agreements that require

Declarations. An index to these family declarations and a summary of each family's situation is submitted concurrently and attached hereto as an Appendix.

**B.     Prior to AB 130, California made distance learning available and accessible to all students, including students with IEPs and high support needs.**

In 2020, in response to the developing COVID-19 pandemic, California enacted laws to ensure that school districts offered all students access to distance learning. Cal. Educ. Code § 43500 et seq. This statute was inclusive: "Distance learning shall include … Special education, related services, and any other services required by a pupil's individualized education program ("IEP") pursuant to [state law] … with accommodations necessary to ensure that individualized education program can be executed in a distance learning environment." *Id.*, § 43503(b)(4) (emphasis added). Distance learning was broadly available, including for students who are medically fragile or would be put at risk by in-person instruction. Cal. Educ. Code § 43503(a)(2). [4] Under distance learning, school districts were required to implement the student's IEP to the maximum extent possible in a virtual environment. *Id.*, § 43503(b)(4). This state, in which disabled students had equal access to virtual instruction and the services in their IEP, constitutes the status quo.

**C.     Through AB 130, California made Independent Study the only option for virtual learning – but it excludes disabled students by design.**

California adopted a new statute in July 2021 that restricted funding for virtual learning to one format only - Independent Study. AB 130, Chap. 44, Stats of 2021, Sec. 53, approved on July 9, 2021. The existing statutory requirements of Independent Study were modified slightly

---

them to waiver their rights under federal and state law, and that also include confidentiality clauses. Theis Decl.; Henderson Decl.; Borrelle Decl.; Declaration of David German ("German Decl."); Declaration of Lauren Lystrup ("Lystrup Decl.").

[4] The State did not consider distance learning a "change in placement," meaning it did not require school districts to make an affirmative offer of FAPE in a remote setting. California Department of Education, "Special Education Guidance for Covid-19," (Posted April 9, 2020) (available online at: https://www.cde.ca.gov/ls/he/hn/specialedcovid19guidance.asp) ("Under this unique circumstance, in the CDE's view it is not necessary for an LEA to convene an IEP team meeting, or propose an IEP amendment without a team meeting, for every student, solely for the purpose of discussing the need to provide services away from school, because that change must necessarily occur due to the COVID-19 pandemic.").

5

by this legislation, but none of these changes mitigated the inaccessibility of the format to students with disabilities. Independent Study is now the only virtual learning model that the State is funding for students "whose health would be put at risk by in-person instruction, as determined by the parent or guardian of the pupil." Cal. Educ. Code § 51745(a)(6).

Unfortunately, the very design of Independent Study is not accessible to students with disabilities. First, it explicitly excludes students with disabilities from participation as of right. Students with disabilities "shall not participate in independent study, unless the pupil's individualized education program [IEP] … specifically provides for that participation." Cal. Educ. Code § 51745(c) (emphasis added). This automatically creates a lengthy delay in accessing Independent Study that was not true of distance learning prior to AB 130.

Second, Independent Study includes few hours of direct instruction, which students with I/DD need at all times. "Synchronous instruction" is provided by a teacher but may be offered only once a day for younger students and once a week for older students; the duration of such instruction is not specified and can be no more than a brief review of assigned work sheets.[5] Defendant CDE explicitly instructs that: "Independent study is not for all students as it requires basic academic skills, as well as a level of commitment, motivation, organizational skills, and self-direction make the satisfactory educational progress as required per [State law]."[6]

Third, AB 130 explicitly excludes students who need a modified curriculum from Independent Study. Many students with intellectual and developmental disabilities cannot access the State's "Common Core" general education curriculum without modifications. They receive instruction based on alternative achievement standards, or an "alternate curriculum." 34 C.F.R. § 200.1(d); Ruppar Decl. ¶ 17. Such curricula are "[d]esigned for students with the most significant cognitive disabilities." *Id*. The Independent Study law permits "[i]ndividualized alternative education designed to teach the knowledge and skills of the core curriculum," but

---

[5] Cal. Educ. Code § 51747(e)(1)-(3).
[6] California Department of Education, "Independent Study Program Summary," (last updated September 24, 2021) (available online at https://www.cde.ca.gov/sp/eo/is/isprogramsummary.asp).

