1

2

3

4

5

6

7

8

9

10

11

12

13

14

Melinda Bird, SBN No. 102236
melinda.bird@disabilityrightsca.org
Robert Borrelle, SBN No. 295640
Robert.borrelle@disabiiltyrightsca.org
Lauren Lystrup, SBN No. 326849
Lauren.Lystrup@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Tel.: (213) 213-8000
Fax: (213) 213-8001

David W. German, SBN No. 252394
VANAMAN GERMAN LLP
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Tel.: (818) 990-7722
Fax: (818) 501-1306
dgerman@vanamangerman.com

*Attorneys for Plaintiffs*
Additional Attorneys Listed on Next Page

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.E by and through her *guardian ad litem* A.J. and L.N. by and through his *guardian ad litem* K.N., on behalf of themselves and a class of those similarly situated; and DISABILITY RIGHTS EDUCATION & DEFENSE FUND, Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; and CALIFORNIA DEPARTMENT OF EDUCATION, <br><br> Defendants | CASE NO.: 4:21-cv-07585-SI <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' REPLY MEMORANDUM ISO *EX PARTE* MOTION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION** <br><br> Hearing date:  November 4, 2021 <br> Hearing time: 11 am <br> Judge: Hon. Susan Illston <br> Courtroom: 1, 17th Floor <br><br> *Date Action Filed: September 29, 2021* |

1   ADDITIONAL COUNSEL CONT'D

2   Claudia Center, SBN No. 158255
    DISABILITY RIGHTS EDUCATION
3   AND DEFENSE FUND
    3075 Adeline St, Ste 210
4   Berkeley, CA 94703
    Tel: (510) 644-2555
5   Fax: (510) 841-8645
    ccenter@dredf.org
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**TABLE OF CONTENTS**

I.   INTRODUCTION..............................................................................................................1

II.  ARGUMENT...................................................................................................................3

    A. Plaintiffs Will Prevail on their ADA claim because They Have Been Denied the Accommodation of Virtual Access to a Public Program. ...........................................3

        1. The virtual instruction requested here is an ADA accommodation, just like a ramp, a service dog or captioning. ......................................................................3

        2. Plaintiffs' Proposed Relief Harmonizes the Demands of IDEA and the ADA and will free IEP teams to accommodate students' medical and safety needs while implementing their current IEPs...........................................................................5

        3. The proposed relief is not a fundamental alteration.................................................5

    B. Exhaustion of Administrative Remedies is No Defense to this Action. ......................6

        1. Under the tests in *Fry,* no exhaustion is required. ...................................................6

        2. Plaintiffs exhausted by filing through the State Complaint process. .......................7

        3. Alternatively, exhaustion is futile because OAH cannot consider the legality of AB 130. .................................................................................................................8

        4. The Court Should Excuse Exhaustion Under the IDEA's "Emergency" Exception.............................................................................................................9

    C. Defendants Have Not Refuted Plaintiffs' Evidence of Irreparable Harm. ................10

        1. Plaintiffs Did Not Delay Seeking Relief................................................................10

        2. Compensatory Education, even if available, does not make the harm students face from months out of school any less irreparable.............................................12

    D. The Balance of Equities and Public Policy Favor Plaintiffs.....................................13

    E. However Denominated, the Proposed Relief Will Preserve the Access to Virtual Instruction that Disabled Students Had Last Year......................................................14

III. CONCLUSION ..............................................................................................................15

iii

1

**TABLE OF AUTHORITIES**

2 **Cases**

3 *C.C. v. Cypress Sch. Dist.*

4      2011 WL 13130855 (C.D. Cal. June 13, 2011) …………………………………….……3

5 *Crowder v. Kitagawa*

6      81 F.3d 1480 (9th Cir. 1996) (Service animal)…………………………………………...3

7 *D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*

8      746 F. Supp. 2d 1132 (C.D. Cal. 2010) ……………………………………………..3

9 *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*

10      725 F.3d 1088 (9th Cir. 2013) ……………………………………………...…3

11 *McIntyre v. Eugene Sch. Dist.*

12      *4J*, 976 F.3d 902 (9th Cir. 2020) ……………………………………...………....3

13 **Statutes**

14 20 U.S.C. § 1400 et seq. ………………………………………………………………… 1

15 42 U.S.C. § 12131 et seq…………………………………………………………...……1

16

17

18

19

20

21

22

23

24

25

26

27

28

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

**I.      INTRODUCTION**

Defendants rest their opposition on three false assumptions about this case: that Plaintiffs (a) wish to change their current placements and enroll in Independent Study, (b) contest the decisions of their Individualized Education Plan ("IEP") teams denying Independent Study, and (c) may secure the relief they seek through special education administrative appeals. Defendants' Memorandum of Points and Authorities in Opposition to Ex Parte Motion (hereinafter "Opp.") 1-2, 7, 11, 12, ECF No. 25. These assumptions are simply wrong. As described below, Plaintiffs and their experts have argued from the start that the very design of Independent Study is incompatible with their needs, that their IEP teams likely were correct that they cannot receive a free and appropriate public education ("FAPE") in Independent Study, and that they will be irreparably injured if left to proceed through administrative appeals.

