UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E. E., *et al.*,

Plaintiffs,

v.

STATE OF CALIFORNIA, *et al.*,

Defendants.

Case No. 21-cv-07585-SI

**ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

On November 4, 2021, the Court held a hearing on plaintiffs' motion for a temporary restraining order. For the reasons set forth below, the Court GRANTS the motion. As discussed at the hearing, the Court set the following schedule on plaintiffs' request for a preliminary injunction: defendants' opposition is due November 18, plaintiffs' reply is due November 22, and the hearing is scheduled for November 30 at 11:00 a.m. This TRO shall remain in effect until resolution of the motion for preliminary injunction.

**BACKGROUND**

On September 28, 2021, plaintiffs filed this class action lawsuit against the State of California, the California State Board of Education, and the California Department of Education. Plaintiffs are students with disabilities and an organization that advocates for disabled students and their families, and they bring suit on behalf of "All California students who, now or in the future, have an Individual Education Plan and whose parent, guardian or education rights holder has determined that in-person instruction would put the student at risk." Compl ¶ 21.[1] The complaint

---

[1] At the hearing, plaintiffs' counsel stated that the class includes "scores," not hundreds, of students in the State.

United States District Court
Northern District of California

challenges a state law – Assembly Bill 130 – that was passed in July 2021 and that provides that Independent Study is the primary avenue for distance learning during the 2021-2022 school year. Plaintiffs claim that AB 130 has limited distance learning to a single format that is inaccessible to students with disabilities, and that many students with disabilities require distance learning during the 2021-2022 school year because their parents have determined that their health would be put at risk by in-person instruction.  Plaintiffs claim that as a result of AB 130, they are being denied the accommodation of virtual access to school, resulting in numerous students who have missed significant portions of the 2021-2022 school year because they cannot safely attend school in person.

Plaintiffs allege that during the 2020-2021 school year, students with Individual Education Plans ("IEPs") had "distance learning plans" that reflected how the services in their IEPs would be provided during the COVID-19 pandemic.  At the beginning of the COVID-19 pandemic in 2020, California enacted new statutes to ensure that school districts offered students access to distance learning.  Cal. Educ. Code § 43500 *et seq*.  Under this program,

> (b)  Distance learning shall include all of the following:
>
> . . .
>
> (3) Academic and other supports designed to address the needs of pupils who are not performing at grade level, or need support in other areas, such as English learners, pupils with exceptional needs, pupils in foster care or experiencing homelessness, and pupils requiring mental health supports.
>
> (4) Special education, related services, and any other services required by a pupil's individualized education program pursuant to Section 56341, including the requirements of subparagraph (A) of paragraph (9) of subdivision (a) of Section 56345, with accommodations necessary to ensure that individualized education program can be executed in a distance learning environment.

Cal. Educ. Code § 43503(b)(3)-(4).

According to plaintiffs, "in the 2020-21 school year, students with Individualized Education Programs ('IEPs') had 'Distance Learning Plans' that explained how their school district would provide the supports and related services they needed to learn."  Compl ¶ 32.  The distance learning provisions that California adopted in 2020 had a sunset date of June 30, 2021.  Cal. Educ. Code § 43511(b).

United States District Court
Northern District of California

## I. AB 130

AB 130 was adopted on July 9, 2021, and amended various provisions of the California Education Code relating to Independent Study.  As amended by AB 130, California Education Code section 51745 provides in relevant part,

> (a) Commencing with the 1990-91 school year, a local educational agency may offer independent study to meet the educational needs of pupils in accordance with the requirements of this article.  For the 2021-22 school year only, the governing board of a school district or a county office of education shall offer independent study to meet the educational needs of pupils. Educational opportunities offered through independent study may include, but shall not be limited to, the following:
>
> . . .
>
> (3) Individualized alternative education designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum.
>
> . . .
>
> (6) Individualized study for a pupil whose health would be put at risk by in-person instruction, as determined by the parent or guardian of the pupil, or a pupil who is unable to attend in-person instruction due to a quarantine due to exposure to, or infection with, COVID-19, pursuant to local or state public health guidance.
>
> . . .
>
> (c) An individual with exceptional needs, as defined in Section 56026, shall not participate in independent study, unless the pupil's individualized education program developed pursuant to Article 3 (commencing with Section 56340) of Chapter 4 of Part 30 specifically provides for that participation.
>
> . . .

Cal. Educ. Code § 51745; *see also* Cal. Educ. Code § 57149.5(a)(7) ("An individual with exceptional needs, as defined in Section 56026, shall not participate in course-based independent study, unless the pupil's [IEP] developed pursuant to [the state special education statute] specifically provides for that participation.").

On October 12, 2021, the California Department of Education ("CDE") issued guidance about AB 130.  Calomese Decl., Ex. B (Dkt. No. 26-2).  Heather Calomese, Director of the Special Education Division at CDE, states,

> Immediately after the enactment of AB 130, which expanded the Independent Study statutes for the 2020-21 school year, the CDE began working on FAQs regarding the implementation of Independent Study on this broader scale.  When CDE became aware of claims that some [local education agencies "LEAs"] may be misinterpreting the independent study requirements to categorically preclude students with

disabilities from participating, on October 12, 2021, CDE issued clarifying guidance in the form of "Assembly Bill 130 Independent Study FAQs." The guidance confirms that independent study is available for students with disabilities, if the IEP team determines that a [free appropriate public education "FAPE"] can be provided with academic and other supports in independent study. It further explains that "nothing in the statute supports imposing a condition that a student is required to complete work independently in order to qualify for independent study." It also confirms that independent study is a change of placement for a special education student, requiring an agreement of the parent/district in an IEP meeting or via amendment of the IEP without a meeting.

Calomese Decl. ¶ 15 (Dkt. No. 26); *see also id*. Ex. B ("FAQs").

