Melinda Bird, SBN No. 102236
melinda.bird@disabilityrightsca.org
Robert Borrelle, SBN No. 295640
Robert.borrelle@disabiiltyrightsca.org
Lauren Lystrup, SBN No. 326849
Lauren.Lystrup@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Tel.: (213) 213-8000
Fax: (213) 213-8001

David W. German, SBN No. 252395
VANAMAN GERMAN LLP
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Tel.: (818) 990-7722
Fax: (818) 501-1306
dgerman@vanamangerman.com

*Attorneys for Plaintiffs*
ADDITIONAL COUNSEL LISTED ON NEXT PAGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.E. by and through her *guardian ad litem* A.J., L.N. by and through his *guardian ad litem* K.N., M.G. by and through his *guardian ad litem*, S.G., H.H. by and through her *guardian ad litem* M.H., and K.H. by and through her *guardian ad litem* C.H., on behalf of themselves and a class of those similarly situated; DISABILITY RIGHTS EDUCATION & DEFENSE FUND; and The ARC OF CALIFORNIA,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; and CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>                    Defendants. | CASE NO.: 3:21-cv-07585-SI<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF:**<br><br>Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.<br><br>Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. |

1   ADDITIONAL COUNSEL CONTINUED FROM PREVIOUS PAGE

2   Claudia Center, SBN No. 158255
3   DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
    3075 Adeline St, Ste 210
4   Berkeley, CA 94703
    Tel: (510) 644-2555
5   Fax: (510) 841-8645
6   ccenter@dredf.org

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI        First Am. Compl.

**INTRODUCTION**

1.      This is a civil rights complaint concerning discrimination by the State of California against its students with disabilities. California has adopted a new state law – Assembly Bill 130 – that sharply limits alternatives to in-person classes, leaving families whose children are at higher risk from COVID-19 with only one option: Independent Study. Alarmingly, families of students with disabilities have found that California's Independent Study program is effectively closed to them because of the program design or absence of needed accommodations.

2.      The new State statute requires school districts to automatically enroll non-disabled students in distance learning through Independent Study if their parents determine that their "health would be put at risk by in-person instruction." Cal. Educ. Code § 51745(a)(6). In contrast, students with disabilities face multiple hurdles in attempting to access the same program.

3.      Plaintiff L.N. is nine years old and has multiple disabilities, including a severely compromised immune system and chronic lung disease that put him at much higher risk from exposure to COVID-19. Nonetheless, he was able to access his educational program last year safely and effectively through distance learning. When his school started in August 2021, his mother asked for distance learning through Independent Study. However, the new State law bans students who are in special education, such as L.N., from participating in Independent Study "unless the pupil's individualized education program [IEP] specifically provides for this participation." Cal. Educ. Code § 51745(c). L.N. and his mother are still waiting for the school district to convene an IEP meeting to consider his eligibility for Independent Study or any other alternative to in-person classes. In the interim, school district personnel told L.N.'s mother that he is unlikely to qualify for Independent Study, that they will not provide any of his special education services and supports even if he were to qualify, and until then, he is expected to attend in-person despite his health conditions. To protect his health, he remains at home but has already missed a month of school.

4.      Plaintiff E.E. is six years old and has Down syndrome and associated medical

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI        First Am. Compl.

conditions that make her highly susceptible to infection and at heightened risk of serious
complications if she is exposed to COVID-19. Her mother requested Independent Study for
both E.E. and her twin sister, who is typically developing. The school district enrolled E.E.'s
non-disabled sister immediately. E.E. had to wait several weeks with no instruction until the
school could convene an IEP meeting because of Cal. Educ. Code § 51745(c). When the IEP
team finally met, school district staff said E.E. would not be able to access Independent Study
successfully due to her need for significant adult support, and that regardless, they would only
provide her with the support services in her IEP if she attended in person, not through
Independent Study. E.E. is still at home with no educational program, even though school
started more than a month ago.

5.      Plaintiff M.G. is eleven years old and has Down syndrome. His IEP provides
educational supports, including access to an alternative curriculum, that allowed him to
participate successfully in distance learning last year. M.G.'s disability and additional
respiratory problems put him at higher risk of health complications if exposed to COVID-19,
and he is too young to be vaccinated. His mother asked for distance learning as an alternative to
in-person classes. The IEP team told her that the only option was Independent Study, but that
they could not provide the alternative curriculum that her son needs as an accommodation. This
is because of Cal. Educ. Code § 51745(a)(3), which expressly states that Independent Study
"shall not be provided as an alternative curriculum." The District also rejected his application
for Home Hospital Instruction on the basis that his disability is not temporary.

6.      Plaintiff H.H. is twenty-one years old and has autism, cerebral palsy, and other
disabilities. She also has associated medical conditions, including Tracheomalacia, which
requires use of a tracheostomy tube, and chronic lung disease. Through her IEP, H.H. was able
to participate successfully in distance learning last year through a non-public school that offers
an alternative curriculum. When she started back to school remotely in August 2021, her classes
were canceled after one day. Her school explained that the state education agency would not
allow non-public schools to offer virtual options. Later, the district agreed that H.H. could enroll
in very limited distance learning hours through Independent Study or Home Hospital but

4

without any of the services in her IEP. H.H. has now been at home with no educational programing for almost a month.

7.    Plaintiff K.H. is 13 years old and has cerebral palsy, epilepsy, and additional disabilities. She has a history of pneumonia due to her disabilities. She also struggles to consistently wear a face mask. She is at increased risk of severe outcomes from exposure to COVID-19. With adaptations to schoolwork and a 1-to-1 aide paraeducator through her IEP, she was able to participate successfully in distance learning last year. K.H.'s school district is offering independent study through a virtual academy that allows students to customize remote classes. K.H.'s parents wanted her to participate in the virtual academy with her nondisabled peers, and requested an IEP meeting. The IEP team refused to allow K.H. to enroll in the virtual academy, and said that her only option is Home Hospital Instruction, a program in which she would have no interaction with non-disabled peers.

8.    Other disabled students have been allowed to enroll in Independent Study, but only if they sign a written waiver, agreeing to give up their right to the accommodations and supports they need to learn. As a result of the new state law, California's state education system denies disabled students the alternative to in-person classes that it provides to other students, and denies then accommodations they need in the Independent Study program.

9.    The exclusion of students with disabilities from access to distance learning through Independent Study constitutes unlawful discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Disabled students and their families now face an intolerable choice: to attend in-person classes (despite the danger of the Delta Variant to vulnerable children), or remain at home without access to their schools and the educational services they need to learn and succeed.

10.    Defendants State of California, the State Board of Education and the California Department of Education ("CDE") are collectively responsible for implementing California's public education program. By adopting and implementing the new Independent Study statute, they are administering the statewide public education program in a manner that discriminates

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI     First Am. Compl.

against disabled students, and perpetuates discriminatory actions by local school districts, which are their agents and contractors.

