UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E. E., *et al*.,

    Plaintiffs,

v.

STATE OF CALIFORNIA, *et al*.,

    Defendants.

Case No. 21-cv-07585-SI

**ORDER RE: PRELIMINARY INJUNCTION HEARING**

Plaintiffs' motion for a preliminary injunction is scheduled for a hearing on December 2 at 11:00 a.m. The Court directs the parties to be prepared to address the following questions:

Students Covered By TRO

1. What has happened with the 15 students covered by the TRO? From the briefing it appears that for at least some of these students, school districts planned to implement virtual instruction this week. Has that happened, and how has it been implemented, including for students at non-public schools?

2. Plaintiffs' December 1 filing states that counsel have identified 11 additional students from five school districts who need immediate relief. How many school districts are involved among all the 26 students? When are plaintiffs filing declarations regarding these students?

California Education Code

3. Cal. Educ. Code § 51745(a)(3) states that "independent study may include, but shall not be limited to, the following . . . (3) Individualized alternative education designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum."

Defendants state that this section does not categorically exclude students with disabilities

and that neither California nor federal law defines "alternative curriculum." What is the State's position about the meaning of "Independent study shall not be provided as an alternative curriculum"? Has the State provided any guidance to school districts about what this sentence means?

4. Plaintiffs assert that AB 130 imposed the requirement that disabled students can only participate in independent study if their IEPs provide for independent study. However, the School Boards' amicus brief at page 18 (Dkt. No. 54) states this is a longstanding requirement that predated AB 130. Which is correct?

5. Cal. Education Code § 46393 (which relates to funding in the event of a school closure due to an emergency) provides that school districts are required to have a plan for independent study during closures and that the plan "shall comply with all of the following:

> (1) Independent study is offered to any pupil impacted by any of the conditions listed in Section 46392 [listing various emergency conditions, including "epidemic"] within 10 days of the first day of a school closure or material decrease in attendance. *Pupils who are individuals with exceptional needs shall receive the services identified in their individualized education programs pursuant to paragraph (9) of subdivision (a) of Section 56345 and may participate in an independent study program.*"

(emphasis added).

Does this statutory requirement undercut the arguments about (1) the need for individualized determinations about whether independent study is appropriate for each disabled student and (2) the logistical and operational issues related to providing IEP services through independent study?

Administrative Exhaustion

6. On November 19, the Ninth Circuit issued an *en banc* decision in *D.D. v. Los Angeles Unified School District*, __ F.4th __, 2021 WL 5407763 (9th Cir. Nov. 19, 2021) (en banc). The court held that a disabled student who alleged that his school district violated the Americans with Disabilities Act was required to exhaust administrative remedies under the IDEA because the gravamen of the claim was the failure to provide a FAPE, notwithstanding the fact that he only sought compensatory damages, a remedy not available under IDEA. The court reached that decision because, *inter alia*, the complaint alleged that D.D. was denied accommodations (a behavioral aid)

1  that he needed to access his education, and that as a result he suffered loss of educational
2  opportunity.
3        Here, the complaint alleges that the students need the services in their IEPs in a virtual setting
4  to access their education, and that the denial of that accommodation has resulted in a loss of
5  educational opportunity.  Defendants note that after the TRO, plaintiffs' counsel emailed the school
6  districts of the 15 students covered by the TRO requesting that the districts "prepare a written offer
7  of FAPE for each student that utilizes virtual supports and instruction."  The proposed preliminary
8  injunction order directs defendants to direct districts to provide virtual instruction "including direct
9  assistance from trained instructors, opportunities for interaction with peers, and the supports and
10 accommodations in their IEPs needed for these students to meaningfully access their education" and
11 directing districts to notify families of their right to request compensatory education, which is an
12 IDEA remedy.   Why don't these facts show that plaintiffs are in fact seeking relief available under
13 IDEA and therefore that exhaustion is required?
14       7.    IDEA states that a parent can file an administrative due process complaint "with
15 respect to any matter relating to the identification, evaluation, or educational placement of [their]
16 child, or the provision of a free appropriate public education to such child[,]"  20 U.S.C.
17 § 1415(b)(6).  If a school district determines that FAPE can only be provided in-person and not
18 through independent study, can a parent challenge that "educational placement" through the
19 administrative process?
20       8.    Is it correct that as a result of AB 130, disabled students attending non-public school
21 are precluded from accessing any form of virtual instruction even if the non-public school is willing
22 and able to provide such instruction? Can these families seek relief through the IDEA administrative
23 process?

25       **IT IS SO ORDERED**.

27 Dated: December 1, 2021      _____
      SUSAN ILLSTON
28       United States District Judge