*E.E. et al. v. State of California, et al.*, Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

prohibits the use of a modified curriculum: "Independent study <u>shall not</u> be provided as an alternative curriculum." Cal. Educ. Code § 51745(a)(3) (emphasis added). The State's prohibition on offering such curricula through Independent Study excludes many students with intellectual and developmental disabilities.[7]

## III.   ARGUMENT

A Temporary Restraining Order ("TRO") may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The analysis for a TRO and a preliminary injunction is the same. *Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, a plaintiff need only show that "serious questions" exist as to success on the merits where the balance of hardships tips sharply in the plaintiff's favor and the plaintiff has demonstrated a likelihood of irreparable harm. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

As explained below, Plaintiffs meet the standard for a TRO and a preliminary injunction in this case.

### A.      <u>Plaintiffs Are Likely to Succeed on the Merits.</u>

California's new statutory restrictions on remote learning violate Plaintiffs' rights under the Title II of the ADA and Section 504. Plaintiffs can show a likelihood of success on the merits — or at least raise "serious questions" as to the success on the merits — on these claims. *See, e.g.*, *Ahlman*, 445 F. Supp. 3d 671, 687-92 (C.D. Cal. 2020) (finding a likelihood of success on both due process and disability claims). This is because Defendants are discriminating

---

[7] Many other students with IEPs have been denied Independent Study because they are on an alternate curriculum. *See* decls of M.G. (student with Down syndrome), R.C. (student with autism), H.H. (student with autism and cerebral palsy).

*E.E. et al. v. State of California, et al.*, Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

against students with disabilities in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Title II of the ADA applies to all of the activities of public entities, including providing education. Each Defendant is a state agency and public entity. Plaintiffs and other similarly situated students are all individuals with disabilities. *See* decls. of A.J., K.N., and Family declarations. They are also qualified to attend public school. *Id.*, § 12102(1)(A), (2)(B); 28 C.F.R. § 35.108(d)(2)(iii).

To comply with Title II, public entities must take affirmative steps to ensure that people with disabilities can participate in programs, benefits, and services on an equal and equally safe basis as people without disabilities. 28 C.F.R. §§ 35.102(a), 35.130(a), (b); *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).

Barring a fundamental alteration, public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]" 28 C.F.R. § 35.130(b)(7)(i). Public entities may not provide different or separate aids, benefits, or services to individuals with disabilities than are provided to others, unless they can show that such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130(b)(1)(iv). They cannot "utilize criteria or methods of administration . . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3). Public entities may not provide disabled people with "an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(iii). They must provide services to disabled people in the "most integrated setting appropriate for [their] needs." 28 C.F.R. § 35.130(d). Section 504 includes analogous requirements.

By their implementation of AB 130, Defendants have violated the ADA and Section 504 of the Rehabilitation Act by effectively excluding a group of COVID-vulnerable disabled students from public school in the state. Defendants are discriminating against students with

8

disabilities, and failing to take required affirmative steps to ensure students with disabilities are receiving an equal educational opportunity in an equally safe environment.

///

1.      **Defendants Violate the ADA by Excluding Disabled Students from Virtual Learning.**

California is denying distance learning and alternatives to in-person classes to students with disabilities. It has done so by setting up Independent Study as the only way to access distance learning and the only alternative to in-person classes. But Independent Study is not accessible to students with disabilities. Defendants imposed this method by legislation despite the fact that non-discriminatory alternatives existed.

It was inevitable that students with disabilities would be denied access to Independent Study: Independent Study[8] is structured in such a way that placement in Independent Study through an IEP is inappropriate for the majority of students with disabilities.[9] The State defines Independent Study as appropriate only for students who can work independently, which many students with disabilities cannot.[10] It offers Independent Study only on the Core Curriculum, which necessarily excludes many students with disabilities, especially those with moderate to severe disabilities and those with intellectual and developmental disabilities. These students are thus denied access to their entire education because they cannot safely attend in-person classes.