Instead, Plaintiffs seek a third option, other than in-person classes or Independent Study: the accommodation of virtual instruction because their disabilities make it unsafe to attend in person. Their IEP teams could not provide this accommodation because the Legislature tied their hands in Assembly Bill ("AB") 130. Ordering this third option as an accommodation would harmonize the requirements of both the IDEA, 20 U.S.C. § 1400 et seq., and the ADA, 42 U.S.C. § 12131 et seq. That the distance learning statute has sunset is no obstacle to this Court's plenary authority to order this relief when it is otherwise required by federal law.

Defendant do not contest the factual evidence put forth by Plaintiffs to show the irreparable harm they experience – out of school with no access to educational services. Nor do they dispute that the new statute restricts funding for virtual instruction only to Independent Study, or that experts testify this is wholly inappropriate for students with intellectual and developmental disabilities such the students here. Further:

– Defendants do not dispute that IEP teams for the 15 families for whom an injunction is sought have already denied them Independent Study. Instead, these teams made a single offer of FAPE provided only through in-person classes. Because these were the only options available to them under AB 130, the IEP teams could not offer to continue their current placements but provide services virtually.

1

1      – Defendants do not dispute that as a result, these 15 families must choose between

2      supporting their children's education or protecting their safety, and if they choose

3      safety, their children must go without any educational services whatsoever while

4      they wait for a decision from an administrative law judge (ALJ).

5      – Defendants fail to point out that these administrative decisions, when they eventually

6      come, will likely be unfavorable because the ALJ was already forced to dismiss their

7      ADA claims and because the IDEA alone does not require virtual instruction as an

8      accommodation for their disability.

9      – Defendants fail to point out that these same 15 families must then file new lawsuits

10      to challenge each ALJ's decision, which were likely correct regarding the IDEA

11      when viewed without regard to the ADA. Then each of these 15 families must appeal

12      to federal court to raise their additional ADA claims and challenge the ALJ's

13      decision. Only when they finally prevail in federal court, months or even years later,

14      will these 15 students be able to rejoin their classmates and pursue their education.

15      This surely is not equitable nor is it an appropriate use of limited judicial resources.

16 Defendants' position is also stunningly disingenuous, wrongly claiming that to do otherwise

17 asks them to disregard IDEA and disrupt the sanctity of IEP team decisions. Plaintiffs are <u>not</u>

18 complaining about the choices made by IEP teams. Plaintiffs have not been harmed by IEP

19 teams correctly asserting that Independent Study is inappropriate to meet their needs. They have

20 been harmed by Defendants' legislative decision to restrict the options available to IEP teams to

21 two choices: either in-person or Independent Study. The discrimination of which Plaintiffs

22 complain flows AB 130, not from decisions made by any IEP team.

23      Finally, Defendants make no effort to dispute Plaintiffs' prima facie ADA and Section

24 504 claims. Defendants do not dispute that the design of Independent Study forbids reliance on

25 an alternative curriculum or a non-public school (Pls. Br. 6-7, ECF No. 23), which

26 automatically excludes students with moderate to severe I/DD whose IEPs include these

27 supports. They do not dispute that under AB 130, these students have only one option to

28 receive FAPE: in-person classes, despite the risk to their safety.

2

II.     **ARGUMENT**

A.     **Plaintiffs Will Prevail on their ADA claim because They Have Been Denied the**
       **Accommodation of Virtual Access to a Public Program.**

           1.     **The virtual instruction requested here is an ADA accommodation,**
                  **just like a ramp, a service dog or captioning.**

Under Title II of the ADA, disabled people may require certain accommodations to access public programs. 28 C.F.R. § 35.130(b)(7)(i).[1] Accommodations vary depending on need and may be a ramp, a service dog or captioning, for example; people may require these to access a library, participate in a public meeting or apply for government benefits and programs. See, e.g., *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) (service animal).

Disabled students may require these same ADA accommodations to access their education.[2] "[P]ublic schools must comply with both the IDEA and the ADA. The IDEA obviously governs public schools. There is also no question that public schools are among the public entities governed by Title II." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013) (ADA requires captioning for disabled student).

Since COVID, courts recognized that under Title II, public entities may be required to offer disabled people virtual access to their programs as an accommodation. *Silver v. City of Alexandria*, 470 F. Supp. 3d 616, 621–24 (W.D. La. 2020). There, a city council member asked to attend meetings virtually as an accommodation because of his heightened risk from COVID-19. *Id.* at 618-19, 622. The city refused, citing a requirement for in-person attendance in the Louisiana "sunshine" law, the public's interest in open government and "40 years of state

---

[1] Plaintiffs allege several forms of discrimination under the ADA, including failure to accommodate and denial of an equal opportunity to benefit. Pls. Br. 8, ECF No. 23. Because of space constraints, this reply discusses failure to accommodate, but Plaintiffs have not abandoned their other ADA claims.