## II.     Plaintiffs' Claims and Evidence

The complaint alleges causes of action under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794(a). Plaintiffs allege that defendants are discriminating against students with disabilities in violation of the ADA and the Rehabilitation Act because AB 130 effectively excludes a group of COVID-vulnerable disabled students from public school in the state by denying them the accommodation of a safe way – distance learning – to access their education. Plaintiffs contend that the Independent Study program is not accessible to students with disabilities because, *inter alia*, (1) Independent Study can only be authorized for a disabled student who has an IEP after that student's IEP team has determined that Independent Study is appropriate, and the IEP process is time-consuming and disabled students are not receiving any instruction in the interim unless they attend in-person school that risks their health; (2) Independent Study is only available to students who are studying the "core curriculum," yet many disabled students are studying an alternate curriculum, such as students with moderate to severe disabilities, including those with intellectual and developmental disabilities; and (3) Independent Study is designed for students who have the ability to work independently and thus excludes disabled students who need adult assistance and other accommodations to learn, such as students with intellectual and developmental disabilities. Plaintiffs assert that since the beginning of the 2021-2022 school year, disabled students throughout the state have requested to participate in distance learning through the Independent Study program and that those requests have been denied, forcing these students to choose between in-person schooling that places their health at risk due to possible exposure to

United States District Court
Northern District of California

COVID-19 or staying at home and foregoing their education.[2]

The named plaintiffs, E.E. and I.N., are two children with disabilities who attend California's public schools, and plaintiff Disability Rights and Education Defense Fund ("DREDF") is an organization that advocates for disabled children and their families.  Plaintiffs have submitted declarations from over 20 parents or guardians of disabled children describing their experiences attempting to enroll their children in Independent Study for the 2021-2022 school year.  *See* Dkt. Nos. 17, 22 (Family Declarations); Dkt. No. 23-1 (Appendix A, Summary of Family Declarations). Plaintiffs have also submitted declarations from five lawyers who represent and advocate for disabled students, and those lawyers describe the influx of requests for assistance that they have received since the passage of AB 130 and the experiences of their clients.  *See* Dkt. Nos. 20, 33.

Named plaintiff E.E. is six years old and has Down syndrome and associated medical conditions that make her highly susceptible to infection and at heightened risk of serious complications if she is exposed to COVID-19.  A.J. Decl. ¶¶ 1, 4 (Dkt. No. 17-7).  She qualifies for special education services based on an intellectual disability, and she has an IEP.  *Id.* ¶¶ 2-3.  E.E.'s IEP provides her with placement in a general education classroom for the 2021-2022 school year with the support of a full-time individual behavioral aide, behavioral supervision, 4 hours a week of inclusion support services to facilitate her access to the general education environment, speech and language therapy, school and clinic-based occupational therapy, and adapted physical education. *Id.* ¶ 3.  E.E. also has a twin sister who is "typically developing."  *Id.* ¶¶ 5, 11.  E.E.'s mother requested Independent Study for E.E. and her twin sister when they started kindergarten this fall. *Id.* ¶¶ 4-5.  A.J. was able to enroll E.E.'s sister, but was told by district staff that because E.E. had an IEP, she needed to convene an IEP meeting in order to consider whether she could be placed in the district's Independent Study program.  *Id.* ¶ 6.  The IEP meeting was convened on August 30,

---

[2] Plaintiffs assert that even presented with the October 12 CDE guidance, school districts have stood by their denials of Independent Study. *See, e.g.*, D.M. Decl. ¶¶ 11-12 (parent sent new guidance to IEP team, "Mr. K. responded and said that the guidance 'does not change our procedures or policy,' and again denied my request" for Independent Study) (Dkt. No. 17-20); K.C. Decl. ¶ 15. ("I sent the IEP team the "AB 130 Frequently Asked Questions" from the California Department of Education.  This FAQ did not change the district's position that Independent Study is not appropriate for [my son].") (Dkt. No. 17-6).

2021, approximately two weeks after school had started. *Id.* ¶ 7. The IEP team determined that E.E. was not a student who could successfully access Independent Study because of her need for significant adult support. *Id.* District staff informed E.E.'s mother that the behavioral support services and inclusion support which were provided in E.E.'s IEP would not be provided by the district if E.E. enrolled in Independent Study. *Id.* ¶ 8. A.J. states, "I have observed my other daughter participating in the independent study program and I do not think [E.E.] could access that program at all without the services, supports, accommodations, and modifications that are provided in her IEP." *Id.* A.J. asked the district if there were any other options for distance learning for her daughter, and was told that Independent Study was the only possible option for distance learning. *Id.* ¶ 9. District members of the IEP team told A.J. that she needed to enroll E.E. in the on-campus program because that was the location where the IEP team was offering her "free appropriate public education," or FAPE. *Id.* ¶ 10. E.E. is still at home with no educational program, even though her school started in mid-August. *Id.* ¶ 17.

A.J. states that on September 20, she filed a due process complaint with the Office of Administrative Hearings ("OAH") naming Los Angeles Unified School District, the State of California, the California Department of Education, and the State Board of Education. *Id.* ¶ 13. On September 29, OAH dismissed the claims against the state agencies as well as the claims of disability discrimination, leaving only the special education claim against LAUSD. *Id.*[3] A.J. states that she does not know when they will get a hearing before OAH and that they are "in limbo" until then. *Id.*

Named plaintiff L.N. is 9 years old. Dkt. No. 23-1. L.N. was born prematurely at 25 weeks gestation and his immune system is severely compromised as a result of chronic lung disease resulting from his premature birth. K.N. Decl. ¶ 3 (Dkt. No. 17-11). L.N.'s vision is also significantly impaired as a result of retinopathy of prematurity. *Id.* L.N. is eligible for special education on the bases of Other Health Impairment and Speech or Language Impairment, and he

---

[3] The same is also true of the other seven family declarants who have filed due process complaints with OAH. In all eight cases, the complaints named the State defendants and alleged violations of the ADA and Section 504 of the Rehabilitation Act, and the administrative law judge dismissed the State defendants and the ADA and Rehabilitation Act claims. German Decl. ¶ 10 (Dkt. No. 20-5).