11.     Plaintiffs, and thousands of similarly situated students with disabilities, need urgent relief in the form of a Temporary Restraining Order and Preliminary injunction. With the spread of the Delta Variant, in-person classrooms can quickly and silently become hotbeds of infection. Students under twelve years of age cannot be vaccinated, and face increased risk of illness from the Delta Variant than from earlier forms of COVID-19. Students who are medically compromised risk debilitating illness from exposure. Family members who are medically compromised also face life-threatening risks if students attend in-person classes and contract COVID. But these students also face serious risks if their families refuse to send to them to in-person classes. They will lose precious instructional time and risk truancy citations if they fail to attend. If they attempt to participate in Independent Study without the accommodations they need, they will not be able to access the curriculum and will be effectively excluded from full and equal access to their educational program.

12.     During the 2020-21 school year, the students with IEPs had "distance learning plans" that reflected how the services in their IEPs would be provided during the COVID-19 pandemic. This is the status quo – the last uncontested state between the parties in this matter. While not perfect, many students, including Plaintiffs E.E., L.N., H.H., and K.H., adapted and were able to make educational progress during distance learning. The pandemic is not over. For a significant subset of students with disabilities, being forced to attend in-person classes would put them at serious risk of harm. Allowing them to be denied access to any distance learning program, or forcing them to accept an online program with few or none of the services they require to access their education, ensures that the very students who have been harmed the most by the pandemic are now put in a position which will inevitably exacerbate their learning loss.

13.     Plaintiffs seek a temporary restraining order and preliminary injunction to restore the status quo by (a) enjoining Assembly Bill 130 to the extent it limits or otherwise prohibits school districts' ability to provide special education instruction and related services virtually; and (b) ensuring students with disabilities have meaningful access to distance learning programs

*E.E. et al. v. State of California, et al.*, Case No.: 3:21-cv-07585-SI          First Am. Compl.

1  that are comparable to the programs they received during the 2020-21 school year. Only such an

2  order will protect the health and safety of the Student Plaintiffs and enable them and the

3  putative class to continue their education until they are safe to resume in-person classes.

4  Plaintiffs also seek a permanent injunction and declaratory relief against all Defendants.

5  **JURISDICTION AND VENUE**

6        14.     This action for declaratory and injunctive relief arises under Title II of the

7  Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the

8  Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

9        15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

10  and 1343, because the matters in controversy arise from federal questions under the Constitution

11  or laws of the United States. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction

12  to declare the rights of the parties and to grant all further relief deemed necessary and proper.

13        16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b). The actions and

14  omissions that are the subject of this complaint took place within the Northern District, Plaintiff

15  Disability Rights Education and Defense Fund is located in the Oakland Division of the

16  Northern District, Plaintiff The Arc of California has chapters within the Northern District, and

17  the Attorney General for the Defendant State of California has an office in Oakland.

18  **PARTIES**

19        17.     Plaintiff E.E. is six years old and lives in California with her family. She has

20  Down syndrome and associated medical conditions, and qualifies as an individual with a

21  disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. She also

22  qualifies for special education services on the basis of intellectual disability and has an IEP.

23  Plaintiff brings this action through her parent and guardian ad litem, A.J.

24        18.     Plaintiff L.N. is nine years old and lives in California with his family. He has

25  multiple disabilities and qualifies as an individual with a disability for purposes of the ADA and

26  Section 504 of the Rehabilitation Act of 1973. He also qualifies for special education services

27  under Other Health Impairment and Speech or Language Impairment. He is in the fourth grade

28  and has an IEP. He brings this action through his parent and guardian ad litem, K.N.

7

19.     Plaintiff H.H. is twenty-one years old and lives in California with her family. She has multiple disabilities and qualifies as an individual with a disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. She also qualifies for special education under the categories of multiple disability and hard of hearing and has an IEP. She is under a conservatorship and brings this action through her parent and guardian ad litem, M.H.

20.     Plaintiff M.G. is eleven years old and lives in California with his family. He has Down syndrome and asthma and qualifies as an individual with a disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. He also qualifies for special education under the categories of Intellectual Disability and has an IEP. He brings this action through his parent and guardian ad litem, S.G.

21.     Plaintiff K.H. is thirteen years old and lives in California with her family. She has cerebral palsy, epilepsy, and other medically-related disabilities, and qualifies as an individual with a disability for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973. She qualifies for special education under the categories of orthopedic impairment and visual impairment and has an IEP. She brings this action through his parent and guardian ad litem, C.H.

22.     Plaintiff Disability Rights Education and Defense Fund (DREDF), founded in 1979, is a national nonprofit civil rights law and policy center located in Berkeley, California, dedicated to protecting and advancing the civil rights of people with disabilities. DREDF is directed by individuals with disabilities and parents who have children with disabilities, and pursues its mission through education, advocacy and law reform efforts. As a Parent Training and Information Center funded by the U.S. Department of Education, DREDF serves families of children with disabilities and disabled young adults in 33 California counties. The Parent Training Institute provides free assistance to families to help them understand their education rights, support their participation in special education processes at public schools, and resolve problems. DREDF provides training, technical assistance through phone and email, and referrals to support families on securing educational rights and entitlements under laws including the ADA, the Individuals with Disabilities Education Act (IDEA), and Section 504 of

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI       First Am. Compl.

1    the Rehabilitation Act. DREDF also responds to calls and emails from across the state.

2         23.    Since the amended Cal. Educ. Code § 51745 went into effect, Plaintiff DREDF

3    has been forced to divert organizational resources to respond to a substantial number of contacts

4    from families with children with disabilities who are heightened risk of complications if

5    exposed to COVID-19. DREDF staff have prepared "know your rights" materials about

6    Independent Study, but more has been required. DREDF has fielded increased numbers of calls

7    from families are struggling to find a placement for their student with a disability that meets

8    their student's educational needs and keeps them safe from COVID-19 and its effects. These

9    families are reporting that they are being delayed and denied access to Independent Study based

10   on disability, and are being told that they must waive educational rights to access the program.

11   The families with students with disabilities who are contacting DREDF about their problems

12   finding alternatives to in-person classes are DREDF's constituents.

13        24.    The Arc of California is the state office of the nation's largest and oldest

14   community-based organization providing services, supports, and advocacy with and for people

15   with intellectual and developmental disabilities and their families. The state office represents 19

16   smaller chapters throughout California that serve thousands of individuals with disabilities, their

17   families, and services providers. The mission of The Arc of California is to promote and protect

18   the rights of individuals with intellectual and developmental disabilities and actively support

19   their full inclusion and participation in the community throughout their lifetime. The Arc of

20   California represents the public interest, supporting and acting with and on behalf of all people

21   with intellectual and developmental disabilities and their families regardless of the type of

22   disability or membership in The Arc.

23        25.    Since the enactment of Assembly Bill 130 in July 2021, The Arc of California

24   has been forced to divert organizational resources to respond to a substantial number of calls

25   and inquiries from families regarding denial, delays, and limitations of educational services.