Some students with IEPs may be able to learn independently, but students with I/DD generally require adult assistance to learn. Ruppar Decl., ¶¶ 33-35. This is a tragic example of discrimination based on severity of disability, which violates the ADA even when it is unwitting, as appears to be the case here. *See, e.g., Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002).[11]

_____

[8] *See* Cal. Educ. Code § 51745(c).
[9] *See* Ruppar Decl., ¶¶4, 32-35.
[10] *See* California Department of Education, *supra* note 6.
[11] The fact that some disabled students are able to participate in Independent Study does not lessen the ADA violation. Instead, "[t]he State's appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of "meaningful access." *Lovell*, 303 F.3d 1054. *Accord Amundson ex rel. Amundson v. Wisconsin*

9

Disabled students placed at non-public schools are at a special disadvantage. Non-public schools are specialized private schools in which districts place students with such severe disabilities that they cannot be served on a public school campus. But when these students requested virtual instruction, they found that Independent Study does not permit funding for virtual instruction provided by nonpublic schools and nonpublic agencies. Decls of K.H., M.H., Y.K. For example, student H.H. began the school year receiving distance learning with services and accommodations through her NPS. After two days, her NPS shut the program down, explaining that CDE was not funding an NPS to provide remote learning. M.H. decl.

The problem may be entirely technical. It might that State law requires that an Independent Study program be provided under the supervision of a school district employee,[12] or that Independent Study is a "placement" that cannot be combined with another "placement" such as a non-public school. Regardless, this merely demonstrates why disabled students need a third option, other than in-person classes or Independent Study.

### 2.    Defendants Are Violating the ADA by Denying Disabled Students Needed Accommodations in Independent Study.

Defendants have failed to ensure that disabled students who wish to participate in Independent Study have access to the accommodations, aids and services they need to benefit equally from their education. Given the state's design of Independent Study, many school

---

*Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013); *Nelson v Milwaukee County*, 2006 WL 290510 at \*5 (E.D. Wis. 2006); *Martin v. Voinovich*, 840 F.Supp. 1175, 1191–92 (S.D. Ohio 1993); *Jackson v. Fort Stanton Hosp. & Training Sch.*, 757 F.Supp. 1243, 1299 (D.N.M. 1990), rev'd on other grounds, 964 F.2d 980 (10th Cir. 1992); *Garrity v. Gallen*, 522 F.Supp. 171, 214–15 (D .N.H. 1981); *Lynch v. Maher*, 507 F.Supp. 1268, 1278–79 n.15 (D.Conn.1981); *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706(EBB), 1999 WL 20910, at \*10 (D. Conn. Jan. 5, 1999) ("Courts hold repeatedly that the ADA and Section 504 prohibit discrimination on the basis of severity of disability.").

[12] *See* Cal. Educ. Code § 51747.5(a) ("The independent study by each pupil shall be coordinated, evaluated, and, notwithstanding subdivision (a) of Section 46300, shall be under the general supervision of an employee of the school district, charter school, or county office of education"); see also Cal. Educ. Code §§ 46300(a) (referencing requirement of "immediate supervision and control of an employee of the district or county office"), 51745.6 (restricting school districts from assigning a district employee to supervise the delivery of disability-related services and accommodations to students by a non-public agency).

districts are asking disabled students for a waiver of their civil rights to disability-related

services and accommodations as a condition of participation in Independent Study.[13] Plaintiff

DREDF and other groups that assist with special education issues have been contacted by and

advised numerous families who report that they have been forced to sign such waivers to access

virtual instruction.[14] These students then must attempt to participate in Independent Study

without the accommodations and supports they need to be successful in the program. Without

these services, students cannot access their education.

Although this result violates the ADA, it is consistent with the new California statute.

Students with IEPs cannot participate in Independent Study unless their IEP team agrees. Cal.

Educ. Code § 51745. IEP teams consistently make a single offer of special education services,

which is only in-person. Some IEP teams have agreed to permit parents to enroll their child in

Independent Study, despite their belief that it will likely be inaccessible for them, but only upon

condition of a waiver of the student's civil rights to disability-related services and

accommodations, rejecting subsequent requests for the accommodations, services, and supports

that might make the program accessible.

> **3.  Defendants violate the ADA by not providing disabled students with an alternative to in-person classes that is as effective and safe as that available to non-disabled students.**

The ADA regulations provide that a public entity may not "[u]tilize criteria or methods

of administration that have the effect of defeating or substantially impairing the accomplishment

of the objectives of the public entity's program with respect to individuals with disabilities." 28

---

[13] *See* Declarations of M.H. and A.J. One local school board created a standard waiver agreement that it announced publicly as a "proposed solution" for students when the IEP team refuses to offer distance learning: "The agreement is that the student can participate in [the district's] Virtual Academy (Independent Study), but the student's educational rights' holder waives all FAPE claims (since the IEP team determined Independent Study is not FAPE)." *See* Pleasanton USD Board, Report and Discussion on the Pleasanton Virtual Academy/Independent Study Program for Students with Individualized Education Plans (IEPs) (Sept. 23, 2021), https://simbli.eboardsolutions.com/SB_Meetings/ViewMeeting.aspx?S=36030382&MID=8254; https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=36030382&AID=168845&MID=8254.