[2] *See, e.g., D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1146 (C.D. Cal. Oct. 8, 2010) (preliminary injunction granted for student with mobility disability seeking key to elevator as reasonable accommodation under ADA/504); *C.C. v. Cypress Sch. Dist.*, 2011 WL 13130855 (C.D. Cal. June 13, 2011) (preliminary injunction granted for student seeking service animal as an accommodation under ADA/504); *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 916 (9th Cir. 2020) (reversing dismissal of student's claim for testing accommodations and emergency health plan as ADA/504 accommodations).

3

*E.E. et al. v. State of California, et al.*, Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1  precedent." *Id*. at 623. The district court granted a preliminary injunction, noting the

2  "preeminence of federal law over state law to the contrary," and that "state law makes no

3  provision for accommodation under the ADA/RA." *Id*.

4        Similarly, in *Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1256–57 (D. Idaho

5  2021), the federal court found that the ADA required the accommodation of remote access for

6  disabled members of the public who would be put at risk by in-person attendance at legislative

7  hearings and committee meetings. The district court also found that the remote accommodations

8  offered to plaintiffs were reasonable, since these included access through Zoom, live streaming

9  and telephone access, and denied an injunction. *Id.* Defendants do not dispute that the students

10  here have disabilities that place them at heightened risk from exposure to COVID-19. Decl. of

11  Dr. Alice Kuo, ¶ 3, ECF No. 19. As in *Silve*r and *Selene*, these conditions easily justify their

12  request for an accommodation, which in this case, is virtual instruction.

13        The continuing effect of COVID and the Delta variant on schools has precipitated ADA

14  challenges to state executive orders prohibiting mask mandates in public schools. There,

15  disabled students are seeking equal access to in-person classes, which requires everyone to

16  mask as an accommodation.[3] Although Plaintiffs here seek a different remedy than in the mask

17  cases, the ADA analysis is identical: the ADA must prevail over a conflicting state law or

18  executive order that result in the discriminatory exclusion of disabled students.

19        Just a month ago, in one of the mask cases, the U.S. Department of Justice also

20  reiterated the need for virtual instruction as an ADA accommodation. "[I]f requested by a

21  student or parent, a virtual learning program could be an available accommodation under the

22  ADA[.] … Thus, generally, where a school district makes in person learning available, it must

23  make the program equally accessible to students with disabilities, even if it provides a separate,

24  virtual schooling option." Statement of Interest of the United States at 16-17, *E.T. v. Abbott*, No.

25

26  [3] *See, e.g., Disability Rts. S.C. v. McMaster,* 2021 WL 4444841, at *9 (D.S.C. Sept. 28, 2021)
(enjoining South Carolina ban on mask mandates in schools because of discriminatory effect on
27  disabled students who are medically vulnerable to severe illness or death from COVID-
19); *ARC of Iowa v. Reynolds*, 2021 WL 4166728, at *13 (S.D. Iowa Sept. 13, 2021) (granting
28  TRO against Iowa ban on mask mandates for same reasons); *G.S. by & through Schwaigert v. Lee*, 2021 WL 4057812, at *8 (W.D. Tenn. Sept. 3, 2021) (same, Tennessee).

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1    1:21-CV-00717-LY (W.D. Tex. Sep. 29, 2021), ECF no. 47, *available at*

2    https://www.ada.gov/et_soi.pdf.

3    **2.     Plaintiffs' Proposed Relief Harmonizes the Demands of IDEA and**

4    **the ADA and will free IEP teams to accommodate students' medical**

5    **and safety needs while implementing their current IEPs.**

6         Defendants argue that the requested relief will require them to violate IDEA by

7    overriding the decisions of IEP teams, thus creating a false and unnecessary dichotomy between

8    the ADA and IDEA. Opp. 18. "Congress has specifically and clearly provided that the IDEA

9    coexists with the ADA and other federal statutes, rather than swallowing the others." *K.M.*, 725

10   F.3d at 1097. Both statutes concern the rights of adults and children with disabilities, and should

11   be harmonized here. *See* 2B Sutherland Statutory Construction § 53:1 (7th ed.).

12        Here, there is no conflict because Plaintiffs are not complaining about the decisions of

13   individual IEP teams; they object to the constraint imposed on all IEP teams by the Defendants'

14   discriminatory limitation on which forms of distance learning would receive state funding.[4] *See*

15   Pls. Br. 9, ECF No. 23 ("Independent Study…is inappropriate for the majority of students with

16   disabilities"). Defendants repeatedly allude to the sanctity of the IEP team and its choices within

17   the IDEA's statutory scheme. However, by restricting the options available to IEP teams, AB

18   130 left them unable to craft an individualized program to meet the needs of an individual

19   student with a disability and provide accommodations that will keep them safe. IEP teams had

20   no choice but to deny Independent Study, recognizing it is inappropriate for these students with

21   I/DD, but had no alternative means to provide an accommodation.

22        **3.     The proposed relief is not a fundamental alteration.**

23        Here, enjoining AB 130 as to these students will not require the Court to fashion a new

24   _____

25   [4] The family declarations demonstrate this causal connection between Defendants' actions and IEP team's constraints: "At [the IEP] meeting Mr. P. told me again told me that AB 130 prohibited the District from allowing any instruction to be delivered through a distance learning

26   model unless it is provided through independent study." Y.K. Decl., ¶ 11, ECF No. 17-12. "On

27   August 27, 2021, Jenny O'Grady, the Director of Education at the Speech and Language Development Center, notified me by email that the California Department of Education is not

28   allowing Non-Public Schools to offer virtual options for students. The District stopped providing H.H. services that day." M.H. Decl., ¶ 9, ECF No. 17-7.