United States District Court
Northern District of California

has an IEP.  *Id.* ¶¶ 2, 8.  During the 2020-2021 school year, L.N. was able to access his educational program safely and effectively through distance learning.  *Id.* ¶ 4.  K.N. states that "[b]ecause of [L.N.'s] compromised immune system and respiratory disease, it has been necessary to take extraordinary precautions to keep him safe during the pandemic."  *Id.*  K.N. states that she attended a school district town hall meeting on August 25, 2021, and that at that meeting "families of students with special needs were told that their children were unlikely to qualify for the independent study program.  We were told that we had to request an IEP to see if our child was an exception to the general rule that students with IEPs would not qualify for independent study.  We were also informed that none of the required IEPs would be held prior to school starting and that the school had 30 days to convene the IEPs after the start of school."  *Id.* ¶ 9.  K.N. describes what happened next,

> 10. On August 27, 2021, I emailed the School Counselor and the Resource Support Teacher at LN's school. In that email I requested that an IEP meeting be convened to discuss how LN would be provided with instruction and assignments since he could not attend school in person. I also reminded them that, due to his health conditions, LN was extremely high risk from Covid-19.  The Resource teacher replied to email my email with an offer to provide services to LN virtually as she had during the 2020-2021 school year.  The School Counselor then responded to that email, stating that special education students would not be able to receive resource support or any other services if they were not attending school in person.

> 11. I sent a response to the Counselor's email asking when LN would be provided with some assignments.  The Counselor responded that he would forward my email to the special education office.  He called me later that day and stated that he had spoken with the special education office and instructed me to obtain a note from LN's pediatrician so that he could obtain instruction and services through a home/hospital program.

> 12. I obtained the required letter from LN's pediatrician on August 30, 2021.

> 13. The first day of school in Long Beach Unified was August 31, 2021.  On that day I emailed a copy of the pediatrician's letter to the Counselor and the Resource Support teacher.  I received an email from the Resource teacher inviting me to an addendum IEP to set up Home/Hospital services.[4]  On the afternoon of August 31,

---

[4] Home Hospital Instruction is an at-home option for students who have a "temporary disability that makes attendance in the regular day classes or alternative education program impossible or inadvisable."  Cal. Educ. Code § 48206.3.  IEP teams can place students with disabilities on Home Hospital Instruction with a report from a medical provider "stating the diagnosed condition and certifying that the severity of the condition prevents the pupil from attending a less restrictive placement." Cal. Code Regs., tit. 5, § 3051.4(d).

Plaintiffs contend that Home Hospital Instruction is not an effective alternative for students with IEPs who are unable to safely attend school in person because, *inter alia*, most districts offer

United States District Court
Northern District of California

an addendum IEP meeting was convened at which we began a discussion about the change, but district members of the team were unsure how to document it. They stated that there was a meeting for special education teachers scheduled for September 3, and that they would contact me afterwards to finalize the document.

14. On September 3, 2021, the Resource teacher called me after having attended the meeting. She stated that, even if LN did qualify for Home/Hospital he would not receive any services as part of that program. The program consisted of 1 hour a day of instruction with no additional services or supports. She also stated that she did not believe he would qualify because she had been informed that Home/Hospital instruction was only for students who were going to miss school temporarily, for up to 6 weeks. She stated that we needed to schedule an official IEP at which LN's offer of FAPE would have to be changed. She also stated that during the meeting she had been informed that LN was expected to attend school in person until after the IEP was held. While she acknowledged that it was not an option for him due to his health conditions, she felt I should know that is what she was told.

15. On September 8, 2021, the Resource teacher emailed me and stated that I needed to fill out additional forms which would be sent by the School Nurse, and that the Nurse would decide if LN was eligible for the Home/Hospital program. I then received an email with the forms from the Nurse which required me to go back to LN's pediatrician to have them filled out.

16. On September 9, 2021, I received an email from the District Director of Special Education acknowledging my August 27, 2021 request that an IEP be convened, but not proposing a date for such a meeting.

17. On September 20, my attorney filed a due process complaint with the Office of Administrative hearings on behalf of LN. He named Long Beach Unified School District, the State of California, the California Department of Education and the State Board of Education. On September 29, the Office of Administrative Hearings dismissed my claims against the state agencies and my claims of disability discrimination. All that is left is my special education claim against Long Beach Unified School District. I don't know when I will have a hearing and get a decision, so we are in limbo until then.

18. My attorney also sent the school district a copy of new guidance about Independent study from the California Department of Education.

19. We have attended a resolution session meeting with the school District but have not reached agreement on an appropriate resolution of the current dispute. I am

---

Home Hospital for only one hour per day, which is the minimum required in the statute. Cal. Educ. Code § 48206.3(c)(1). In addition, plaintiffs assert that Home Hospital is not sufficient because school districts have told parents that their children will not get their normal special education services and supports in Home Hospital. Plaintiffs also assert that Home Hospital is not an adequate distance learning option because it does not provide any opportunity for interaction with peers, disabled or non-disabled, and it is considered the most restrictive placement in the special education continuum.

Plaintiffs have also submitted evidence that disabled students who are studying an alternative curriculum and who are therefore ineligible for Independent Study have also been unable to access Home Hospital because the students' doctors declined to sign the Home Hospital form because that form does not ask the doctor to attest that the student is at a heightened risk of becoming ill, and instead asks the doctor to attest that the student is currently unable to attend school due to a severe illness, which is not the case. *See* German Decl. ¶ 8F.

worried that even if we can reach an agreement, the district will not agree to provide the services that LN needs and that are in his IEP.