26   Families reported that school districts either denied their children Independent Study or

27   informed them that in order to be placed in the Independent Study program their children would

28   have to forgo the services and supports afforded to them in their current IEPs. The Arc of

California has also conducted "know your rights" trainings for families and disseminated guidance on Assembly Bill 130 to its Chapters and affiliated service providers. The families with students with disabilities who are contacting The Arc of California about their problems finding alternatives to in-person classes are The Arc of California's constituents.

26.     Defendant State of California is the legal and political entity with plenary responsibility for educating all California public school students, including the responsibility to establish and maintain the system of common schools and a free education, under Article IX, section 5 of the California Constitution, and to assure that all California public school students receive their individual and fundamental right to an equal education, under the equal protection clauses of the California Constitution, Article I, section 7(a), and Article IV, section 16(a).

27.     Defendant State Board of Education and its members are responsible for determining the policies governing California's schools and for adopting rules and regulations for the supervision and administration of all local school districts. Pursuant to California Education Code sections 33030-32, the State Board of Education is required to supervise local school districts to ensure that they comply with State and federal law requirements concerning educational services.

28.     Defendant California Department of Education ("CDE") is the department of California's state government responsible for administering and enforcing laws related to education. Cal. Educ. Code § 33308. Pursuant to California Education Code sections 33300–16, CDE is also responsible for ensuring that children with disabilities in California receive a free appropriate public education ("FAPE"). 20 U.S.C. §§ 1412(a)(1)(A), (a)(11)(A).

## CLASS ALLEGATIONS

29.     Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Student Plaintiffs bring this action for injunctive and declaratory relief on their own behalf and on behalf of all similarly situated students. Student Plaintiffs seek to represent the following class in this matter, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), as follows: All California students who, now or in the future, have an Individual Education Plan and whose parent, guardian or education rights holder has determined that in-person instruction would put

10

the student at risk.

30.     This action is an appropriate class action under Rule 23(b)(2), as the Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate.

31.     The members of the Class are so numerous that joinder of all such persons is impracticable. Approximately 721,000 students in California have disabilities and make up 11.7% of the school population. CDE California School Dashboard, https://www.caschooldashboard.org/reports/ca/2020.

32.     Individual action by class members is impracticable. Class members face significant barriers to asserting their rights, including misinformation and intimidation from their school districts and their inability to join the State Defendants and to assert ADA claims in administrative hearings.

33.     There are questions of law and fact common to the Class identified above, namely:

   A.  By limiting the type of distance learning programs which Local Educational Agencies may offer to a single format which is, by definition, inaccessible to most students with disabilities, the statute at issue discriminates against all class members.

   B.  All members of the proposed class have been denied timely enrollment in an educational program that is safe and provides then meaningful access to the benefits and opportunities for California's public education system.

   C.  All members of the proposed class are denied safe and equal access to the public education system because the services, supports, and accommodations which they require to access them are being denied.

   D.  All members of the proposed class have been denied the ability to access a public education program safely and in a manner that protects them from undue risk of adverse health consequences, which is equal to that afforded to their non-disabled peers.

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI        First Am. Compl.

1       34.     The claims of the Student Plaintiffs are typical of the claims of the Class

2   identified above, in that they are students with a disability and have an IEP and their parent or

3   guardian has determined that in-person instruction will place them at risk.

4       35.     The Student Plaintiffs are adequate class representatives because they suffer the

5   same injury as other class members. They will fairly and adequately protect the interests of the

6   Class. The Student Plaintiffs do not have any interests antagonistic to the members of any Class.

7   The relief sought by Plaintiffs will inure to the benefit to the members of each Class.

8       36.     Plaintiffs' counsel are experienced, skilled, and knowledgeable about special

9   education, civil rights litigation, disability rights, and class action litigation.

10      37.     Prosecution of separate actions by individual class members would create a risk

11  of inconsistent or varying adjudication with respect to individual class members, which would

12  establish incompatible standards of conduct for Defendants or could be dispositive of the

13  interests of the other members or substantially impair or impede the ability to protect their

14  interests.

15      38.     A class action is superior to other available methods for the fair and efficient

16  adjudication of the controversy. A multiplicity of suits with consequent burden on the courts

17  and Defendants should be avoided. It would be impossible for all class members to intervene as

18  parties in this action.

19                              **STATEMENT OF FACTS**

20      39.     In 2020, at the beginning of the COVID-19 pandemic, California enacted new

21  statutes to ensure that school districts offered students access to distance learning. Cal. Educ.

22  Code § 43500 et seq. Under this program, "Distance learning shall include … [a]cademic and

23  other supports designed to address the needs of pupils who are not performing at grade level, or

24  need support in other areas, such as English learners, *pupils with exceptional needs*, pupils in

25  foster care or experiencing homelessness, and pupils requiring mental health supports." *Id.*

26  § 43503(b)(3)(emphasis added).

27      40.     Consequently, in the 2020-21 school year, students with IEPs had "Distance

28  Learning Plans" that explained how their school district would provide the supports and related

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI       First Am. Compl.

1    services they needed to learn. Some disabled students, such as Plaintiffs E.E., L.N., M.G., H.H.,

2    and K.H. adapted to distance learning and made educational progress.

3        41.    The distance learning provisions that California adopted in 2020 had a sunset

4    date of June 30, 2021. *Id.,* § 43511.

5        42.    In July 2021, California adopted a new statute that allowed funding for distance

6    learning only for students enrolled in the State's Independent Study program. Assembly Bill

7    (AB) 130 (Chapter 44, Statutes of 2021), approved on July 9, 2021. The new statute provides

8    that Independent Study will be offered to students "whose health would be put at risk by in-

9    person instruction, as determined by the parent or guardian of the pupil." Cal. Educ. Code §

10   51745(a)(6). No funding is available to school districts to provide distance learning other than

11   through Independent Study.

12       43.    However, the statute also provides that students with disabilities "shall not

13   participate in independent study, unless the pupil's individualized education program [IEP] …

14   specifically provides for that participation." *Id.* § 51745(c) (emphasis added). Cal. Educ. Code

15   § 57149.5(a)(7) includes similar language: "An individual with exceptional needs, as defined in

16   Section 56026, shall not participate in course-based independent study, unless the pupil's [IEP]

17   developed pursuant to [the state special education statute] specifically provides for that

18   participation."

19       44.    As the Delta Variant surged in California and the beginning of school

20   approached, more parents and caregivers determined that their children were at risk from in-

21   person classes. Due to the new state law, the only way to access the distance learning these

22   families had in the 2020-21 school year was through Independent Study.

23       45.    Families of disabled children with IEP plans have faced multiple barriers to

24   accessing distance learning through Independent Study. These include (a) an outright denial of

25   Independent Study, (b) an offer of distance learning but without the services and

26   accommodations that the student needs to learn and which were previously included in their

27   distance learning plans, and (c) long delays in convening required IEPs that leave families in

28   limbo for weeks and months.

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI      First Am. Compl.