[14] Decls. of German, Theis, Borrelle, Lystrup.

11

C.F.R. § 35.130(b)(3)(ii).

Here, the State Defendants are responsible for providing special education services to disabled students. Yet in administering their special education program, they have failed to ensure that students with IEPs have a safe alternative to in-person classes. They have issued FAQs, but failed to ensure that disabled students had the same access to distance learning enjoyed by other students. That this has occurred during a dangerous surge in COVID-19 cases as a result of the Delta Variant makes their inaction even more objectionable.

In this case, the State's failure to act has led to outcomes as discriminatory as if it flatly denied students access to distance learning. "The methods-of-administration regulation makes clear that a know-nothing, do-nothing policy of non-administration is a privately actionable violation of the ADA." *Dunn v. Dunn*, 318 F.R.D. 652, 665 n.12 (M.D. Ala. 2016), modified on other grounds sub nom. *Braggs v. Dunn*, No. 2:14CV601-MHT, 2020 WL 2395987 (M.D. Ala. May 12, 2020).[15]

Under Title II of the ADA, the State Defendants are still responsible, even if local school districts make the actual decision to deny virtual learning or supports and accommodations to a particular student. The State of California must ensure that the agencies it funds, supervises and with which it contracts, including local school districts, do not discriminate. "A public entity, in providing any aid, benefit, or service, may not, directly *or through contractual,* licensing, or other arrangements" discriminate against individuals with disabilities. 28 C.F.R. § 35.130(b)(1) (emphasis added). Further, a public entity may not "[a]id or perpetuate discrimination . . . by

---

[15] See also, *Lewis v. Cain*, 324 F.R.D. 159, 176 (M.D. La. 2018) (state correctional agency's failure to adequately train prison employees, and to adopt procedures for requesting accommodations violated the ADA); *Day v. D.C.*, 894 F. Supp. 2d 1, 20 (District's failure to adopt a plan to move residents out of nursing facilities and to inform them of community alternatives and discharge planning violated the ADA); *State of Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 276–78 (denying motion to dismiss where complaint alleged that the state "failed to adequately assess and identify the long-term care needs of Plaintiffs and the Class they represent," and "failed to inform Plaintiffs and the Plaintiff Class members of the availability of alternatives to nursing home care"); *Kathleen S. v. Dep't of Pub. Welfare of Com. of Pa.*, 10 F. Supp. 2d 460, 471–73 (E.D. Pa. 1998) (state agency's "failure to initiate" discharge planning from a hospital and "failure to adequately plan for the community placements" violated the ADA).

---

12

providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" 28 C.F.R. § 35.130(b)(1)(v).

As regards the California Department of Education in particular, under state and federal law special education law, it is responsible for the oversight and supervision of local school districts. 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149(a); *see also* Cal. Ed. Code §§ 56100 and 56205; *Emma C. v. Eastin*, 985 F. Supp. 940, 948 (N.D. Cal. 1997) (complaint adequately alleged that CDE "failed to monitor [the district's] compliance with state and federal laws" and perpetuated this discrimination.").

## B.   Plaintiffs Have Demonstrated Irreparable Harm.

Plaintiffs have demonstrated irreparable harm. As an initial matter, AB 130 causes irreparable harm because it violates federal disability laws. *See* Section II.A., *supra*. Where a "defendant has violated a civil rights statute," courts "presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 827 (9th Cir. 2001) (citing cases); *see also Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984) ("[I]rreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes"); *Duke v. Uniroyal, Inc.,* 777 F. Supp. 428, 433 (E.D.N.C. 1991) (noting that "[t]he purpose of the presumption of irreparable injury in civil rights cases is to afford plaintiffs relief in areas where injury is difficult to establish."). Thus, Defendants' violation of the ADA and the Rehabilitation Act alone give rise to a presumption of irreparable injury. Further, Plaintiffs need only demonstrate that irreparable harm "is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis added).