5

1  program from scratch. California already has a funding mechanism for students with IEPs that

2  need virtual instruction outside of Independent Study, although it now restricts that to

3  quarantines and school-wide emergencies. Pl. Br. 20-21, 27 n. 27, ECF No. 23. *See* Cal. Educ.

4  Code § 41422(c) (quarantines); § 56345(a)(9) (emergency distance learning plan is already

5  included in every child's IEP).

6        Moreover, several plaintiffs and declarants attend certified non-public schools; these

7  were eager to continue virtual instruction this fall until countermanded by their districts based

8  on AB 130. *See* Decls of M.H., ECF No. 17-7, ¶ 8; D.H., ECF No. 17-10, ¶ 6; Y.K., ECF No.

9  17-12, ¶ 7. Since Defendants raise the defense of fundamental alteration, Plaintiffs are

10  submitting a reply declaration from the director of a non-public school on this issue pursuant to

11  Local Rule 7-3(c). Declaration of Nathan Yates ("Yates Decl."). He states:

12        [C]ontinuing our hybrid program in this current school year is no hardship. In fact, it has
      helped us ensure that our students do not regress when they are exposed to COVID-19

13        and have to quarantine. For example, we had two young students whose parent were
      exposed. Because of the overlapping quarantine periods, these students had to be out of

14        school for 20 days. These young children would have suffered a real setback in their

15        progress had we not had our virtual program in place for them.

16  Yates Decl., ¶ 8. As Mr. Yates explains, non-public schools like his are ready and willing to

17  provide safe, virtual learning opportunities to their students if AB 130's restrictions lift.

18     **B.**      **Exhaustion of Administrative Remedies is No Defense to this Action.**

19        **1.**      **Under the tests in *Fry,* no exhaustion is required.**

20        Defendants wrongly argue that the gravamen of this case is a denial of FAPE, which

21  requires exhaustion under the Supreme Court's landmark decision in *Fry v. Napoleon*

22  *Community Schools*, 137 S. Ct. 743 (2017). Opp. 13. *Fry* identified two questions that,

23  answered in the negative, indicate that a complaint, even if asserting only ADA claims,

24  nonetheless concerns the denial of FAPE: (1) whether the plaintiffs could have brought

25  essentially the same claim if the alleged conduct had occurred at a public facility other than a

26  school; and (2) whether an adult at the school (i.e. a non-student employee or visitor) could

27  have pursued the same claim. *Id.* at 756.

28        Defendants claim the answer to both is "no," (Opp. 15), but offer no reasoning or

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1    analysis.[5] In fact, the answer to both questions is "yes." The virtual access requested here is an

2    accommodation just like a ramp, which the *Fry* Court raised as an example of an ADA claim

3    that does not concern a denial of FAPE. *Fry*, 137 S. Ct. at 756. Other disabled people have

4    requested the same accommodation of virtual access outside of the school context. *See* § II.A.1,

5    *supra.* (discussing *Silver* and *Selene* cases). And a school employee could request to work

6    remotely as an ADA accommodation. *Fry* itself dictates that exhaustion is not required here.

7                    **2.      Plaintiffs exhausted by filing through the State Complaint process.**

8            As an alternative to exhaustion through OAH, families may also put the State on notice

9    by pursuing an IDEA state-level Complaint Resolution Procedure ("CRP").[6] This satisfies

10   administrative exhaustion because it gives the State education agency an opportunity to fix the

11   allegedly unlawful policy. *Christopher S. v. Stanislaus Cnty. Off. of Educ.*, 384 F. 3d 1205,

12   1211 (9th Cir. 2004). For example, in *Student A v. Berkeley Unified School District*, 2017 WL

13   4551514, at *4 (N.D. Cal. Oct. 12, 2017), Judge Tigar excused exhaustion where Plaintiffs'

14   CRP complaint put the CDE on notice of the district's allegedly unlawful policies towards

15   students with suspected reading disabilities.