20. With this long period of minimal instruction, I am very worried that my child will not be able to recoup what he is losing in social and academic skills.  My son needs a lot of reinforcement and attention to make progress.  He also needs contact with peers through virtual classes and small group instruction, as provided in his last IEP.  He got this attention and social contact in his class last year, even though it was through distance learning.

21. To date, LN is still not in school, although it has been more than six weeks since classes started.

*Id.* ¶¶ 10-21.

The other family and advocate declarations describe similar experiences.  *See generally* Dkt. Nos. 17, 22 (Family Declarations); Dkt. Nos. 20, 33 (Advocates).  Because AB 130 states that students with disabilities cannot participate in Independent Study unless it is specified in their IEPs, most disabled students whose parents sought a distance learning program were forced to wait until after school began for an IEP to be convened; those students were generally not provided with any educational program or services while they waited for the IEP team to be convened.  *See, e.g.*, German Decl. ¶ 8A-B.  Other families found out that by the time their IEP was held, their district's Independent Student program was at-capacity and they were added to a waitlist.  *Id.* ¶ 8C.  Parents have been told that no special education services will be provided through Independent Study and thus that their children are not eligible for Independent Study, or conversely that the only option for receiving special education services is through in-person instruction.  *See, e.g.*, Lystrup Decl. ¶ 8; M.H. Decl.  Other parents have been told their children are not eligible for Independent Study because they are studying an alternate curriculum, *see e.g.*, German Decl. ¶ 8E, or because they are not independent learners.  *See, e.g.*, German Decl. ¶ 8H.  Some parents have been told that the only distance learning option available is Home Hospital Instruction (without access to special education services or accommodations), and other parents have been told that their children are not eligible for Home Hospital.  *See, e.g.*, Borelle Decl. ¶ 10; Lystrup Decl. ¶ 12.  Other parents have been offered Independent Study but only if they waive all rights to services and supports contained in their student's IEP.  *See e.g.*, German Decl. ¶ 8D; Theis Decl. ¶¶ 10-11; Borelle Decl. ¶ 12; Lystrup Decl. ¶¶ 10-11. Parents of students with no placement have been told their child may face truancy charges.  *See, e.g.*, Theis Decl. ¶ 10; Lystrup Decl. ¶ 15.

Some students attend certified non-public schools ("NPS"), such as schools for autistic children or children with cerebral palsy, that receive funding from school districts.  *See, e.g.*, D.H. Decl. ¶ 2.  Those parents report that the NPS told them that while the school was willing to continue providing distance learning as it had during the 2020-2021 school year, the district and the California Department of Education had directed them that they were not permitted to do so because AB 130 prohibits the district from funding placements unless the student attends in-person.  *Id.* ¶¶ 7-8; *See also* Y.K. Decl. ¶¶ 7-8; M.H. Decl. ¶ 9.

In addition, plaintiffs have submitted a declaration from a medical expert, Dr. Alice Kuo, and an educational expert, Dr. Andrea Ruppar.  Dr. Kuo is a practicing physician and a Professor of Internal Medicine, Pediatrics, and Health Policy and Management at UCLA and Chief of the Division of Medicine-Pediatrics.  Kuo Decl. ¶ 2 (Dkt. No. 19).  Dr. Kuo states,

> I am extremely familiar with the medical and educational needs of students with neurodevelopmental conditions, especially those with intellectual and developmental disabilities (I/DD), and am regarded as an expert in this field. I have been asked whether there is evidence that students with I/DD are at heightened risk from the SARS-CoV-2 virus (COVID-19). As I explain below, having an intellectual disability is the strongest independent risk factor for contracting COVID-19 and the second strongest risk factor for mortality, with rates almost double the general population and highest in younger ages. Individuals with I/DD also have co-morbidities that may further increase their risk and also impair their ability to keep on a mask.  Parents are justified in taking strong steps to ensure that students with such diagnoses avoid exposure to COVID-19.  Because of the significantly greater risk of serious illness or death if their children are exposed during in-person classes, these parents are justified in requesting a continuation of distance learning or another form of virtual instruction.

*Id.* ¶ 3; *see also id.* ¶¶ 10-20 (describing heightened risks).  Dr. Kuo also opines that many students with disabilities need a virtual learning alternative other than through Independent Study because students with I/DD generally require more support in addition to regular classroom instruction, whereas Independent Study is a form of educational activity requires a student to work independently and with very few hours of direct instruction per week.  *Id.* ¶¶ 21-26.

Plaintiffs' educational expert, Dr. Andrea Ruppar, is an expert in the field of special education.  Ruppar Decl. ¶ 1 (Dkt. No. 18).  Dr. Ruppar discusses the injury that students with I/DD are likely to experience from being out of school for weeks or months at a time as a result of the new restrictions on virtual instruction due to AB 130.  Dr. Ruppar states,

United States District Court
Northern District of California

[S]tudents with I/DD need consistent and intensive adult instruction (which can be provided in a virtual or hybrid environment) to gain and maintain the skills that will enable then to lead independent and fulfilling lives. Every instructional minute is important for these students and missing even a few weeks of school can undo months or even years of progress. Research shows that skill maintenance is difficult for students with I/DD without regular practice. For this reason, they are likely to utilize extended school year services to ensure maintenance of acquired skills over the summer break. In this case, the educational harm these students will suffer from a month or more without school is likely irreparable and will only worsen as additional weeks pass without access to school.