**Plaintiffs and other similarly situated children are denied**

**the alternatives to in-person classes available to non-disabled students**

46.     Plaintiff E.E. is six years old and has Down syndrome, an intellectual disability with associated medical conditions. Her IEP provides extensive services such as a full-time behavior aide and speech, language and occupational therapy. E.E. has a twin sister who is typically developing and does not have a disability. Like many other children with Down syndrome, E.E. is at higher risk of health complications if exposed to COVID-19, so the twin's mother, A.J., requested distance learning for both children. The school district approved Independent study for her non-disabled twin, but required prior approval from E.E.'s IEP team. At the IEP meeting, district staff said that E.E. would lose all her support services if she enrolled in Independent Study. When A.J. protested that E.E. needed these to learn, school staff said her only choice was to take E.E. to in-person classes, regardless of the risk. Because of this impasse, E.E. has been home with no access to classes since school began. In contrast, her non-disabled twin has been enrolled in Independent Study from the beginning.

47.     Plaintiff L.N. is nine years old, and has developmental disabilities secondary to significant medical conditions. He is at extreme risk of complications if he contracts COVID-19. During the 2020-2021 school year, L.N. was able to safely access his educational program through distance learning, and his mother believed this would continue in current school year. But shortly before the school year began, she was informed that an IEP meeting had to be convened prior to his enrollment and that, even if L.N. qualified for Independent Study, he would not receive any of his special education services. A meeting was convened on the first day of school but ended without the District making an offer of FAPE. District staff suggested that K.N obtain a doctor's note authorizing Home Hospital Instruction for her son, but cautioned that if approved, he would not receive any of his IEP services and only 1 hour a day of instruction. To date, the school district has not offered a date to reconvene L.N.'s IEP, and has not offered any form of interim instruction. School staff have also told K.N. that they expect her son to attend school in person until his IEP is held, despite their acknowledgement that it is not safe for him to do so because of his medical conditions.

14

*E.E. et al. v. State of California, et al.*, Case No.: 3:21-cv-07585-SI       First Am. Compl.

48.     On August 25, 2021, L.N.'s mother watched a virtual town hall and recorded webinar from L.N.'s school district about Independent Study. District staff stated that students with special needs were unlikely to qualify, but to request an IEP meeting to see if their child was an exception to this general rule. School staff also said that none of the required IEP meetings would be held prior to school starting, since the district had 30 days to convene the IEP meeting after the start of school.

49.     Plaintiff M.G. is eleven years old and has Down syndrome. Like many other students with cognitive disabilities, M.G. has an IEP that provides access to an alternative curriculum. M.G. attends the same school district as Plaintiff L.N., and his parent saw the same recorded webinar from their school district. District staff advised the public that Independent Study is the only alternative to in-person classes, but it is only for students who "can follow a general education curriculum" and who only need a general education teacher, not a special education teacher or other special education service provider.

50.     Plaintiff H.H. is 21 years old and has developmental disabilities and related medical conditions. Her non-public school provided her with a virtual learning program at the start of the school year but stopped after one day. The school district explained that Assembly Bill 130 did not permit non-public schools to offer virtual learning programs. H.H.'s mother, M.H., filed a Complaint Resolution Procedure ("CRP") complaint against her district. In its Investigation Report, the CDE verified M.H.'s factual allegation that on August 27, 2021, the non-public school discontinued their remote learning program pursuant to AB 130. Despite this finding, Defendant CDE did not identify any violations related to the discontinuation of H.H.'s remote learning program or order any individual relief for H.H.

51.     Plaintiff K.H. is 13 years old and has cerebral palsy, epilepsy, and a history of pneumonia due to her disabilities. K.H.'s school district launched a virtual academy program for the 2021-22 school year that allows students to customize remote classes to fit their needs. K.H.'s parent filled out an application for the program but had to call an IEP meeting to get formal approval. The IEP team refused to allow K.H. to enroll in the virtual academy, and said that her only option is Home Hospital Instruction, a program in which she would have no

interaction with non-disabled peers.

52.     Other similarly situated disabled students face the same barriers to distance learning as do the Student Plaintiffs. These children and their families are all constituents of DREDF and The Arc of California and their special education advocacy.

a.   R.C. has autism and other medical conditions that place him at higher risk of health complications if exposed to COVID-19, so his parent wants him to continue in distance learning. He has an IEP and attended a non-public school last year that offered him an alternative curriculum and additional supports during distance learning. His school was ready to provide him distance learning when classes resumed in August 2021. Instead, the school district intervened, saying that R.C. could not continue in distance learning at the non-public school that had served him so well. His IEP team eventually met but refused to approve Independent Study or distance learning with her son's previous non-public school. R.C. is still at home with no educational services.

b.   M.C. has Down syndrome and is immunocompromised, with a low count of white blood cells and "infection-fighting" cells. With modifications to the curriculum and a 1-to-1 aide, M.C. was able to participate successfully in distance learning last school year. For 2021-22, the family requested distance learning continue through Independent Study. When the district finally held an IEP meeting, the IEP team found that M.C. could not learn independently. The district refused to place him in Independent Study. At this point, M.C. has been in limbo for more than a month, without any access to direct educational instruction or services, waiting to see if the district approves any other alternative to in-person classes.

**The design of independent study excludes students**
**with intellectual and developmental disabilities.**

53.     The design of Independent Study excludes students who need adult assistance to learn. Many children with more severe disabilities fall into this category, including those

1   intellectual and developmental disabilities such as autism and Down syndrome. According to

2   data from Defendant CDE, more than 150,000 students are eligible for special education based

3   on autism or intellectual disability. California Department of Education, "Special Education –

4   CalEdFacts," https://www.cde.ca.gov/sp/se/sr/cefspeced.asp.

5      54. For example, the IEP team for Plaintiff E.E. refused to approve her for

6   Independent Study because she needs significant adult support to learn. Many school district

7   IEP teams across the State are refusing to approve Independent Study on this basis for other

8   similarly situated students.

9      55. CDE supports this restriction in its Independent Study FAQ webpage, which

10   states: "Pupils in independent study shall have the ability to work independently and maintain

11   satisfactory educational progress" as defined under the California Education Code. Further,

12   "success in independent study requires motivation and a strong commitment on the part of the

13   student and, especially for a young student, his or her parents/guardians/caregivers. It also

14   requires sufficient academic preparation to enable the student to work independently."

15   California Department of Education, "Independent Study: Frequently Asked Questions,"

16   (updated August, 23, 2021), https://www.cde.ca.gov/sp/eo/is/faq.asp.

17      56. Other districts also take the position that students who need adult assistance to

18   learn are not eligible for Independent Study. One FAQ from a virtual "Office Hours" with the

19   Los Angeles County Office of Education on September 7, 2021, states flatly: "Question: 'How

20   can a very involved student in a self-contained class requiring a one-on-one assistant

21   "independently" be recommended for an independent study program?' Answer: 'The IEP team

22   will need to make the determination. However, the term "Independent Study" implies that a

23   child will be able to complete the work independently or with minimal adult help.'" Defendant

24   CDE arranged this Office Hours session and endorsed this FAQ.

25      57. Since Independent Study is the only way to access distance learning, this

26   framework excludes students who need adult supports and other accommodations to learn, such

27   as those with intellectual and developmental disabilities.