There is also ample evidence of concrete and palpable harm to children and their families. AB 130 has forced parents to choose between the harm of losing educational opportunity or risking their health and safety. The grave risk of a "severe, and quite possibly fatal, infection . . . constitutes irreparable harm warranting" relief. *Basank v. Decker*, No. 20-2518, 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020); *see also M.R. v. Dreyfus*, 663 F.3d

13

1100, 1111 (9th Cir. 2011), *as amended by* 697 F.3d 706 (9th Cir 2012); *Indep. Living Cent. of S. California, Inc. v. Shewry*, 543 F.3d 1047, 1050 (9th Cir. 2008). Faced with this impossible choice and under pressure from work and threats of truancy citations, some parents have given up and sent their children to in-person classes despite the health risk. Paredes Decl. (parents fear truancy citations and cannot supervise their children at home because of work demands). Others have accepted settlements that permit virtual learning but without the accommodations, their children need to learn. Decls. of Borrelle, Lystrup, Paredes. And many other students, like the Student Plaintiffs and DREDF constituents, remain at home with nothing.

Plaintiff DREDF has also been injured by the diversion of its resources and frustration of its mission as a result of the crisis and disruption that AB 130 has imposed on so many families. "An organizational plaintiff must show that the defendant's actions run counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019). *Accord*, *Garcia v. City of Los Angeles*, 481 F. Supp. 3d 1031, 1040–42 (C.D. Cal. 2020), aff'd, 11 F.4th 1113 (9th Cir. 2021). Here, AB 130 and its new limits on virtual instruction has forced DREDF to redirect resources to protect its constituents. Decls of S. Henderson, C. Theis. DREDF thus has standing to seek an order that will relieve its affected constituents, since that will also allow it to "redirect" its resources back to other activities to advance its mission.

### 1. Plaintiffs' Medical Evidence Demonstrates Irreparable Harm

As Plaintiffs' medical expert Dr. Kuo explains, the Student Plaintiffs and other families have underlying health conditions that would make COVID-19 infections much more likely and/or more likely to lead to severe illnesses and death. The CDC has stated that "[c]urrent evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from

14

COVID-19."[16] Further, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[17] According to the CDC, people with moderate to severe asthma are more likely to get severely ill from COVID-19.[18]

Individuals with intellectual disabilities are at particularly high risk of contracting COVID-19 and of dying from COVID-19 infection. A recent study published in the New England Journal of Medicine—working with a data set of 64,414,495 patients across more than 500 U.S. healthcare systems—concluded that "intellectual disability was the strongest independent risk factor for presenting with a Covid-19 diagnosis and the strongest independent risk factor other than age for Covid-19 mortality."[19] The study found individuals with intellectual disabilities were more likely to contract COVID-19; if diagnosed with COVID-19, more likely to be admitted to the hospital; and more likely to die following admission.

According to the American Academy of Pediatrics, "the Delta variant has created a new and pressing risk to children and adolescents across this country" and pediatric cases of COVID-19 have been "skyrocketing." *See* Dr. Kuo Decl. ¶ 16.[20] Data shows children are infected with the Delta variant at much higher rates than was true with previous virus strains, especially those who are unvaccinated (including those 5 to 11 years old who are not yet eligible to receive a vaccine). In Los Angeles County, between August 15 to 29, 2021, more than 5,300 students tested positive for COVID-19.[21] Schools across the state continue to

---

[16] CDC, Medical Conditions (last updated August 20, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[17] *Id.*

[18] Id., https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[19] Jonathan Gleason, et. al, The Devastating Impact of Covid-19 on Individuals with Intellectual Disabilities in the United States, New England Journal of Medicine (March 5, 2021) (available online at https://catalyst.nejm.org/doi/pdf/10.1056/CAT.21.0051).

[20] Lee Savio Beers, American Academy of Pediatrics (August 5, 2021) https://downloads.aap.org/DOFA/AAP%20Letter%20to%20FDA%20on%20Timeline%20for%20Authorization%20of%20COVID-19%20Vaccine%20for%20Children_08_05_21.pdf

[21] *See* Decl. of Dr. Kuo ¶ 14;

---

experience COVID-19 outbreaks and exposure of thousands of students statewide, even with widespread use of masks. "[T]he risk of exposure [to Covid-19] in a school environment is still very real, despite mask requirements." Decl. of Dr. Kuo, ¶ 17. *See also* ¶¶ 13-16 (citing data on infection rates nationally and from her work with school districts in Los Angeles County).