16           Here, Declarant M.H. has already filed a CRP complaint with the CDE on behalf of her

17   daughter, H.H., a student with chronic lung disease and an extensive medical history. M.H. decl,

18   ¶ 11, ECF No. 17-7. Her complaint alleged AB 130 prohibited H.H.'s district from continuing

19   to fund the virtual learning program provided by her non-public school. Defendant CDE has

20   now issued a decision on this complaint. Supplement Declaration of Lauren Lystrup, ¶ 6. In its

21   investigation report dated October 27, 2021, CDE verified that this student's virtual instruction

22   had been discontinued pursuant to AB 130 but took no action to resolve the unlawful policy and

23   did not order that her program be restored. *Id.*, ¶¶ 7-9. Filing more CRPs on behalf of other

24

25   [5] Defendants cite only two cases: *S.B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1241 (E.D. Cal. 2018) and *Soto v. Clark County Sch. Dist.*, 2017 WL 3174916 *4 (D. Nev.), aff'd 744

26   App'x 529 (9th Cir. 2018). Both are distinguishable from Plaintiffs' ADA/504 claims here. The courts there found the plaintiffs' settlement agreements prior to administrative hearings did not

27   satisfy exhaustion of their clear claims for relief under the IDEA.
     [6] Pursuant to federal regulations, Defendant California Department of Education ("CDE")

28   adopted the CRP to investigate and resolve alleged violations of the IDEA. 34 C.F.R. §§ 300.151-153; *see also* Cal. Code Regs., tit. 5, § 3200 et seq.

                                                        7

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1  declarants facing the same issue would be futile in light of the CDE's nonresponse to H.H. *Id.*, ¶

2  12. Thus, as did Judge Tigar in *Student A*, this Court should find exhaustion satisfied here.

3  **3.      Alternatively, exhaustion is futile because OAH cannot consider the**

4  **legality of AB 130.**

5  "Courts universally recognize that parents need not exhaust the procedures [in IDEA]

6  where resort to the administrative process would be either futile or inadequate."). *Hoeft v.*

7  *Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992). Here, OAH cannot consider the

8  illegality of a state statute or claims under the ADA, which are the crux of Plaintiffs' claim.

9  When determining futility, the question is whether plaintiffs "seek relief for injuries that could

10 be redressed to any degree by the IDEA's administrative procedures." *Kutasi v. Las Virgenes*

11 *Unified Sch. Dist.*, 494 F.3d 1162, 1163 (9th Cir. 2007). Article III, § 3.5, of the California

12 Constitution provides that a state administrative agency (of which OAH is one) may not "refuse

13 to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement

14 of such statute unless an appellate court has made a determination" regarding its legality.

15 Consequently, OAH "has no power" to enjoin AB 130, and thus cannot provide the relief sought

16 by the Student Plaintiffs in their motion.

17 In a recent decision concerning a challenge to a California special education regulation,

18 Judge Consuelo Marshall relied on this constitutional provision to deny CDE's motion to

19 dismiss. *M.C. v. Los Angeles Unified Sch. Dist.*, __F.3d. __, 2021 WL 4099252 at *5 (C.D. Cal.

20 Sept. 9, 2021). Judge Marshall rejected CDE's defense of failure to exhaust, finding it would be

21 futile both as to CDE and as to the allegedly discriminatory regulation. Judge Marshall also

22 found that the student plaintiffs there had a cause of action against CDE under the ADA, despite

23 its claims that any discrimination was committed by local school districts – the same arguments

24 that Defendants raise here. *Id.* *6.

25 Even if OAH could consider the illegality of AB 130, exhaustion would still be futile

26 because OAH has no jurisdiction over ADA and Section 504 claims. *See Wyner v. Manhattan*

27 *Beach Unified Sch. Dist.*, 223 F.3d 1026, 1029 (9th Cir. 2000) (holding OAH's jurisdiction

28 limited to circumstances enumerated in Cal. Educ. Code § 56501(a)). Defendants are correct

8

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1   that eight of the fifteen students in this case have filed due process complaints with OAH. *See*

2   RJN, Exhs. A-H. What Defendants omit is that in addition to naming the students' school

3   districts, all of the cases name each of the State Defendants in the instant matter and allege

4   violations of the ADA and Section 504. *See* German Decl., ¶ 10, ECF No. 20-5; S.G. Decl., ¶

5   15, ECF No. 17-8. In each case, OAH dismissed State Defendants because it lacked jurisdiction

6   to entertain the ADA and 504 claims alleged against them. *Id.*; Exhibit A to German Decl.

7               **4.        The Court Should Excuse Exhaustion Under the IDEA's**

8                          **"Emergency" Exception.**

9           Defendants tacitly concede that OAH cannot provide emergency relief, but contend this

10  is not a recognized exception to the exhaustion requirement. Opp. 17, n. 5, ECF No. 25. This is

11  not true. Courts have long recognized an "emergency" exception when exhaustion of

12  administrative remedies would cause "severe or irreparable harm" to students. *See Kominos v.*

13  *Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778-79 (3d Cir. 1994); *Rose v. Yeaw*, 214 F.3d

14  206, 211 (1st Cir. 2000).[7] To invoke the emergency exception, "[p]laintiffs must provide a

15  sufficient preliminary showing that the child will suffer serious and irreversible mental or

16  physical damage (e.g., irremediable intellectual regression)." *Kominos*, 13 F.3d at 779. In a

17  preliminary injunction motion, students meet this burden through "affidavits from competent

18  professionals along with other hard evidence that the child faces irreversible damage." *Id.*

19          Plaintiffs have made the showing required by *Kominos*. Defendants do not refute

20  medical expert Dr. Alice Kuo, who explained that Plaintiffs have underlying health conditions

21  that put them at significantly greater risk of serious illness or death if they contract COVID-19

22  attending in-person classes. ECF No. 19, ¶18-19. Nor do they refute education expert Dr.