*Id*. ¶ 3. Dr. Ruppar also states,

I was also asked to provide my opinion regarding the appropriateness of the Independent Study format in AB 130 for students with I/DD, as compared to the distance learning format available to them in the 2020-21 school year. Children with I/DD include those with more severe disabilities such as autism, Down syndrome, and cerebral palsy. In reaching my opinion, I considered the design of Independent Study under AB 130, with the limited opportunities for adult instruction and peer interaction and inevitable reliance on worksheets. I concluded that it is unlikely that many students with I/DD in Independent Study will make educational progress and more likely that their skills will erode. Students with I/DD require many hours each day of intensive instruction from trained adults, as well as supplementary aids and services, to access their education. They cannot meaningfully benefit from Independent Study under this new law, with only a few hours per week of adult instruction.

I concluded that Independent Study is inappropriate for students with I/DD because of its format, not because it is virtual. Most of the declarations I reviewed said that their students made educational progress in the 2020-21 school year, in distance learning. Individualized Education Plans for students with I/DD typically include rich student-teacher ratios, so even in distance learning, they had access to both adult instruction and peer interaction, albeit virtually. While research is nascent, there are emerging strategies to engage students with I/DD in virtual instruction. Innovation is the heart of special education, yet California is about to abandon the virtual learning infrastructure it built last year. This is inequitable, since there remain medically vulnerable students with I/DD who cannot safely attend in-person classes who are stuck in Independent Study or at home with no supports.

*Id*. ¶¶ 4-5; *see id*. ¶¶ 14-20 (discussing educational needs of students with I/DD); *id*. ¶¶ 21-45 (discussing harm to students from missing school and due to AB 130).

## LEGAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for a temporary restraining order is the same as for a preliminary injunction. In order to obtain such relief, the plaintiff "must make a 'threshold showing' of four factors." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844 (9th Cir. 2020) (quoting *Leiva-Perez v. Holder*,

United States District Court
Northern District of California

640 F.3d 962, 966 (9th Cir. 2011) (per curiam)).  The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20 (citations omitted).  Alternatively, plaintiffs may demonstrate "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the other two *Winter* factors are also met.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  "These factors are evaluated on a sliding scale."  *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020) (citing *All. for the Wild Rockies*, 632 F.3d at 1131-34).

## DISCUSSION

Plaintiffs request a temporary restraining order providing the following relief:

Defendants, their officers, agents and assigns and those in active concert or participation with them are enjoined from altering the status quo ante litem in effect on June 30, 2021, prior to the enactment of AB 130, regarding the provision of virtual instruction to the two student plaintiffs and the nine additional DREDF constituents identified in Attachment A to this Order. Defendants are ordered to take all steps necessary to restore the status quo by ensuring that these students have meaningful access to:

1. Virtual instruction, including direct assistance from trained instructors and opportunities for interaction with peers, comparable to that provided in the 2020-21 school year; and

2. The services and accommodations in their Individualized Education Plans ("IEPs").

Defendants ARE FURTHER ORDERED to implement this TRO by notifying the school districts that serve the Student Plaintiffs and additional DREDF constituents listed in Attachment A of the contents of this Order within one business day of issuance.

Defendants must ensure that local education agencies provide students access to virtual instruction that approximates the minutes and form of instruction they received during the 2020-21 school year. Defendants must provide assurances to these school districts that they will be reimbursed for this virtual instruction, notwithstanding the funding restrictions in AB 130.

Until a Preliminary Injunction issues, Plaintiffs may provide Defendants with the names of additional disabled students and DREDF constituents to supplement those in Attachment A.  Defendants shall make good faith efforts to provide the same

assistance as it provides to the Student Plaintiffs and the students listed on Attachment A.[5]

Proposed Order, Dkt. No. 13-1.

Plaintiffs contend that they are likely to succeed on the merits of their ADA and Rehabilitation Act claims because disabled students have been denied the accommodation of virtual access to public education and suffered discrimination on account of their disabilities. Plaintiffs assert a number of different ADA and Rehabilitation Act theories, including that defendants are violating the law by (1) excluding disabled students from virtual learning; (2) denying disabled students needed accommodations in Independent Study; and (3) not providing disabled students with an alternative to in-person classes that is as effective and safe as that available to non-disabled students. The current motion primarily focuses on the claim that defendants are violating the ADA and Rehabilitation Act by failing to provide the accommodation of virtual instruction and only providing Independent Study, which by design and implementation is not accessible to the disabled students in this lawsuit. Plaintiffs also contend that they have established irreparable harm through the declarations of the families, advocates, and medical and educational experts.

Defendants oppose plaintiffs' motion on four primary grounds. First, defendants contend that plaintiffs are seeking a mandatory rather than prohibitory injunction. Second, defendants contend that plaintiffs are not likely to succeed on the merits because (a) they are seeking relief available under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and thus they are required to exhaust their remedies under IDEA before coming to federal court, and (b) plaintiffs' request for relief would violate IDEA and fundamentally alter the State's educational system. Third, defendants contend that plaintiffs' allegation of irreparable harm is undermined by their delay in seeking relief and by the availability of compensatory education. Fourth, defendants argue that the balance of equities and public interest weigh in favor of the State.

---

[5] Attachment A (Dkt. No. 14-4) contains the names of 15 disabled students, including the two named plaintiff students.

United States District Court
Northern District of California

## I. Mandatory vs. Prohibitory Injunction

The parties dispute whether plaintiffs are seeking a mandatory or prohibitory injunction, and thus whether plaintiffs are subject to a heightened burden of proof. Defendants contend that plaintiffs are seeking a mandatory injunction, and that such injunctions are highly disfavored in the context of a temporary restraining order briefed on shortened time and a "thin record." Opp'n at 9-10 (Dkt. No. 25).

"A mandatory injunction orders a responsible party to take action, while a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (internal quotation marks and citation omitted). "A mandatory injunction goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks and citation omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (holding portion of injunction that required defendants to recall products and pay restitution was mandatory and portion of injunction enjoining defendants from selling infringing products was prohibitory).