28      58. The design of Independent Study also excludes disabled students who require a

17

*E.E. et al. v. State of California, et al.*, Case No.: 3:21-cv-07585-SI   First Am. Compl.

modified curriculum. Many students with moderate to severe disabilities, including many with intellectual and developmental disabilities, cannot access the State's "Common Core" general education curriculum without modifications, and receive instruction based on alternative achievement standards, or an "alternate curriculum." 34 C.F.R. §§ 200.1(d), 300.160(c). Such curricula are "[d]esigned for students with the most significant cognitive disabilities." *Id*.

59.     However, California law on Independent Study provides that it is only "designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum." Cal. Educ. Code § 51745(a)(3).

60.     For example, Plaintiff L.N.'s large urban school district announced in a town hall meeting that Independent Study will only offer the general education curriculum without any special education services. Many other students with IEPs have been denied Independent Study because they are on an alternate/alternative curriculum. See, e.g., Paragraphs 5-7, *supra*, re: Plaintiffs M.G., H.H., and K.H.; Paragraph 47, *supra*., re: M.C. (student with Down syndrome) and R.C. (student with autism).

### No State guidance re: denial of accommodations in Independent Study

61.     California's implementation of Independent Study permits school districts to enroll disabled students on the condition that they give up their rights to accommodations, including their rights under IDEA. Under the earlier distance learning statute in effect in the 2020-21 school year, each student had a distance learning plan that listed the accommodations they needed. IEP teams are refusing to offer these same services through Independent Study. These IEP teams make a single offer of a Free and Appropriate Public Education ("FAPE"), which is through in-person classes only.

62.     If families insist that their child needs distance learning, districts are offering Independent Study but without the services listed in the student's IEP. In one-sided negotiations, districts often compel families to sign agreements waiving their rights under IDEA and the ADA as a condition of participating in Independent Study.

63.     Plaintiffs DREDF, The Arc of California, and other groups that assist with special education issues have been contacted by and advised numerous families who report that

*E.E. et al. v. State of California, et al.*, Case No.: 3:21-cv-07585-SI      First Am. Compl.

they have been forced to sign such waivers.

64.      One local school board has developed a standard waiver agreement that it announced publicly as a "proposed solution" for students when the IEP team refuses to offer distance learning: "The agreement is that the student can participate in [the school district's] Virtual Academy (Independent Study), but the student's educational rights' holder waives all FAPE claims (since the IEP team determined Independent Study is not FAPE).[1]

65.      CDE has issued minimal guidance regarding Independent Study and students with IEPs. This guidance only reiterates that a student's IEP team must determine if Independent Study is appropriate. It fails to ensure that school districts offer disabled students equal access to distance learning through Independent Study or other means.

66.      CDE has endorsed the use of Home Hospital Instruction as an alternative "work-around" for disabled students. This is an option under California law for students who have a "temporary disability that makes attendance in the regular day classes or alternative education program impossible or inadvisable." Cal. Educ. Code § 48206.3. IEP teams can place students with disabilities on Home Hospital Instruction but only with a report from a medical provider "stating the diagnosed condition and certifying that the severity of the condition prevents the pupil from attending a less restrictive placement." Cal. Code Regs., tit. 5, § 3051.4(d).

67.      Home Hospital Instruction is not a workable alternative for students with IEPs who are denied access to or accommodations in Independent Study. Plaintiffs L.N.'s and M.G.'s school district held a virtual town hall in which school staff estimated that only forty children would qualify for Home Hospital Instruction, out of more than 9,000 students with disabilities. School staff also told L.N.'s mother that Home Hospital Instruction was only for students who would miss school temporarily, for up to six weeks.

68.      Even those students approved for Home Hospital Instruction receive little benefit. Most districts offer Home Hospital Instruction for only one hour per day, which is the

---

[1] *See* Pleasanton USD Board materials, September 23, 2021, available from: https://simbli.eboardsolutions.com/SB_Meetings/ViewMeeting.aspx?S=36030382&MID=8254, https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=36030382&AID=168845&MID=8254

1  minimum required in the statute. Cal. Educ. Code § 48206.3(c)(1).  L.N.'s example is typical.

2  His school district told his parent that, even if he qualified, he would get only one hour of

3  instruction per day. School districts are also telling families that students in Home Hospital

4  Instruction will receive few or none of the services in the child's IEP. The mother of Plaintiff

5  L.N. was repeatedly told by school personnel that he will not be provided any of his special

6  education services and supports if he is approved for the Home Hospital program.

7      69.    Home hospital is also more isolating because it provides no opportunity for

8  interaction with nondisabled peers. For example, the school district where Plaintiff K.H. attends

9  has arranged for a "Virtual Academy" for the many students who are choosing Independent

10 Study. The IEP team for student K.H. would not approve the Virtual Academy and instead

11 referred her to Home Hospital Instruction. Her mother has not agreed, because Home Hospital

12 does not provide the opportunity for interaction with nondisabled peers that the virtual academy

13 does. Interaction with friends and peers is critical to emotional and social growth for children

14 with disabilities.

15          **No rationale for giving disabled students fewer protections**

16          **in Independent study, versus distance learning or quarantines**

17      70.    The State treated students with disabilities far better during distance learning and

18 in emergency quarantines, both of which mandate special education rights. From March 2020-

19 June 2021, the State guaranteed that students with disabilities could participate in distance

20 learning with special education and related services required by the student's IEP. Cal. Educ.

21 Code § 43503(b)(4); Cal. Educ. Code § 43511(b). The State also required all IEPs include a

22 plan for service delivery in the event of qualifying emergencies where schools cannot deliver

23 services in person. Cal. Educ. Code § 56345(a)(9).

24      71.    Now, the State requires that students with disabilities who quarantine may

25 participate in Independent Study and must have access to their distance learning emergency

26 plan. Cal. Educ. Code § 46393. This already-existing distance learning system for quarantined

27 students demonstrates that it is a reasonable modification to provide distance learning to all

28 students with disabilities. There is no justifiable rationale for denying this to students who are

20

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI      First Am. Compl.

1  not quarantined but still need distance learning to ensure their health and safety from the

2  pandemic.

3  <center>**Discriminatory delays in accessing distance learning**</center>

4  72.   Disabled students also face discriminatory delays in enrollment. Such delays are

5  inevitable given that the Independent Study law requires that an IEP team be convened to

6  consider the request for Independent Study before any student with an IEP can be enrolled.

7  This process can take up to 30 days and has caused many students with disabilities to miss the

8  first weeks of school. Some students are still awaiting an IEP team meeting, more than a month

9  after the start of school. Non-disabled students were permitted to register immediately, did not

10  face this delay, and were not denied an education while waiting for a meeting. For students who

11  were permitted by their IEP teams to enroll in Independent Study, this built-in delay resulted in

12  disabled students registering for Independent Study later than non-disabled students, thereby

13  increasing the odds that they would end up on waiting lists for access to Independent Study.