The individual Plaintiffs and other similarly situated families and DREDF are at heightened risk of severe outcomes from COVID-19. Many children, such as Plaintiff E.E., have Down syndrome and are at risk of serious, life-threatening complications from COVID-19.[22] About half of all children with Down syndrome have heart defects that also diminish lung capacity.[23] Other students who need Independent Study have asthma and lung disease. California school districts regularly serve students with disabilities that place them at high risk for severe outcomes from COVID-19, including asthma, lung and heart conditions, cerebral palsy, intellectual disability (including Down syndrome and autism), and immune disorders.[24] For these students, returning to school in person poses irreparable harm.

Dr. Kuo reviewed statements from the Student Plaintiffs and other families submitted in support of this motion. She concluded: "Parents are justified in taking strong steps to ensure that students with such diagnoses avoid exposure to COVID-19. Because of the significantly greater risk of serious illness or death if their children are exposed during in-person classes, these parents are justified in requesting a continuation of distance learning or another form of virtual instruction." Kuo Decl., ¶ 3.

### 2. The Student Plaintiffs, DREDF and DREDF's Constituents are Suffering Irreparable Harm.

The loss of educational opportunities is a paradigmatic example of irreparable harm, as it is both intangible and deeply damaging. *See, e.g., Issa v. School Dist. of Lancaster*, 847 F.3d

---

[22] Id.
[23] National Down Syndrome Society, "The Heart and Down Syndrome," https://www.ndss.org/resources/the-heart-down-syndrome (heart defects in child with Down syndrome lead to narrowed arteries in the lungs and increased pressure and constriction of blood flow).
[24] https://www.cde.ca.gov/sp/se/sr/cefspeced.asp (noting that 43,770 students are identified has having an intellectual disability).

16

121, 142 (3d Cir. 2017) ("[E]ven a few months in an unsound program can make a world of difference in harm to a child's educational development") (citing *Nieves-Marquez v. Puerto Rico*, 53 F.3d 108, 121-22 (1st Cir. 2003)) (internal quotation marks omitted); *see generally Faulkner v. Jones*, 10 F.3d 226, 233 (4th Cir. 1993) (affirming preliminary injunction against Citadel's policy of excluding women). As detailed through the declarations filed herewith, AB 130 has effectively shut disabled students out of virtual learning, causing them to remain at home for months without access to any educational instruction or related services. The Student Plaintiffs and other similarly situated children are irreparably injured by their forced absence from their school program.

Research shows that absences from school have a disproportionate impact on student well-being, even after a short period of time. A noted educational expert, Dr. Andrea Ruppar, explains that students with I/DD are uniquely vulnerable to injury from the forced absences because of the near certainty of skill regression. Ruppar Decl., ¶22. Students with I/DD are unlikely to maintain (i.e., remember) skills they have learned without regular opportunities practice previously learned skills. *Id.* "Thus, without steady and consistent educational programming, they are likely to fall behind in their achievement and skill acquisition, and unlikely to recoup these losses, even with remediation." *Id.* Dr. Ruppar further identifies irreparable harm from the isolation students with I/DD are experiencing during the forced absences, particularly from the lack of meaningful access to communication with peers and educational professionals. *See id.*, ¶¶ 31-45. "Without an ability to communicate, individuals with [I/DD] can sometimes engage in dangerous or otherwise challenging behavior to express their need, which in turn can lead to intense behavioral challenges." *Id.*, ¶ 44. Challenging behavior is associated with poor life outcomes for individuals with I/DD, including "more segregated, surveilled, and isolated living arrangements, fewer choices, and can also restrict employment opportunities." *Id*., ¶ 44.

Although many students struggled with distance learning in the 2020-21 school year, others made educational progress, including the Student Plaintiffs and other similarly situated children. Distance learning proved effective in delivering the services in their IEP plans while

maintaining their educational placement. Consequently, the interruption of their access to distance learning, whether through Independent Study or other means, has left them far behind where they would otherwise be. Unless this Court intervenes now, Plaintiffs and the proposed Class will suffer irreparable injury from the loss of school days that can never be regained.