23  Andrea Ruppar's testimony that the Student Plaintiffs awaiting resolution to disputes with their

24  districts are likely to experience skill regression and irreparable harm from isolation and a lack

25  of communication access. ECF No. 18, ¶ 22, 40. The twenty family declarations are further hard

26

27  [7] This exception also finds support in the Act's legislative history, which states that exhaustion
    would not be necessary when "an emergency situation exists (e.g., the failure to take immediate
28  action will adversely affect a child's mental or physical health)." H.R.Rep. No. 296, 99th Cong.,
    1st Sess. 7 (1985).

9

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1  evidence of the irreversible harms facing the Student Plaintiffs. *See* ECF No. 23-1.

2        The emergency exception is also appropriate because Plaintiffs do not have the benefit

3  of "stay put," the IDEA provision that allows students to remain in their last placement during

4  an appeal to OAH. 20 U.S.C. § 1415(j). Defendants treat any new request for virtual instruction

5  as a change in placement to Independent Study, even when the student had virtual instruction

6  last year, since this is the only virtual option under AB 130. Opp. 8. Placement disruption is

7  such a time-sensitive injury that the Ninth Circuit does not require exhaustion in suits alleging

8  "stay put" violations. *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1110 (9th Cir. 2010).

9  Under the same logic, the court should apply the emergency exception to exhaustion here where

10  AB 130 has robbed the Plaintiff Students of a safe and stable school placement.

11     **C.**     **Defendants Have Not Refuted Plaintiffs' Evidence of Irreparable Harm.**

12            **1.**      **Plaintiffs Did Not Delay Seeking Relief.**

13        As discussed above, Defendants do not dispute that the 15 families for whom a TRO is

14  requested face an impossible choice: pursue their children's education or protect their children's

15  health, a choice that is not forced upon the families of non-disabled children.[8] Instead, they

16  argue that this Court should disregard the scores of declarations and expert testimony about

17  injury because Plaintiffs delayed too long before seeking a TRO.

18        First, as a factual matter, there was no delay. When families began to request assistance

19  regarding distance learning at the start of school, counsel had to advise them to wait until their

20  IEP teams met per AB 130, which took at least a month and stretched well into September and

21

22  [8] The family declarations attest to the continuing risk. "Cecile got sick less than a week into
being back to school in person. On or around October 12, 2021, I picked Cecile up from school

23  and she had runny nose, watery eyes, and was coughing. She has since developed a sore throat
and fever. Her pediatrician told me that she has some type of infection, likely a chest cold. I

24  have given her breathing treatments multiple times a day. She is still out of school while her
health stabilizes." N.T. Decl., ¶ 15. "As beginning of the new school year approached, I learned

25  that the Delta variant of COVID-19 was spreading rapidly. My husband and I were concerned
that returning Daniel to in-person instruction would threaten his health. He has respiratory

26  problems and a weakened immune system, which is associated with Coffin-Siris syndrome."
D.H. Decl., ¶ 6. "In addition to the increased risk posed by his asthma, he has also been unable

27  to tolerate wearing a mask for any length of time and is not able understand social distancing or

28  other precautions that he should follow to protect him from infection." C.R. Decl. ¶ 5.

1   October. During this time, Plaintiffs' counsel aggressively attempted to secure virtual

2   instruction without resorting to litigation.[9] They also awaited guidance from Defendant CDE,

3   but this also failed to resolve the issue.[10] Hoping to put the State on notice, they filed an

4   administrative complaint with the Disability Rights Section of U.S. Department of Justice on

5   September 20, 2021. The Defendants eventually responded and agreed to meet several times,

6   leading to new guidance on AB 130 from Defendant CDE on October 12, 2021. *See* Calomese

7   Decl., ¶ 15, ECF. No. 26. Plaintiffs' counsel waited another week to see if this guidance

8   resolved their clients' problems. *Id.* When it did not,[11] Plaintiffs promptly filed this motion, ten

9   days after securing the new but disappointing guidance and three weeks after filing suit.

10       Second, Defendants' claim of delay relies on cases in which plaintiffs waited years (not

11   weeks) before seeking a TRO or preliminary injunction. *See* Opp. 22, citing *Oakland Trib., Inc.*

12   *v. Chron. Pub. Co.*, 762 F.2d 1374, 1375 (9th Cir. 1985) (allegedly harmful contract terms in

13   effect "for years" before plaintiffs sought relief); *Hi-Rise Tech., Inc. v. Amatuerindex.com*, No.

14   C07-349MJP, 2007 WL 1847249, at *4 (W.D. Wash. June 27, 2007) (plaintiffs filed in 2007 but

15   alleged harm began in 2003); *N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 541 (9th Cir.