Defendants contend that because AB 130 went into effect in July 2021, plaintiffs are seeking a mandatory injunction because they are seeking to change the status quo. The Court disagrees. As the Ninth Circuit has explained, "the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Arizona Dream Act Coalition*, 757 F.3d at 1061. "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (affirming preliminary injunction enjoining Disney from using infringing logo and finding the status quo ante "existed before Disney began using its allegedly infringing logo"); *see also Arizona Dream Act Coalition*, 757 F.3d at 1061 (an injunction "to prohibit enforcement of a new law or policy, . . . is prohibitory"); *see also Disability Rts. S.C. v. McMaster*, __ F. Supp. 3d __, No. CIV 3:21-02728-MGL, 2021 WL 4444841, at *4 (D.S.C. Sept. 28, 2021) ("[T]he status quo in this case is the position of the parties prior to the enactment of

14

Proviso 1.108 when school districts had the discretionary authority to mandate masks. As such, the relief Plaintiffs seek is prohibitory, not mandatory."). Here, the last uncontested status preceding the current controversy is the status quo that existed prior to the passage of AB 130, and thus plaintiffs seek a prohibitory injunction.

## II.     Likelihood of Success on the Merits

### A.     Administrative Exhaustion under IDEA

Defendants contend that although the complaint does not allege a cause of action under IDEA, plaintiffs are seeking relief available under IDEA and are therefore required to exhaust their administrative remedies. IDEA provides,

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(*l*). "Section 1415(l ) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). In *Fry*, the Supreme Court held that "to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* "[W]hen "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required" because "the plaintiff could not get any relief from those procedures." *Id.* at 754.

The Court instructed that to "determine[e] whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.*

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege

United States District Court
Northern District of California

the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756.  The Court further instructed, "A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Id.* at 757.

The Ninth Circuit has identified certain exceptions to the exhaustion rule.  "[E]xhaustion is not required when (1) use of the administrative process would be 'futile,' (2) the claim arises from a policy or practice 'of general applicability that is contrary to law,' or (3) it is 'improbable that adequate relief can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought).'" *Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019), *cert. denied sub nom. Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 140 S. Ct. 2672, 206 L. Ed. 2d 824 (2020) (quoting *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303-04 (9th Cir. 1992)).

Defendants contend that gravamen of plaintiffs' claim is the denial of a FAPE.  Defendants argue, "despite Plaintiffs' efforts to spin their case as one about a state law that allegedly results in unlawful discrimination, at its essence, the case is actually a challenge to the IDEA itself (and the State's implementation of that federal law), and specifically the requirement that students with IEPs can only participate in independent study based on a determination by the IEP team."  Opp'n at 12 (Dkt. No. 25).  Defendants argue that "by asserting that the Court should invalidate the State's return to in-person instruction and simply order their placement in independent study, they seek to have this Court dispense with the mandates of federal law under the IDEA." *Id*. at 12-13.  Defendants argue that under *Fry*, plaintiffs could not have brought their educational claims in other contexts, nor could school employees bring an education-based claims.  Defendants also emphasize that eight of the family declarants have filed administrative complaints.

Plaintiffs argue that they are not required to exhaust their administrative remedies because they are not seeking relief available under IDEA and instead are challenging the State's

discriminatory limitation on distance learning.  Plaintiffs assert that they are not complaining about the decisions of individual IEP teams about what services and accommodations are needed for a FAPE, but instead they object to the constraint imposed on all districts and IEP teams by the defendants' discriminatory limitation on which forms of distance learning are available and would receive state funding.  Plaintiffs argue that under the *Fry* test, exhaustion is not required because plaintiffs could have brought essentially the same claim in a different context, such as disabled people seeking virtual access to public programs or proceedings during the COVID-19 pandemic due to the health risks posed by the pandemic to people with disabilities.  *See Silver v. City of Alexandria*, 470 F. Supp. 3d 616, 621-24 (W.D. La. 2020) (injunction granted in favor of disabled councilmember seeking virtual access to city council meetings); *Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1256–57 (D. Idaho 2021) (injunction granted in favor of disabled member of the public requiring remote access to legislative hearings and committee meetings).  Plaintiffs also argue that a disabled school employee could pursue the same claim as the student plaintiffs by requesting to work remotely as an ADA accommodation.

The Court agrees with plaintiffs that administrative exhaustion under the IDEA is not required because plaintiffs are not seeking relief available under that statute:  they are not seeking relief for the denial of a FAPE.  Plaintiffs are not challenging decisions by IEP teams about what specific services or accommodations are necessary for a particular student's FAPE, and at the hearing plaintiffs' counsel repeatedly stated that they are not challenging any IEP team's decision about FAPE.  Instead, plaintiffs are seeking relief from the limitations imposed by AB 130 that they contend constitute systemic barriers to disabled students for whom in-person schooling poses a health risk and thus who need to access distance learning during the COVID-19 pandemic.  There is no dispute that OAH cannot consider claims that a state statute discriminates on the basis of disability.  *See* Cal. Const. Article III, § 3.5 (state administrative agency may not "refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination" regarding its legality).  Because plaintiffs challenge the discriminatory impact of AB 130, the Court concludes that they do not seek relief available under IDEA and therefore are not required to exhaust IDEA remedies.  *See M. C. v. Los*