14  73.   In addition, with Independent Study, students do not have the benefit of "stay

15  put," the IDEA provision that enables students to remain in their placement until a dispute is

16  resolved. The new law explicitly bans students from participating in Independent Study until

17  they have an IEP that "specifically provides for that participation." Cal. Educ. Code § 51745(c).

18  <center>**Plaintiffs will suffer irreparable injury**</center>

19  74.   The Student Plaintiffs, DREDF constituents, The Arc of California constituents,

20  and other similarly situated children face irreparable injury from Defendants' actions if they fail

21  to attend in-person classes – this can include truancy citations and hearings, loss of educational

22  progress and isolation from their peers.

23  75.   However, attending in-person classes is an even greater threat. The Student

24  Plaintiffs and other similarly situated students have underlying or associated medical conditions

25  that place them at much higher risk from a COVID-19 infection. "All people with serious

26  underlying chronic medical conditions like chronic lung disease, a serious heart condition, or a

27  weakened immune system seem to be more likely to get severely ill from COVID-19,"

28

<center>21</center>

1   according to the U.S. Centers for Disease Control & Prevention (CDC).[2] The Student Plaintiffs

2   and others profiled here display all these characteristics. Many children, such as Plaintiffs E.E.

3   and M.G., have Down syndrome and are at risk of serious, life-threatening complications from

4   COVID-19.[3] About half of all children with Down syndrome have heart defects that also

5   diminish lung capacity.[4] Other students who need Independent Study have asthma and lung

6   disease. According to the CDC, people with moderate to severe asthma are also more likely to

7   get severely ill from COVID-19.[5]

8          76.     A return to in-person classes poses a serious risk of infection for these students,

9   many of whom are too young to be vaccinated. Unfortunately, schools across the state continue

10  to experience COVID-19 outbreaks and exposure of thousands of students statewide.[6] The risk

11  of exposure to COVID-19 during in-person classes is real, even with masks.

---

[2] CDC, "COVID -19 Information and Resources,"
https://www.cdc.gov/ncbddd/humandevelopment/covid-19/people-with-disabilities.html.
[3] *Id.*
[4] National Down Syndrome Society, "The Heart and Down Syndrome,"
https://www.ndss.org/resources/the-heart-down-syndrome (heart defects in children with Down syndrome lead to narrowed arteries in the lungs and increased pressure and constriction of blood flow).
[5] CDC, "COVID -19 Information and Resources," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[6] *See, e.g.,* Los Angeles Times, "Coronavirus outbreaks in L.A. schools increase," September 2, 2021, https://www.latimes.com/california/story/2021-09-02/la-county-coronavirus-outbreaks-increase-in-l-a-county-schools; Los Angeles Times, "Tracking the coronavirus in LAUSD schools, " September 26, 2021, https://www.latimes.com/projects/lausd-covid-19-cases-tracking-spread-outbreaks/ ("There are currently 12 schools under investigation for an outbreak, which is defined as three or more cases transmitted at school over 14 days. In total, 502 of the 888 campuses on the district's dashboard have an active case, 57% of the total."); EdSource, "COVID closes rural California schools as Delta variant spreads," September 3, 2021, https://edsource.org/2021/covid-closes-rural-california-schools-as-delta-variant-spreads/660712; CBS News, "More Schools Closing Due To COVID Outbreaks," September 6, 2012, https://sacramento.cbslocal.com/2021/09/06/covid-outbreaks-schools-closing/; EdSource, "Covid testing was supposed to keep schools safe. What happened?" September 7, 2021, https://edsource.org/2021/covid-testing-was-supposed-to-keep-schools-safe-what-happened/660721 (shortages of testing and inconsistent protocols lead to outbreaks and quarantines).

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI       First Am. Compl.

77.     The Student Plaintiffs, DREDF constituents, and The Arc of California constituents described above are also irreparably injured by their forced absence from their school program. Research shows that absences from school have a disproportionate impact on student well-being, even after a short period of time.[7] Although many students struggled with distance learning in the 2020-21 school year, others made educational progress, including the Student Plaintiffs and other similarly situated DREDF and The Arc of California constituents. Their distance learning plans were effective in delivering the services in their IEP plans. Consequently, the interruption of their access to distance learning, whether through Independent Study or other means, has left them far behind where they would otherwise be.

78.     Home Hospital Instruction, if offered to some students, does very little to ameliorate the injury they experience, especially as compared to more robust distance learning programs they had last school year, or to Independent Study. At least through Independent Study, students have access to some live and classroom-style instruction. Cal. Educ. Code § 51747(e).

79.     The Student Plaintiffs, DREDF constituents, The Arc of California constituents, and others similarly situated are irreparably injured, even though they have the right to seek "compensatory education" in the form of in-kind educational services through the State special education administrative appeal system. *Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1496-97 (9th Cir. 1994). This remedy cannot restore the time that these children have lost. With limited hours in the day, children can only absorb so much at one time. More services later will not make up for the lost weeks of education that these children have and will continue to experience.

80.     Plaintiffs DREDF and The Arc of California are also irreparably injured by Defendants' actions, including from the diversion of resources required to respond to families facing barriers to distance learning, and by the harmful impact on DREDF's and The Arc of California's constituents.

---

[7] See, e.g., Attendance Works, "Key Research: Why Attendance Matters for Achievement and How Interventions Can Help," (2016), available from https://awareness.attendanceworks.org/wp-content/uploads/Research2016.pdf.

*E.E. et al. v. State of California, et al.*, Case No.: 3:21-cv-07585-SI          First Am. Compl.

1

2

**<u>FIRST CAUSE OF ACTION</u>**

**Violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq.**

3          81.     Plaintiffs incorporate by reference every allegation contained in the foregoing

4    paragraphs.

5          82.     Congress enacted the ADA, 42 U.S.C. § 12101 et seq., to provide a clear and

6    comprehensive national mandate for the elimination of discrimination against individuals with

7    disabilities and to provide strong and consistent standards for identifying such discrimination.

8    42 U.S.C. § 12101(b)(1)&(2).

9          83.     The ADA is based on Congress's findings that, inter alia, (i) "historically, society

10   has tended to isolate and segregate individuals with disabilities, and, despite some

11   improvements, such forms of discrimination against individuals with disabilities continue to be

12   a serious and pervasive social problem," 42 U.S.C. § 12101(a)(2). In addition, "individuals with

13   disabilities continually encounter various forms of discrimination, including … relegation to

14   lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C.

15   § 12101(a)(5).

16         84.     In enacting the ADA, Congress also found that "discrimination against

17   individuals with disabilities persists in such critical areas as … education." 42 U.S.C.

18   § 12101(a)(3).