### 3. Disabled students have no meaningful alternative through Home Hospital Instruction.

Home Hospital Instruction is *not* an alternative "work-around" to avoid irreparable injury to disabled students. Home Hospital Instruction is an at-home option for students who have a "temporary disability that makes attendance in the regular day classes or alternative education program impossible or inadvisable." *See* Cal. Educ. Code § 48206.3 (at IEP teams can place students with disabilities on Home Hospital Instruction with a report from a medical provider "stating the diagnosed condition and certifying that the severity of the condition prevents the pupil from attending a less restrictive placement." Cal. Code Regs., tit. 5, § 3051.4(d).

Home Hospital Instruction is not an effective alternative for students with IEPs who are unable to safely attend school in person. Most districts offer Home Hospital for only one hour per day, which is the minimum required in the statute. Cal. Educ. Code § 48206.3(c)(1). This is inadequate for most students with IEPs. For example, Plaintiff L.N.'s school district told his parent that, even if he qualified for Home Hospital, he would get only one hour of instruction per day. Decl. of K.N. She and many other parents were told by school personnel that their children will not get their normal special education services and supports if they are approved for the Home Hospital program. *See id.* and J.V decl.

Further, Home Hospital provides no opportunity for interaction with peers, disabled or not. For this reason, it is regarded as the most restrictive placement on the special education continuum. Interaction with friends and peers is critical to emotional and social growth for children with disabilities. For example, the school district where student K.H. attends has arranged for a "Virtual Academy" for the many students who are choosing Independent Study. Decl of C.H. The IEP team for student K.H. would not approve the Virtual Academy and

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

instead referred her to Home Hospital Instruction. Her mother has not agreed, because Home Hospital does not provide the opportunity for interaction with nondisabled peers that the virtual academy does. *Id.*

Even if parents agree to Home Hospital Instruction out of desperation, such a needlessly restrictive educational placement runs afoul of the requirement in the ADA that public entities "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), which the Attorney General has defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible," 28 C.F.R. pt. 35, App. A, p. 450. See *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999) ("unjustified institutional isolation of persons with disabilities is a form of discrimination").

**C.     The Proposed Injunction will Preserve the Status Quo.**

The requested injunction will maintain the status quo *ante litem* pending a determination of the case on the merits. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*, 415 U.S. 423, 439 (1974); *Regents of Univ. of Cal. v. Am. Broad. Co.*, 747 F.2d 511, 514 (9th Cir. 1984).

Here, the status quo is the access that disabled students had to remote learning before the enactment of AB 130. This is the "last actual, peaceable, uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F. 3d 68, 74 n. 7 (2d Cir. 1994) (quoting Black's Law Dictionary 1410 (6th ed.1990)). "The status quo to be preserved by a preliminary injunction . . . is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012) (citation omitted).[25] Since Plaintiffs here seek only to restore and maintain the status quo, the

---

[25] *See also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (variously defining *status quo* as "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing" or the "last peaceable uncontested status existing between the parties before the dispute developed"); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) ("'Status quo' does not mean the

requested injunction is prohibitory.

### D.   The Balance of Equities and the Public Interest Both Favor Granting Plaintiffs' Immediate Relief.

The balance of equities and the public interest both tip sharply towards Plaintiffs. *Fraihat*, 445 F. Supp. 3d at 749 ("Where the government is the opposing party, balancing of the harm and the public interest merge."); *id.* ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights" and there is "no public interest in exposing vulnerable persons to increased risks of severe illness and death."); *Harris v. Bd. of Supervisors, L.A. Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (interest in protecting people from physical harm outweighs government financial concerns).

Recent experience with emergency learning plans during quarantines demonstrates that there are feasible alternatives for students to learn virtually. From March 2020 to June 2021, the State guaranteed that students with disabilities could participate in distance learning with special education and related services required by the student's IEP. Cal. Educ. Code § 43503(b)(4); Cal. Educ. Code § 43511(b). Students did not need to wait for an IEP meeting to determine whether they could enroll in distance learning.[26] The individual students for whom this motion for emergency relief is brought were successful in distance learning prior to July 2021.

Further, emergency distance learning plans are already a required component of the IEP for every California student with a special education disability. *See* Cal. Educ. Code § 56345(a)(9) (IEP must include "A description of the means by which the individualized

---

situation existing at the moment the law suit is filed, but the last peaceable uncontested status existing between the parties before the dispute developed) (citation omitted); *LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994) (holding prohibitory relief can require the defendant to act because, "[t]o preserve the status quo a court may require the parties *to act* or to refrain from acting"); *United Steelworkers of Am., AFL–CIO v. Textron, Inc*., 836 F.2d 6, 10, (1st Cir.1987) (concluding that an injunction requiring the payment of insurance premiums was properly viewed "not as mandatory, but as prohibitory" where the last uncontested status that preceded the pending controversy was a status in which the defendant paid the necessary premiums) (Breyer, J.). See also 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948, at 136 (2d ed. 1995).
[26] Supra fn. 2.