16   1993) (district court could consider plaintiff's eight-month delay in filing); *Dahl v. Swift*

17   *Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1,

18   2010) (noting the plaintiff waited nearly a month to file a TRO).

19       Another, more recent 9th Circuit case rejects entirely this defense of delay, finding that

20   "tardiness is not particularly probative in the context of ongoing, worsening injuries" because

21   "the magnitude of the potential harm becomes apparent gradually, undermining any inference

22

23   [9] Plaintiffs' counsel also sought, without success, to obtain clarifying language in the
     Assembly's "clean-up" bill to AB 130. AB 167, Stats 2021, Ch. 252 (September 9, 2021).

24   [10] California Department of Education, "Independent Study Program Summary," September 24,
     2021, available at https://www.cde.ca.gov/sp/eo/is/isprogramsummary.asp.

25   [11] Even presented with the CDE guidance, districts stood by their denials of Independent Study.
     *See, e.g.* D.M. Decl., ¶ 12 (parent sent new guidance to IEP team, "Mr. K. responded and said

26   that the guidance 'does not change our procedures or policy,' and again denied my request" for
     Independent Study); K.C. Decl. ¶ 15. ("I sent the IEP team the "AB 130 Frequently Asked

27   Questions" from the California Department of Education. This FAQ did not change the

28   district's position that Independent Study is not appropriate for [my son].").

11

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1   that the plaintiff was sleeping on its rights." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir.

2   2014). "[W]aiting to file for preliminary relief until a credible case for irreparable harm can be

3   made is prudent rather than dilatory." *Id.*[12] Plaintiffs' allegations of injury are meritorious.

4               **2.      Compensatory Education, even if available, does not make the harm**

5                    **students face from months out of school any less irreparable.**

6        Defendants argue that compensatory education will make these students whole,

7   obviating the need for injunctive relief. Opp. 23-24. First, since IEP teams likely are correct

8   they cannot provide FAPE through Independent Study, then 15 families for whom relief is

9   requested cannot prevail in an administrative appeal that is limited solely to IDEA claims, as

10  those before OAH are. Thus, no OAH ALJ is likely to award them compensatory services in the

11  first place.[13] Further appeals to federal court will then be required, with many more months

12  before district court judges will order compensatory education.

13       Even assuming that some of these 15 students do eventually secure compensatory

14  education, presumably from new lawsuits before multiple federal judges,[14] it will never make

15  up for the educational opportunities they have lost in the months or years this will take.

16  Defendants ignore the testimony of a noted education expert who specializes in the needs of

17  students with I/DD, such as those before this Court: "[C]ompensatory education services (e.g.,

18  afterschool tutoring or therapies) will not repair the weeks of lost instruction, isolation, and

19  other harms related to AB 130." Ruppar Decl., ¶ 27, ECF No. 18. She explains that

20  compensatory education offers only a "contrived" learning environment with no natural

21

22  [12] *Accord Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244 (D.D.C. 2014)(two-year delay did not counsel against a finding of irreparable harm where plaintiffs first pursued non-litigation avenues); *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d

23  1536, 1544 (10th Cir. 1994) (three-month delay was not fatal to claim of irreparable injury);

24  *Inflight Newspapers, Inc. v. Mags. In-Flight, LLC*, 990 F. Supp. 119, 124 (E.D.N.Y.

25  1997)(three-month delay in seeking injunctive relief "while plaintiffs collect[ed] sufficient information to satisfy the demonstration of irreparable harm" was justified).

26  [13] For the same reason, Defendants' claim that *Martinez v. Newsom*, 2020 WL 7786543 at *5 (C.D. Cal. 2020) shows OAH can address the FAPE denials here (Opp. 17, n. 5) is misplaced.

27  [14] If denied an injunction, Plaintiffs will also be injured by the burden of pursuing multiple lawsuits. *See Savoie v. Merchants Bank*, 84 F3d 52, 58 (2nd Cir. 1996) (in absence of a

28  preliminary injunction, party would be irreparably injured by need to conduct multiple lawsuits to obtain the same relief).

12

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1   opportunities to learn general education content and other important everyday skills. *Id.* ¶ 28.

2   Because it is often doubled on top of a regular school day, students may lack the attention and

3   stamina to work longer hours than they already do.  And because there are only so many hours

4   in a day, compensatory education also "deprives students of opportunities to participate in

5   afterschool clubs, sports, and other non-academic activities that nondisabled students can

6   access." *Id.* ¶ 30.

7   **D.**   **The Balance of Equities and Public Policy Favor Plaintiffs**

8   Defendants will suffer little from granting relief to the 15 students here, or even to the

9   other similarly situated students, who probably number in the hundreds at most. Compared to

10   the millions of students in California public schools, any burden from the requested relief will

11   be unnoticeable. Nor will the requested injunction require a "reworking" of the State's entire

12   educational policy, as Defendants claim. Opp. 24-25.