*Angeles Unified Sch. Dist.*, No. CV 20-9127-CBM(EX), 2021 WL 4099252, at *5 (C.D. Cal. Sept. 9, 2021) ("OAH 'has no power' to declare Cal. Code Regs. tit. 5, § 3043(g) unenforceable or refuse to enforce the statute. Since the relief sought by Plaintiff cannot be provided by the OAH, Plaintiff is not required to exhaust the administrative remedies because requiring him to do so would be futile."); *see also Arc of Iowa v. Reynolds*, No. 4:21-CV-00264, 2021 WL 4737902, at *6 (S.D. Iowa Oct. 8, 2021) (holding administrative exhaustion under IDEA was not required in lawsuit brought by disabled students challenging Iowa statute that banned school districts from implementing universal mask policies on school property due to COVID-19; rejecting argument that "because Plaintiffs claim enforcement of section 280.31 effectively excludes their disabled children from receiving an education, it necessarily alleges a denial of a FAPE" because "although Plaintiffs' claims relate to the children's education, Plaintiffs do not seek the type of special education services that the IDEA guarantees. Rather, Plaintiffs seek to allow their public school districts the discretion to impose mask mandates and provide their children with 'non-discriminatory access to public institutions' under the ADA and the Rehabilitation Act").

Defendants argue that plaintiffs are challenging a "mandate of federal law" – but there is nothing in IDEA that requires that IEP teams decide whether disabled students should be able to access distance learning during the current COVID-19 pandemic. Instead, it is AB 130 that restricts distance learning to a single format – Independent Study – and it is AB 130 that requires that IEP teams make the decisions about whether students can participate in Independent Study. The only reason that IEP teams are deciding whether disabled students should have access to Independent Study is because that is the process dictated by AB 130 – and this is precisely one of the systemic barriers that disabled students are challenging. There is nothing in IDEA itself that requires an IEP team to make this decision.

The Court further finds that if exhaustion is required, plaintiffs have done so by filing an IDEA state-level Complaint Resolution Procedure ("CRP"). *See Christopher S. v. Stanislaus Cnty. Off. of Educ.*, 384 F. 3d 1205, 1211, 1213 (9th Cir. 2004). Here, declarant M.H. has already filed a CRP complaint with the CDE on behalf of her daughter, H.H., a student with chronic lung disease and an extensive medical history. M.H. Decl. ¶ 11 (Dkt. No. 17-7). Her complaint alleged AB 130

prohibited H.H.'s district from continuing to fund the virtual learning program provided by her non-public school. Plaintiffs state that defendant CDE has now issued a decision on this complaint. Supp. Lystrup Decl. ¶ 6 (Dkt. No. 33). In its investigation report dated October 27, 2021, CDE verified that this student's virtual instruction had been discontinued pursuant to AB 130 but took no action to resolve the unlawful policy and did not order that her program be restored. *Id.* ¶¶ 7-9.[6]

## B.   ADA and Rehabilitation Act

"Title II of the ADA and § 504 of the [Rehabilitation Act "RA"] both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). "The ADA was enacted 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting 42 U.S.C. § 12101(b)(1)&(2)). Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. "To prove that a public program or service violated Title II of the ADA, [a

---

[6] Plaintiffs alternatively argue that exhaustion is not required under the "emergency" exception to exhaustion. *See Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000) (recognizing emergency exception); *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994) (same). The First and Third Circuits found that an emergency exception to exhaustion is consistent with the legislative history of the IDEA, which states that exhaustion would not be necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." H.R.Rep. No. 296, 99th Cong.,1st Sess. 7 (1985). *See Rose*, 214 F.3d at 211 (quoting legislative history); *Komninos*, 13 F.3d at 778 (same).
　In *Komninos*, the Third Circuit instructed that this exception is to be "be sparingly invoked," and that to meet this exception, "Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression) before the administrative process may be circumvented." *Id.* at 779. "In order to meet that threshold, plaintiffs must provide affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted. If plaintiffs meet that burden but the defendant in connection with a 12b(1) motion to dismiss presents convincing evidence that such harm will not occur, the court should not proceed, but rather must require plaintiffs to exhaust their administrative remedies." *Id.*

plaintiff] must show that: '(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  *Updike*, 870 F.3d at 949.

"Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g en banc* (Oct. 11, 2011). Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794.  To bring a § 504 claim, a plaintiff must show that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall*, 260 F.3d at 1135.  "Title II and § 504 include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities."  *Updike*, 870 F.3d at 949.

The Court concludes that plaintiffs have demonstrated a likelihood of success on the merits of their ADA and Rehabilitation claims.  There is no dispute that the plaintiff students and other children listed on Appendix A are disabled, otherwise qualified to receive the benefits of a public education, and that the program receives federal financial assistance.  As to whether the disabled students have been denied benefits because of their disabilities or otherwise been discriminated against on account of their disabilities, at a minimum plaintiffs have submitted evidence that Independent Study is not available to disabled students who are studying an alternative curriculum – which according to plaintiffs, includes many students with disabilities, especially those with moderate to severe disabilities and those with intellectual and developmental disabilities.  *See, e.g.*, S.G. Decl. ¶ 11 (student with Down syndrome on alternate curriculum; parent told her son could be on Independent Study only if parents waived special education services); Y.K. Decl. ¶¶ 9-11 (student with autism; parent told son could not access independent study program due to son's "need

to continuous adult support, his need for an alternate curriculum, and his lack of independence in work completion"). Indeed, the State does not dispute that the Education Code currently limits Independent Study to students who are studying the core curriculum and that, by statute, "Independent study shall not be provided as an alternative curriculum." Cal. Educ. Code § 51745. Thus, it is undisputed that for disabled students who are studying an alternative curriculum, they cannot access Independent Study and they cannot access distance learning because of the constraints imposed by AB 130. In addition, plaintiffs have submitted evidence that disabled children who attend non-public schools have been told that CDE is not allowing non-public schools to offer any virtual options for students. *See* M.H. Decl. ¶ 9; Yates Decl. ¶¶ 5-13 (Dkt. No. 34). These barriers have nothing to do with individual decisions made by IEP teams about what students need for a FAPE. To the contrary, these barriers are the result of the limitation imposed by AB 130 that restricts distance learning during the 2021-2022 school year to Independent Study, as well as the historic structure and design of the Independent Study program. *See generally* Schools— Independent Study Programs, 1989 Cal. Legis. Serv. 1089 (West).[7] Thus, absent a reasonable accommodation – such as access to the distance learning mode that disabled students utilized during the 2020-2021 school year – these students are denied the benefits of public education by reason of their disability, in violation of the ADA and the Rehabilitation Act. *See Lovell*, 303 F.3d at 1052-54 (affirming summary judgment on ADA and Rehabilitation Act claims in favor of disabled people excluded from participation in new state healthcare program).