19         85.     Title II of the ADA mandates that "no qualified individual with a disability shall,

20   by reason of such disability, be excluded from participation in or be denied the benefits of the

21   services, programs, or activities of a public entity, or be subjected to discrimination by any such

22   entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.130.

23         86.     Title II of the ADA applies to all of the activities of public entities, including

24   providing education. Each Defendant is either a public entity subject to Title II of the ADA or

25   an official responsible for supervising the operations of a public entity subject to Title II of the

26   ADA. 42 U.S.C. § 12131(1).

27         87.     The ADA directs the Attorney General to promulgate regulations enforcing Title

28   II of the ADA and provides guidance on their content. The regulations promulgated by the

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI          First Am. Compl.

Attorney General require public entities to "make reasonable modifications" to their programs and services "when the modifications are necessary to avoid discrimination." 28 C.F.R. § 35.130(b)(7).

88.     The regulations also specify that it is unlawful discrimination for a public entity to:

      a.     "Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 28 C.F.R. § 35.130(b)(1)(ii);

      b.     "Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," 28 C.F.R. § 35.130(b)(1)(iii);

      c.     Fail to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), which the Attorney General has defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible," 28 C.F.R. pt. 35, App. A, p. 450; or

      d.     "[U]tilize criteria or methods of administration … [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities," 28 C.F.R. § 35.130(b)(3)(ii).

89.     Plaintiffs E.E., L.N., M.G., H.H., and K.H. are qualified individuals with a disability within the meaning of the ADA. All have disabilities that substantially limit one of more major life activities, including communication, cognitive functioning, ability to learn and developing and maintaining relationships.

90.     As school-aged children, all are qualified to participate in Defendants' educational programs and services. 42 U.S.C. § 12131(2).

1    91.    Defendant State of California, the State Board of Education and the California

2  Department of Education are all "public entit[ies]" within the meaning of Title II of the ADA.

3    92.    During the 2020-21 school year, the Student Plaintiffs were able to participate

4  safely in a virtual classroom with their non-disabled peers through distance learning, and made

5  educational progress. However, because of their disabilities, they require accommodations and

6  modifications to access educational materials.

7    93.    Defendants have administered the State's public education program so as to

8  discriminate against and exclude the Student Plaintiffs and others similarly situated.

9    94.    The State's discriminatory administration of its public education program

10 directly resulted in the Student Plaintiffs' unequal access to the benefits of a public education,

11 and which denied them and others similarly situated from equal opportunities to benefit from

12 their education.

13    95.    The injury experienced by the Student Plaintiffs and others similarly situated due

14 to their exclusion from distance learning and from safe alternatives to in-person instruction is

15 directly traceable to Defendants' administration of the state educational program, its adoption of

16 a discriminatory state law, and its failure to ensure that Defendants and other school districts

17 comply with the ADA.

18    96.    Under the ADA, public entities are liable for discrimination in the programs they

19 administer, even if they are not directly engaged with the disabled individuals who participate in

20 these programs. The ADA applies to "all services, programs, and activities provided or *made*

21 *available* by public entities." 28 C.F.R. 35.102(a) (emphasis added).

22    97.    Here, Defendants have "made available" public educational services through

23 their local educational agencies. "A public entity, in providing any aid, benefit, or service, may

24 not, directly or *through contractual, licensing, or other arrangements,* on the basis of disability"

25 discriminate against individuals with disabilities. 28 C.F.R. § 35.130(b)(1) (emphasis added).

26    98.    Further, a public entity may not "[a]id or perpetuate discrimination . . . by

27 providing significant assistance to an agency, organization, or person that discriminates on the

28 basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's

26

1    program[.]" 28 C.F.R. § 35.130(b)(1)(v).

2        99.    Under state and federal law, CDE is responsible for the oversight and supervision

3    of local school districts. 20 U.S.C. § 1412(a)(11)(A); 34 C.F.R. § 300.149(a); *see also* Cal. Ed.

4    Code §§ 56100 and 56205.

5        100.   Defendants, including CDE, have failed to instruct the local school districts that

6    they oversee about the application of the ADA to Assembly Bill 130, including their obligation

7    to provide needed accommodations to enable disabled students to participate in the public

8    educational programs they offer.

9        101.   Defendants have adopted a method of administration that results in

10   discrimination by local education agencies in access to distance learning and the denial of safe

11   alternatives to in-person learning, and by its failure to monitor and supervise local districts,

12   which are part of its educational program.

13       102.   In addition, Defendants' Independent Study program perpetuates discrimination

14   by local districts, which also provide services to the disabled students who are beneficiaries of

15   California's public education program.

16       103.   CDE has failed to ensure that the local school districts that it oversees comply

17   with the ADA regarding distance learning and Independent Study.

18       104.   Through its acts and omissions described above, Defendants are violating the

19   ADA with regard to the Student Plaintiffs and others similarly situated by:

20              a.    Denying them an opportunity to participate in and benefit from

21                    educational services that is equal to that afforded other students;

22              b.    Failing to provide educational services that are as effective in affording

23                    equal opportunity to obtain the same result, gain the same benefit, or

24                    reach the same level of achievement as that provided other students;

25              c.    Denying the opportunity to receive educational programs and services in

26                    the most integrated setting appropriate to their needs;

27              d.    Failing to reasonably modify its programs and services as needed to avoid

28                    discrimination;

27

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI        First Am. Compl.

e.    Utilizing methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs; and

f.    Perpetuating the discrimination of local school districts.

105.    Other district courts in California have held Defendant CDE accountable for discriminatory actions by school districts, including violations of the ADA. *Emma C. v. Eastin,* 985 F. Supp. 940, 948 (N.D. Cal. 1997). There, the court found that CDE "failed to monitor [the district's] compliance with state and federal laws," denied the state's motion to dismiss and found that the complaint adequately alleged that the state agency "perpetuated this discrimination." *Id.*

106.    Congress specifically provided for a private right of action to enforce Title II. 42 U.S.C. § 12133 (incorporating the remedies and enforcement procedures available under Title VI of the Civil Rights Act, which includes a private right of action).

107.    The Title II regulations upon which Plaintiffs rely were promulgated at the specific direction of Congress and do not impose obligations beyond the reach of Title II. 42 U.S.C. § 12134(a).

108.    As a result of Defendants' actions and inaction, Plaintiffs and others similarly situated have suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, the Student Plaintiffs have suffered, and continue to suffer loss of equal educational opportunity, denial of their access to appropriate programs, accommodations, modifications, services and access required for Plaintiffs' disabilities, and its exclusion of Student Plaintiffs.

109.    Plaintiffs DREDF and The Arc of California have also suffered injury from the diversion of its limited resources to respond to the consequences of Defendants' actions and inaction.

110.    Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs and others similarly situated continue to suffer harm and

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI    First Am. Compl.

1    therefore speedy and immediate relief is appropriate.

2        111.    Plaintiff seeks injunctive and declaratory relief, damages and attorneys' fees and

3    costs as a result.

4                              **SECOND CAUSE OF ACTION**

5              **Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)**

6        112.    Plaintiffs incorporate by reference each and every allegation contained in the

7    foregoing paragraphs.