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

education program will be provided under emergency conditions, as described in Section 46392, in which instruction or services, or both, cannot be provided to the pupil either at the school or in person for more than 10 school days."). These services are required to be provided remotely to students with disabilities in the event of school closure or reduction in attendance. Cal. Educ. Code § 46393(a)(1). The State allows school districts to recuperate attendance funding for students with IEPs receiving their services at home. Cal. Educ. Code § 41422(c).[27]

These existing models show that it is feasible for the state to provide distance learning to all students with disabilities who cannot safely attend school in person this year.

Here, Defendants will suffer no harm from an injunction that merely requires them to comply with federal law. The proposed TRO is narrowly tailored. Defendants must provide immediate relief only for the two Student Plaintiffs and the additional thirteen students listed in Attachment A to the proposed TRO and OSC.[28] The OSC re: preliminary injunction is also narrowly tailored: Defendants must restore the rights of students with disabilities to distance learning. All IEPs already contain a plan for providing instruction and services through distance learning in the event of an emergency where a student cannot go to school in person. The State also already has a funding mechanism for students with IEPs that need virtual instruction but where their IEPs do not provide for Independent Study.

Nor will the school districts that Defendants control and supervise suffer harm. Some students already have school staff who wanted to support them in Independent Study, but were prevented from doing so by orders from Defendants. Decls of A.J., ¶ 10 (school resource

---

[27] *See also* California Department of Education, 2021-22 Form J-13A Frequently Asked Questions, (https://www.cde.ca.gov/fg/aa/pa/formj13afaq2122.asp) (Updated September 24, 2021) ("Can a local educational agency (LEA) submit a Form J-13A request to mitigate attendance losses due to students with exceptional needs with individualized education programs (IEPs) that do not provide for participation in independent study? (New 17-Sep-2021). Yes. An LEA may submit a Form J-13A request for a material decrease due to a loss of attendance occurring as a result of students with exceptional needs whose IEPs do not provide for participation in independent study … and/or for a closure of a school site or class that only serves students who are individuals with exceptional needs, whose IEP does not specifically provide for participation in independent study.").

[28] As additional students come forward, Plaintiffs will offer Defendants an opportunity to resolve their situation, as Plaintiffs did before seeking this TRO.

teacher offered to provide plaintiff E.E. with same services virtually as she had during 2020-21 school year); M.M., ¶ 8-9 (school wanted to provide virtual classes but district refused to authorize); Y.P, ¶ 7 (same); D.H. (same). Other districts and schools have spent the last year providing these same students with accommodations and special education services virtually. To continue to do so will neither burden nor fundamentally alter their educational programs.

Finally, the need for an injunction may be short-lived. As vaccination rates increase and risk from the pandemic eases, more students will be able to return safely to in-person classes, even those with medical conditions such as the Student Plaintiffs. But until this occurs, an injunction is needed.

## IV.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST BOND.

Federal Rule of Civil Procedure 65(c) "invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) A district court has the discretion to dispense with the security requirement where to require a bond would effectively deny access to judicial review. *See Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1126 (9th Cir. 2005). Here, the Student Plaintiffs, DREDF and DREDF's constituents lack the resources to post bond. Decls. of Susan Henderson, L.N., and A.J. They respectfully request that bond be waived.

## V.   CONCLUSION

Plaintiffs respectfully request that the Court grant this *ex parte* motion and order the relief as set forth in the accompanying proposed order as the earliest possible time.

Dated: 10/22/2021                     Respectfully submitted,

                                      /s/Melinda Bird (as authorized on 10/22/2021)
                                      Melinda Bird
                                      Disability Rights California


                                      /s/David German (as authorized on 10/22/2021)
                                      David German
                                      Vanaman German LLP

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/Claudia Center (as authorized on 10/22/2021)
Claudia Center
DREDF

*Attorneys for Plaintiffs*

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Memorandum In Support of Ex Parte Motion for TRO and OSC