13   In effect, Defendants claim that because AB 130 reflects State policy, a challenge to it

14   cannot be in the public interest. *Id.* But this argument proves too much. Every statute arguably

15   reflects state policy, yet courts regularly enjoin statutes that also discriminate against people

16   with disabilities. *See, e.g., Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 996 (N.D. Cal. 2010)

17   (enjoining state statute that limited eligibility for Medi-Cal adult day health services for disabled

18   individuals, in violation of the ADA); *V.L. v. Wagner,* 669 F. Supp. 2d 1106 (N.D. Cal. 2009)

19   (enjoining new state statute restricting Medi-Cal home-care services to disabled people).

20   Plaintiffs do not seek to overturn the entire educational system, as Defendants suggest,

21   and instead seek to enjoin the portions of AB 130 that needlessly restrict funding for virtual

22   instruction for disabled students. Nor have federal courts considered it a fundamental alteration

23   to set aside state statutes that bar mask mandates in schools, since these laws also discriminate

24   against disabled students. *See* cases cited in n. 3, *supra.*

25   It is also contrary to the public interest to deny students the accommodations to which

26   they are entitled under the ADA. Although distance learning was hard for many disabled

27   students, many made educational progress, since they had the accommodations they needed to

28

13

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC

1    succeed in a virtual learning environment.[15]

2        **E.        However Denominated, the Proposed Relief Will Preserve the Access to Virtual**

3            **Instruction that Disabled Students Had Last Year.**

4        Defendants' claim that Plaintiffs seek a mandatory injunction because their proposed

5    relief would alter the status quo. Opp. 9. This is incorrect. The status quo is what students had

6    last school year. Instead, Defendants attempt to reach back eighteen months, before the

7    pandemic began, claiming that the status quo today is the in-person instruction students received

8    in March 2020, before the pandemic began. Opp. 11.

9        Thus, Defendants contend the requested injunction is mandatory. Opp. at 9-10. To the

10   contrary, an injunction such as this, "to prohibit enforcement of a new law or policy … is

11   prohibitory." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). *See also*

12   *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (finding that the status

13   quo is the last, uncontested status because to hold otherwise "would lead to absurd situations, in

14   which plaintiffs could never bring suit once infringing conduct had begun.").

15       This Court rejected an identical argument in *Centro Legal de la Raza v. Executive Office*

16   *for Immigration Review*, 524 F. Supp. 3d 919 (N.D. Cal. 2021). There, plaintiffs challenged an

17   immigration regulation that had gone into effect two months prior. Defendants argued it was a

18   mandatory injunction because it sought to challenge the status quo. This Court disagreed: "As

19   the Ninth Circuit has explained, 'the "status quo" refers to the legally relevant relationship

20   between the parties before the controversy arose.' … Here, the last uncontested status preceding

21   the current controversy is the status quo that existed prior to the implementation of the Rule, and

22   thus plaintiffs seek a prohibitory injunction." *Id.* at 950-51 (citations omitted).

23       Likewise, Plaintiffs seek an injunction that lifts AB 130's restrictions and restores the

24

25   [15] "During the 2020-2021 school year, [my daughter] was able to successfully participate in
virtual learning with the support of an adult aide and was able to make progress towards
26   meeting her goals with the IEP services. For example, she attended virtual speech sessions
regularly and made progress by increasing her use of language and ability to demonstrate more
27   interest in socializing with adults and peers. [She] received all of the IEP services virtually,
including behavioral support, inclusion support to modify her work in the general education
28   class, and speech and language support her communication development." K.B. Decl. ¶ 3, ECF
No. 17-13.

14

1   status quo where districts could provide nondiscriminatory virtual instruction programs. ECF

2   No. 13-1. Since students' current placements and IEPs do not specify either "in-person" or

3   "virtual/ distance learning," so these can be implemented virtually as they were last year if AB

4   130 is enjoined. Plaintiffs seek only a restoration of the status quo so that students may continue

5   to access their education in a safe, virtual environment.

6   **III.     CONCLUSION**

7          Since Defendants have had an opportunity to present briefing and will present oral

8   argument, Plaintiffs respectfully request that the Court treat this *ex parte* motion for a TRO and

9   OSC as a motion for a preliminary injunction,[16] and grant the requested relief as soon as

10  possible. *See, e.g., Bennett v. Medtronic, Inc.,* 285 F.3d 801, 804 (9th Cir. 2002) (9th Circuit

11  treats a TRO as a preliminary injunction for purposes of appeal "where an adversary hearing has

12  been held, and the court's basis for issuing the order [is] strongly challenged."); *East Bay*

13  *Sanctuary Covenant v. Trump,* 932 F.3d 742, 763 (9th Cir. 2018) (same).

14

15  Dated:  11/2/21                         Respectfully submitted,
                                            Disability Rights California
16                                          Vanaman German LLP
                                            DREDF
17

18                                           /s/Melinda Bird (as authorized on 11/2/21)
                                              Melinda Bird
19
                                            *Attorneys for Plaintiffs*
20

21

22

23

24

25

26

27

28

---

[16] Plaintiffs note that Defendants do not agree to treat this motion as one for a preliminary injunction.

*E.E. et al. v. State of California, et al.,* Case No.: 4:21-cv-07585-AGT
Plaintiffs' Reply re: TRO and OSC