Defendants argue that the requested relief would work a fundamental alteration of the State's educational system. The Court is not persuaded. As an initial matter, the TRO covers 15 children, and plaintiffs' counsel represented at the hearing that the class consists of "scores, not hundreds" of children. More importantly, plaintiffs are requesting the accommodation of virtual learning that was in place during the 2020-2021 school year; the schools and districts already have experience with providing distance learning to disabled students consistent with the services and

---

[7] Defendants do not dispute that prior to the 2021-2022 school year, Independent Study has been designed for, and used by, students who could work independently, and that Independent Study did not involve much teacher instruction.

United States District Court
Northern District of California

accommodations listed in their IEPs. Further, California currently has a funding mechanism for students with IEPs that need virtual instruction outside of Independent Study, although that is presently restricted to quarantines and school-wide emergencies. *See* Cal. Educ. Code § 41422(c) (quarantines); § 56345(a)(9) (emergency distance learning plan is already included in every child's IEP).

In addition, plaintiffs have submitted evidence that some students already have school staff who wanted to support them in distance learning but were prevented from doing so because of the constraints imposed by AB 130. *See, e.g.*, A.J. Decl. ¶ 10; M.M. Decl. ¶¶ 8-9; Y.P. Decl. ¶ 7; D. H. Decl. ¶¶ 6-7. For those students who are attending non-public schools, plaintiffs have submitted evidence showing that at least some of these schools were prepared to offer virtual learning for this school year and want to continue provide virtual learning but cannot due to AB 130. *See, e.g.*, Yates Decl. ¶¶ 5-13.

### III.    Harm

The Court finds that plaintiffs have demonstrated irreparable harm. The declarations submitted by plaintiffs show that AB 130 has forced parents to choose between the harm of their children losing educational opportunity or risking their health and safety. The declarations detail the very real health risks that these students face if they are required to attend in-person school as a result of their disabilities and the COVID-19 pandemic, as well as the educational losses the students have and will experience as a result of missing instruction.

Defendants argue that plaintiffs delayed in seeking relief and that compensatory education will make these students whole. The Court is not persuaded by these arguments. The Court finds that plaintiffs have not delayed for the reasons set forth in plaintiffs' papers. The Court also finds that compensatory services – which could be awarded many months or even years from now – would not address the current harms that the students are experiencing every day that they continue to miss school or are forced to attend in-person school and risk their health.

United States District Court
Northern District of California

## IV.      Balance of Equities and Public Interest

A plaintiff seeking a temporary restraining order must establish that the balance of equities tips in the plaintiff's favor and that an injunction is in the public interest.   When the government is a party, these two factors merge.  *Nikn v. Holder*, 556 U.S. 418, 435 (2009)).

The Court also finds that these factors also favor granting the temporary restraining order.  As discussed earlier, the Court is not persuaded that granting the requested relief will require a reworking of the State's educational system, as defendants assert.  The TRO is limited to a small group of students who are simply asking to be able to access their education through distance learning as they did last school year.  Allowing these students to go to school safely is in the public's interest.  Indeed, at the hearing there did not seem to be any disagreement between the parties that the disabled students involved in this lawsuit should be able to attend school through some form of distance learning.  Further, as plaintiffs state in their motion, the need for an injunction may be short-lived.  As of this week, children between the ages of 5-11 are now eligible to become vaccinated.  As vaccination rates increase and risk from the pandemic eases, more students will be able to return safely to in-person classes, even those with medical conditions such as the student plaintiffs.

## CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiffs' motion for a temporary restraining order.  Pursuant to Federal Rule of Civil Procedure 65(c), the Court finds in its discretion that it is not proper to impose any security because of the significant public interest underlying this action, and plaintiffs lack the resources to post a bond.  *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005); *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 868–69 (N.D. Cal. 2018).

Accordingly, IT IS HEREBY ORDERED that:

Defendants, their officers, agents and assigns and those in active concert or participation with them are enjoined from altering the status quo ante litem in effect on June 30, 2021, prior to the enactment of AB 130, regarding the provision of virtual instruction to the two student plaintiffs and the nine additional DREDF constituents identified in Attachment A to this Order. Within a week of the filing date of the order, defendants are ordered to take all steps necessary to restore the status quo by ensuring that these students have meaningful access to:

1. Virtual instruction, including direct assistance from trained instructors and opportunities for interaction with peers, comparable to that provided in the 2020-21 school year; and

2. The services and accommodations in their Individualized Education Plans ("IEPs").

Defendants ARE FURTHER ORDERED to implement this TRO by notifying the school districts that serve the Student Plaintiffs and additional DREDF constituents listed in Attachment A at Dkt. No. 14-4 of the contents of this Order within one business day of issuance.

Defendants must ensure that local education agencies provide students access to virtual instruction that approximates the minutes and form of instruction they received during the 2020-21 school year. Defendants must provide assurances to these school districts that they will be reimbursed for this virtual instruction, notwithstanding the funding restrictions in AB 130.

The posting of security is waived.

**IT IS SO ORDERED**.

Dated: November 4, 2021

SUSAN ILLSTON
United States District Judge