8        113.    Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "No

9    otherwise qualified individual with a disability . . . shall, solely by reason of her or his

10   disability, be excluded from the participation in, be denied the benefits of, or be subjected to

11   discrimination under any program or activity receiving Federal financial assistance . . . ." 29

12   U.S.C. § 794(a).

13       114.    The regulations implementing Section 504 provide protections that parallel those

14   under the ADA. 45 C.F.R. §§ 84.4(b), 84.21, 84.52.

15       115.    All Defendants are recipients of federal financial assistance within the meaning

16   of Section 504, and its implementing regulations.

17       116.    Special education services are a "program or activity receiving Federal financial

18   assistance" because Defendants receive federal financial assistance for these services.

19       117.    The Student Plaintiffs are qualified individuals with disabilities within the

20   meaning of Section 504. They have impairments that limit their life activities. They are

21   otherwise qualified to participate in and receive benefits from Defendants' programs and

22   services. 29 U.S.C. § 794(b).

23       118.    At all times relevant, Defendants received federal financial assistance for the

24   public educational services and programs they provide.

25       119.    Under Section 504, a qualified individual with a disability may not, solely by

26   reason of his/her disability, be subjected to discrimination, excluded from participation in, or

27   denied the benefits of, any program or activity receiving Federal financial assistance. 29 U.S.C.

28   § 794(a).

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI        First Am. Compl.

1    120.    Under Section 504, the phrase "program or activity" includes state and local

2    educational agency. 29 U.S.C. § 794(b)(2)(B).

3    121.    Recipients of federal financial assistance are prohibited from denying a qualified

4    person with a disability any health, welfare, or other social services or benefits on the basis of

5    disability. 45 C.F.R. § 84.52(a)(1).

6    122.    Recipients of federal financial assistance may not afford a qualified individual

7    with a disability an opportunity to receive health, welfare, or other social services or benefits

8    that is not equal to that afforded people without disabilities. 45 C.F.R. § 84.52(a)(2).

9    123.    Recipients of federal financial assistance may not, on the basis of disability,

10    provide a qualified person with a disability health, welfare, or other social services or benefits

11    that are not as effective as the benefits or services provided to others. 45 C.F.R. § 84.52(a)(3).

12    124.    Recipients of federal financial assistance may not provide any health, welfare, or

13    other social services or benefits in a manner that limits or has the effect of limiting the

14    participation of qualified individuals with disabilities. 45 C.F.R. § 84.52(a)(4).

15    125.    Recipients of federal financial assistance must ensure that the aids, benefits and

16    services provided "afford handicapped persons equal opportunity to obtain the same result, to

17    gain the same benefit, or to reach the same level of achievement." 34 C.F.R. §104.4(b)(2).

18    126.    Recipients of federal financial assistance may not "[p]rovide a qualified

19    handicapped person with an aid, benefit, or service that is not as effective as that provided to

20    others," *Id*. at §104.4(b)(1)(iii), and may not "[a]fford a qualified handicapped person an

21    opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that

22    afforded others." *Id*. at §104.4(b)(1)(ii).

23    127.    Like the regulations implementing the ADA, the regulations implementing

24    Section 504 also prohibit discriminatory methods of administration. "A recipient may not,

25    directly or through contractual or other arrangements, utilize criteria or methods of

26    administration (i) that have the effect of subjecting qualified handicapped persons to

27    discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or

28    substantially impairing accomplishment of the objectives of the recipient's program or activity

30

with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(b)(4); 45 C.F.R. § 84.4(b)(4).

128.     Defendants have violated Section 504 by adopting and implementing a new Independent Study law that discriminates against the Student Plaintiffs and other students with disabilities.

129.     Defendants have adopted methods of administering this statute that result in and perpetuate discrimination, that exclude Plaintiffs from participation in distance learning and safe alternatives to in-person learning, and that provide them with a benefit that is not equal to and less effective than that provided to others.

130.     Defendants violated Section 504 through adopting, approving and implementing a practice that the only alternative to in-person learning is Independent Study, a practice that results in discrimination against students with disabilities, and by failing to oversee local school districts to ensure that they do not discriminate.

131.     Defendants have adopted methods of administration that result in discrimination by local education agencies in the provision of safe alternatives to in-person learning, and by allowing districts to deny students accommodations in Independent Study. Defendants have failed to monitor and supervise local districts, which are part of its educational program.

132.     In addition, Defendants' Independent Study program perpetuates discrimination by local districts, which are also agencies of the State of California within the meaning of Section 504. See, e.g., *Emma C. v. Eastin,* 985 F. Supp. 940, 948 (N.D. Cal. 1997) (holding that a recipient of federal funds discriminates on the basis of disability when it perpetuates discrimination by providing assistance to another entity that in turn discriminates).

133.     Defendants committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiffs' rights, particularly given the length of time the problems persisted and the severity of the problems.

134.     The Student Plaintiffs and others similarly situated suffered injury in fact, including, but not limited to, denial of meaningful access to the benefits of a public education.

*E.E. et al. v. State of California, et al.,* Case No.: 3:21-cv-07585-SI          First Am. Compl.

As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continues to suffer loss of equal educational opportunity. Plaintiffs DREDF and The Arc of California have suffered injury in fact as a result of the diversion of its resources to respond to Defendants' illegal acts.

135.    Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiffs are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

136.    Plaintiffs seek injunctive and declaratory relief, damages and attorneys' fees and costs as a result.

## **PRAYER FOR RELIEF**

Plaintiffs pray this Court to enter judgment and provides the following relief:

1.      A declaration that Defendants' conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and 28 C.F.R. §§ 35.104, 36.104 (the "ADA") and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq. ("Section 504").

2.      An order certifying the class set out above.

3.      An injunction ordering Defendants to comply with Title II of the ADA and Section 504 of the Rehabilitation Act, and to ensure that their contractors, agents and assign also comply.

4.      An injunction requiring Defendants to establish a process for providing compensatory education in an amount to be determined by proof, including but not limited to damages under 42 U.S.C. § 12133, 29 U.S.C. § 794(a), including all applicable statutory damages to Plaintiffs and class members.

5.      Any other such damages as may be allowed under all the above federal and state laws.

6.      Plaintiffs' reasonable attorneys' fees and costs incurred in litigating both the administrative due process complaint and the instant action, including, but not limited to, fees arising under 42 U.S.C. §12205, 29 U.S.C. §794(b), and 20 U.S.C. § 1415(i)(2)(B).

7.     Such other and further relief as the Court deems just and proper.

Dated: September 28, 2021          Respectfully submitted,

/s/Melinda Bird (as authorized on Sept. 28, 2021)

Melinda Bird
Disability Rights California

/s/David German (as authorized on Sept. 28, 2021)

David German
Vanaman German LLP

/s/Claudia Center (as authorized on Sept. 28, 2021)

Claudia Center
DREDF

*Attorney for Plaintiffs*

33