1  ROB BONTA
   Attorney General of California
2  JENNIFER G. PERKELL
   Supervising Deputy Attorney General
3  JENNIFER A. BUNSHOFT, State Bar No. 197306
   KEVIN L. QUADE, State Bar No. 285197
4  ELIZABETH N. LAKE, State Bar No. 267592
   ANTHONY C. PINGGERA, State Bar No. 320206
5  Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3377
7    Fax:  (415) 703-5480
     E-mail:  Jennifer.Bunshoft@doj.ca.gov
8  *Attorneys for Defendants State of California, State
   Board of Education, and California Department of
9  Education*

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15  | | |
    |---|---|
    | **E.E by and through her guardian ad litem A.J., L.N. by and through his guardian ad litem K.N., M.G. by and through his guardian ad litem, S.G., H.H. by and through her guardian ad litem M.H., and K.H. by and through her guardian ad litem C.H., on behalf of themselves and a class of those similarly situated; DISABILITY RIGHTS EDUCATION & DEFENSE FUND, and The ARC OF CALIFORNIA,** | Case No. 3:21-cv-7585 |
    | Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
    | **v.** | Date:         March 11, 2022 |
    | | Time:        10:00 a.m. |
    | **STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; and CALIFORNIA DEPARTMENT OF EDUCATION,** | Dept:        1, 17th Floor |
    | | Judge:      The Honorable Susan Illston |
    | Defendants. | Action Filed:  September 29, 2021 |

1    PLEASE TAKE NOTICE that on March 11, 2022, at 10:00 a.m., or as soon thereafter as

2   the matter may be heard before the Honorable Susan Illston, in the United States District Court

3   for the Northern District of California, Courtroom 1—17th Floor, located at 450 Golden Gate

4   Avenue, San Francisco, California, Defendants State of California; California State Board of

5   Education; and California Department of Education (collectively, Defendants), will and hereby do

6   move the Court to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and (6).

7    This Motion seeks dismissal of the First Amended Complaint (FAC) against Defendants on

8   the grounds that (1) Plaintiffs lack standing because their alleged injuries are not fairly traceable

9   to Defendants and cannot be redressed by an order against Defendants; (2) Plaintiffs have not

10   exhausted administrative remedies under the Individuals with Disabilities Education Act (IDEA);

11   (3) Plaintiffs' requested relief—an order requiring Defendants to mandate that local school

12   districts effect changes in educational placement without IEP team assessment and approval—

13   violates the IDEA; (4) Plaintiffs claims under the Americans with Disabilities Act (ADA) and

14   Section 504 of the Rehabilitation Act of 1973 seek an impermissible fundamental alteration to

15   California's education system; (5) Plaintiffs fail to state claims that California law categorically

16   excludes them from an at-home educational placement on the basis of their disabilities; and (6)

17   Plaintiffs have failed to join pertinent local school districts, who are required parties under

18   Federal Rule of Civil Procedure 19.

19    This Motion is based on this Notice of Motion and Motion, the concurrently filed

20   Memorandum of Points and Authorities, the Request for Judicial Notice, the pleadings and papers

21   filed in this matter, and the arguments of counsel at the time of the hearing.

22   Dated:  January 31, 2022                                    Respectfully Submitted,

23                                                                          ROB BONTA
                                                                            Attorney General of California
24                                                                          JENNIFER G. PERKELL
                                                                            Supervising Deputy Attorney General
25
                                                                            */s/ Jennifer A. Bunshoft*
26                                                                          JENNIFER A. BUNSHOFT
                                                                            Deputy Attorneys General
27                                                                          *Attorneys for Defendants*

28

1

# TABLE OF CONTENTS

2

**Page**

3

Issues to be Decided ........................................................................................................ 1

4

Memorandum of Points and Authorities ......................................................................... 1

Introduction ..................................................................................................................... 1

5

Factual and Procedural Background ................................................................................ 2

6

      I.      The Evolution of California's Response to COVID-19 and Schools ................... 2

7

      II.     The Operative First Amended Complaint .............................................. 5

Applicable Legal Standards ............................................................................................. 6

8

Argument ........................................................................................................................ 6

9

      I.      Plaintiffs Lack Standing Because their Alleged Injuries Are Not Traceable
             to Defendants' Conduct and Cannot Be Redressed in this Lawsuit ...................... 7

10

      II.     Plaintiffs' Claims Must be Dismissed Because they Failed to Exhaust

11

             Administrative Remedies Under the IDEA as a Mandatory Prerequisite to
             this Lawsuit ............................................................................................. 9

12

      III.    The Court May Not Award the Relief Plaintiffs Seek Because Any Such
             Court-Ordered Relief Would Contravene the Express Provisions of Federal

13

             Law Under the IDEA .................................................................................. 14

14

      IV.    Plaintiffs' ADA and Section 504 Claims Fail Because Plaintiffs Seek a
             Fundamental Alteration of the State Education System that those Statutes

15

             Do Not Require ........................................................................................ 18

16

      V.     Plaintiffs Also Fail to State a Claim Under the ADA and Section 504
             Because the Independent Study Statute Does Not Categorically Exclude
             Students with Disabilities from Participation ...................................... 22

17

      VI.    Plaintiffs' Failure to Join Local School Districts as Defendants Requires
             Dismissal of their Lawsuit .................................................................. 24

18

Conclusion .................................................................................................................... 25

19

20

21

22

23

24

25

26

27

28

Defendants' Notice of Mot. and Mot. to Dismiss FAC; Memo. of Points & Authorities  (3:21-cv-7585)

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5

*Alexander v. Choate*
   469 U.S. 287 (1985) .................................................................................. 19

6

*Alto v. Black*
   738 F.3d 1111 (9th Cir. 2013) ................................................................... 25

7

8

*Anchorage Sch. Dist. v. M.P.*
   689 F.3d 1047 (9th Cir. 2012) ...................................................... 15, 16, 17

9

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...................................................................... 6, 15, 18

10

11

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................ 15, 18

12

*Bostock v. Clayton Cty., Georgia*
   140 S. Ct. 1731 (2020) ............................................................................... 9

13

14

*Butt v. State of California*
   4 Cal.4th at 695 ......................................................................................... 9

15

*Carrie I. ex rel. Greg I. v. Hawaii Dep't of Educ.*
   869 F.Supp. 2d 1225 (D. Haw. 2012) ...................................................... 17

16

17

*Cervantes v. Countrywide Home Loans, Inc.*
   656 F.3d 1034 (9th Cir. 2011) ................................................................... 6

18

19

*Crofts v. Issaquah Sch. Dist.*
   __ F.4th __ (9th Cir. Jan. 12, 2022) ......................................................... 18

20

*D.D. v. Los Angeles Unified School District*
   18 F.4th 1043 (9th Cir. 2021) ...................................................... 11, 13, 14

21

22

*Doe v. Arizona Dep't of Educ.*
   111 F.3d 678 (9th Cir. 1997) .................................................................... 14

23

24

*E.E.O.C. v. Peabody Western Coal Co.*
   400 F.3d 774 (9th Cir. 2005) .................................................................... 25

25

26

*Fry v. Napoleon Community Schools*
   137 S. Ct. 743 (2017) ................................................... 10, 11, 12, 13

27

28

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Gill v. Whitford*
     __ U.S. __ (2018) ................................................................................................... 7

*Gregory K. v. Longview Sch. Dist.*
     811 F.2d 1307 (9th Cir. 1987) ........................................................................... 18

*Hamilton v. Brown*
     630 F.3d 889 (9th Cir. 2011) ............................................................................... 6

*Hoeft v. Tuscon Unified Sch. Dist.*
     967 F.2d 1298 (9th Cir. 1992) ........................................................................... 14

*In re Gilead Scis. Sec. Litig.*
     536 F.3d 1049 (9th Cir. 2008) ............................................................................. 6

*J.T. v. de Blasio*
     500 F.Supp. 3d 137 (S.D.N.Y. 2020) ............................................................... 16

*K.D. ex rel. C.L. v. Hawaii Dep't of Educ.*
     665 F.3d 1110 (9th Cir. 2011) ........................................................................... 15

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*
     725 F.3d 1088 (9th Cir. 2013) ........................................................................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*
     511 U.S. 375 (1994) ............................................................................................. 6

*L.J. by and through Hudson*
     850 F.3d 996, 1004-05 (9th Cir. 2017) ............................................................. 11

*Look v. United States*
     113 F.3d 1129 (9th Cir. 1997) ............................................................................. 8

*Lujan v. Defenders of Wildlife*
     504 U.S 555 (1992) .............................................................................................. 7

*Mark H. v. Lemahieu*
     513 F.3d 922 (9th Cir. 2008) ............................................................................. 19

*N.D. ex rel. Parents as Guardians Ad Litem v. Hawaii Dep't of Educ.*
     600 F.3d 1104 (9th Cir. 2010) .............................................................. 15, 16, 17

*N.E. ex rel. C.E. & P.E. v. Seattle Sch. Dist.*
     842 F.3d 1093 (9th Cir. 2016) ........................................................................... 15

iii

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3       *Navajo Nation v. Dep't of Interior*
4           876 F.3d 1144 (9th Cir. 2017)....................................................................... 6

5       *Oliver C. v. by and through Nichole C. v. Dep'y of Educ.*
            762 F.App'x 413 (9th Cir, 2019) ................................................................. 16
6
        *Olmstead v. L.C. ex rel. Zimring*
7           527 U.S. 581 (1999) ..................................................................................... 19

8       *Paul G. v. Monterey Peninsula Unified Sch. Dist.*
            933 F.3d 1096 (9th Cir. 2019).................................................................... 11
9
        *Payan v. Los Angeles Community College Dist.*
10          11 F.4th 729 (9th Cir. 2021)........................................................................ 19

11      *Payne v. Peninsula Sch. Dist.*
12          653 F.3d 863 (9th Cir. 2011) (en banc)................................................. 11, 17

13      *Preskar v. U.S.*
14          248 F.R.D. 576 (E.D. Cal. 2008) ................................................................. 9

15      *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*
            631 F.3d 1117 (9th Cir. 2011)...................................................................... 12
16
        *Republic of Philippines v. Pimentel*
17          553 U.S. 851 (2008)..................................................................................... 25

18      *S.B. v. California Dep. Of Educ.*
            327 F. Supp. 3d 1218 (E.D. Ca. 2018) ........................................................ 13
19
        *Soto v. Clark County Sch. Dist.*
20          2017 WL 3174916 (D. Nev.) ....................................................................... 14

21      *Steel Co.*, 523 U.S. at 109-10 .............................................................................. 9

22      *Student W. v. Puyallup Sch. District No. 3*
23          31 F.3d 1489 (9th Cir. 1994)....................................................................... 12

24      *Townsend v. Quasim*
            328 F.3d 511 (9th Cir. 2003) ....................................................................... 19
25
        *Wong v. Regents of the Univ. of Calif.*
26          192 F.3d 807 (9th Cir. 1999) ....................................................................... 19

27      *Zamani v. Carnes*
28          491 F.3d 990 (9th Cir. 2007) ......................................................................... 6

iv

# TABLE OF AUTHORITIES
### (continued)

Page

*Zukle v. Regents of the Univ. of Calif.*
   166 F.3d 1041 (9th Cir. 1999)................................................................................................ 19

**STATUTES**

20 U.S.C.
   § 1400(d)(1)(A)........................................................................................................... 10, 19
   § 1412(a)(4)...................................................................................................................... 20
   § 1414(a)(1)(A)................................................................................................................ 12
   § 1414(a)(1)(D)................................................................................................................ 12
   § 1414(d)...................................................................................................................... 4, 20
   § 1414(e)........................................................................................................................... 12
   § 1415(i)(2)....................................................................................................................... 10
   § 1415(b)(6)(A)................................................................................................................ 10
   § 1415(f)(1)(A)................................................................................................................. 10
   § 1415(f)(3)(A)................................................................................................................. 10
   § 1415(l)............................................................................................................................ 10

42 U.S.C.
   § 1415(i)(2)(A).......................................................................................................... 10, 14

2020 Cal. Stat. ch. 24 (S.B. 98)........................................................................................... 3

2021 Cal. Stat. ch. 44 (A.B. 130)......................................................................................... 3

Cal. Stats. 1979, c. 1014, § 3.............................................................................................. 23

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

California Education Code

4
    § 43503(b)(1)-(6) ................................................................... 20

    § 43511(b) ................................................................... 3, 20

5
    § 45000(a) ................................................................... 3

    §§ 45000 et seq. ................................................................... 2

6
    § 48200 ................................................................... 8

    § 51745(a) ................................................................... 3

7
    § 51745(a)(3) ................................................................... 5, 23

    § 51745(a)(3) ................................................................... 23

8
    § 51745(a)(6) ................................................................... 3

9
    § 51745(c) ................................................................... *passim*

    § 51745(c) ................................................................... 12

10
    § 51745(d) ................................................................... 23

    §§ 51745 et seq. ................................................................... 3, 23, 24

11
    § 51747 ................................................................... 3

12
    § 51747(b) ................................................................... 4, 22

    § 51747(d) ................................................................... 4, 22

13
    § 51747(g)(7) ................................................................... 23

    § 56026.3 ................................................................... 2, 23

14
    § 56028.5 ................................................................... 8

15
    § 56300 ................................................................... 8

    § 56302 ................................................................... 8

16
    § 56340 ................................................................... 8

    § 56344(c) ................................................................... 8

17
    § 56345 ................................................................... 4

    § 56501(a) ................................................................... 8, 10

18
    § 56504.5(a) ................................................................... 10

19
California Governmnet Code

20
    § 27727 ................................................................... 10

21
Americans with Disabilities Act (ADA) ................................................................... 1, 6, 19

22
Individuals with Disabilities Education Act ................................................................... *passim*

23
Rehabilitation Act § 504 ................................................................... *passim*

24

25

26

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

Federal Rule of Civil Procedure
  Rule 12(b)(1) ................................................................................................ 6
  Rule 12(b)(6) ................................................................................................ 6
  Rule 12(b)(6) ................................................................................................ 6
  Rule 19 ....................................................................................................... 25
  Rule 19(a) ................................................................................................... 25
  Rule 19(a)(1)(A) ..................................................................................... 24, 25
  Rule 19(a)(1)(A)-(B) ................................................................................... 25
  Rule 19(a)(1)(B)(i) ...................................................................................... 25
  Rule 19(b)(1)-(4) ........................................................................................ 25
  Rule 19(b)(4) .............................................................................................. 25

**REGULATIONS**

34 C.F.R. 300.31(a) ........................................................................................ 8

34 C.F.R. 300.116 ........................................................................................ 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUES TO BE DECIDED**

1. Do Plaintiffs have standing to bring their claims against Defendants?

2. Must Plaintiffs' complaint be dismissed for failure to exhaust administrative remedies?

3. Have Plaintiffs failed to state claims for violation of the ADA and Rehabilitation Act?

4. Should Plaintiffs complaint be dismissed for failure to join school districts because they are required parties under Federal Rule of Civil Procedure 19?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs are four students with disabilities and their guardians ad litem[1], as well as two organizations that are asserting claims on behalf of their clients.  Students Plaintiffs argue that the State of California, State Board of Education (SBE) and the California Department of Education (CDE) have discriminated against them based on their disability in violation of Title II of the federal Americans with Disabilities Act (ADA) and section 504 of the federal Rehabilitation Act, and have affirmatively stated that this case is not brought under the federal Individuals with Disabilities Education Act (IDEA).  Through their First Amended Complaint (FAC), Dkt. 56, Plaintiffs argue that California Assembly Bill 130, which makes the Independent Study program the only alternative to in-person instruction in the 2021-22 school year, discriminates against them based on their disabilities, because their respective Individualized Education Program (IEP) teams must concur that Independent Study is an appropriate placement.

Plaintiffs' lawsuit suffers from numerous defects and should be dismissed.  As a threshold matter, Plaintiffs lack standing to bring this lawsuit because their alleged injuries are not traceable to Defendants' conduct and cannot be redressed in this lawsuit.  The FAC should be dismissed for the additional reason that the Plaintiffs were required to, but failed to, exhaust administrative remedies prior to bringing their claims in this court.  Here, Plaintiffs fail to allege that they have exhausted administrative remedies by obtaining a decision from an administrative law judge or that exhaustion is excused.  Based on judicially-noticeable documents, it appears that at least

---

[1] Named plaintiff M.G. and his guardian ad litem, S.G., have requested voluntary dismissal from this lawsuit.  Dkts. 91, 93.

1   three of the six students identified by initials in the FAC *initiated* the administrative process to

2   address their claims—underscoring that the administrative remedy is, in fact, available to redress

3   the dispute over their educational placement under the IDEA.  Thus, this action was improperly

4   filed prior to the resolution or the filing of administrative actions.

5          The FAC fails to state claims for violations of the ADA and Section 504 for several

6   additional reasons.  The relief Plaintiffs seek through this lawsuit conflicts with the IDEA because

7   it would permit them to unilaterally override the individualized educational placement

8   determinations by local educational agencies (LEAs) (consisting of school districts, charter

9   schools, and county offices of education, Cal. Educ. Code § 56026.3), and the IEP team for each

10  student, a procedural safeguard established by Congress when it enacted the IDEA to ensure

11  appropriate placements.  In addition, Plaintiffs' ADA and Section 504 claims should be dismissed

12  because they seek a fundamental alteration of the State's education program.  The lawsuit should

13  also be dismissed for failure to join relevant LEAs that are indispensable parties.

14         To the extent Plaintiff students and the organizational Plaintiffs' clients may have been

15  denied a free and appropriate public education (FAPE) under the IDEA, Defendants support

16  Plaintiffs' ability to seek redress and obtain appropriate relief.  But the Defendants that Plaintiffs

17  have named and the forum Plaintiffs have selected in this action are not the correct ones—

18  Plaintiffs may pursue (and, indeed, a number of them are pursuing) relief through administrative

19  due process hearings, as Congress contemplated to resolve disputes about educational placements

20  and services for students with disabilities who have IEPs.  Relief from this Court is therefore

21  unwarranted and unsupported, and the FAC should be dismissed.

22                    **FACTUAL AND PROCEDURAL BACKGROUND**

23  **I.     THE EVOLUTION OF CALIFORNIA'S RESPONSE TO COVID-19 AND SCHOOLS**

24         California's response to COVID-19—generally and in schools—has evolved through the

25  pandemic to account for new data, new science, and new tools.  To address the unprecedented

26  shut down of the State, including educational facilities, the Legislature enacted Senate Bill (S.B.)

27  98, effective July 1, 2020, added California Education Code sections 45000 et seq., which

28  established a new instructional model, "distance learning," and authorized instruction, for the

2

1    2020-2021 school year only, to include distance learning, in-person learning, or a hybrid.  See

2    2020 Cal. Stat. ch. 24 (S.B. 98); Cal. Educ. Code, § 45000(a).  Distance Learning was established

3    because certain required elements of the only existing nonclassroom based instruction model,

4    Independent Study, could not be administered during the widespread closure of schools during

5    the height of the pandemic. For example, the requirements that Independent Study be voluntary or

6    that a classroom option be available could not be met when an entire LEA was closed.

7        In December 2020—shortly after the first two vaccines were authorized for emergency

8    use—the Governor announced the "Safe Schools for All" plan.  Defendants' Request For Judicial

9    Notice (RJN), Exh. A.  The plan was informed by "growing . . . evidence" of the decreased risks

10   of in-person instruction.  *Id*.  Vaccines became available to all Californians age 12 and older in

11   May 2021, and, in June, 2021, the Governor revoked the March 2020 stay-at-home order and the

12   May 2020 order authorizing the Blueprint that had previously governed closures.  RJN, Exh. B.[2]

13       The State's statutory authorization for distance learning during the 2020-21 school year

14   under S.B. 98 expired, by operation of law, on June 30, 2021. Cal. Educ. Code § 43511(b).  In

15   July 2021, the Legislature enacted, and the Governor signed, Assembly Bill 130, a 2021-2022

16   public-school-funding bill.  *See* 2021 Cal. Stat. ch. 44 (A.B. 130).  A.B. 130 expanded the

17   availability of the existing Independent Study program, by requiring LEAs to offer it to their

18   students for the 2021-22 school year only.  Cal. Educ. Code § 51745(a).  It also amended the

19   existing Independent Study provisions to add additional requirements and safeguards during the

20   2021-22 school year only.  Cal. Educ. Code §§ 51745 et seq.   For example, A.B. 130 permits

21   students whose parents determine their health would be put at risk by in-person instruction due to

22   COVID-19, to request independent study during the 2021-22 school year.  Cal. Educ. Code §

23   51745(a)(6).  As was the case pre-COVID, LEAs must enter into a written agreement with a

24   student's parent in order for them to be permitted to participate.  Cal. Educ. Code § 51747.  The

25   Legislature did not mandate that Independent Study be offered in a particular format for the 2021-

26   22 school year, nor did it guarantee that it would be an educationally appropriate placement for all

27

28       _____
         [2] COVID-19 vaccines subsequently became available for children age 5 through 11 as
     well, on October 29, 2021.  RJN, Exh. C.

1   students.  Rather the Legislature required that LEAs move students who are not making

2   satisfactory educational progress or are not meeting attendance requirements back into a

3   classroom-based program.  Cal. Educ. Code §§ 51747(b)(d); 51749.5(a)(8).

4         The Independent Study statute requires that IEP teams, which include parents, determine

5   whether FAPE can be provided in Independent Study for students with disabilities. Cal. Educ.

6   Code § 51745(c).  California incorporated and applied this requirement in its Independent Study

7   statute both *before* and after the enactment of A.B. 130.  *Compare* Cal. Educ. Code § 51745(c)

8   (2013) *with* Cal. Educ. Code § 51745(c) (2021).  The IDEA contains federally-required

9   procedural safeguards for parents, including that IEPs are developed and changed only by

10  agreement of the IEP team including the LEA and parent.  Cal. Educ. Code § 56345; 20 U.S.C. §

11  1414(d).  Thus, consistent with the IDEA's substantive and procedural protections, a student

12  identified by an IEP team as a student with a disability can only participate in Independent Study

13  if the student's IEP developed and agreed to by the LEA and the parent/guardian specifically

14  provides for that participation. Cal. Educ. Code § 51745(c).  Independent Study is a placement

15  option under state and federal law, and as such the IEP team must make an *individualized*

16  determination that an Independent Study placement is appropriate for a student based on the

17  student's individualized needs.

18        Immediately after the enactment of A.B. 130, the CDE began working on Frequently Asked

19  Questions (FAQs) regarding the implementation of Independent Study on this broader scale.

20  When CDE became aware of claims that some LEAs may be misinterpreting the Independent

21  Study requirements to preclude students with disabilities from participating in the program on the

22  basis that they could not work "independently" or that independent study was inappropriate if

23  supports and services are necessary under an IEP, CDE issued guidance on October 12, 2021, on

24  that point and others. RJN, Exh. D.  The guidance simply confirmed existing law that

25  Independent Study is indeed available for students with disabilities, as long as the IEP team

26  determines that a FAPE can still be provided with the required academic and other supports.  *Id.*

27  at 3. CDE emphasized that nothing in the statute supports imposing a condition that a student is

28  required to complete work independently in order to be eligible for independent study, and further

4

1   emphasized that state law "does not authorize a school district to refuse to consider providing

2   independent study to a student solely on the basis of the student's disability." *Id*.  CDE further

3   confirmed that, under federal law, independent study constitutes a "change of placement" for a

4   special education student, thus requiring an agreement of the parent/guardian and LEA during an

5   IEP meeting, or agreement to amend the IEP without a meeting.  *Id*. at 3.

6        CDE recently issued additional guidance confirming that Education Code 51745(a)(3),

7   which states that "[e]ducational opportunities offered through independent study may include, but

8   shall not be limited to, the following . . . (3) Individualized alternative education designed to

9   teach the knowledge and skills of the core curriculum. Independent study shall not be provided as

10  an alternative curriculum," does not preclude any students with disabilities from being placed in

11  independent study, "because Education Code Section 51745(c) says they can." *Id*. at 1. CDE

12  further explained that nothing in federal or state law precludes a student with an IEP from

13  participating in independent study with any supports or modifications the IEP team determines to

14  be appropriate and necessary to provide FAPE.  *Id*.  Instead, the "longstanding reference" to an

15  "alternative curriculum" simply states that LEAs "may not provide independent study as an

16  alternative curriculum."  *Id*. at 1-2. Thus, "[w]hen a student is placed in an independent study

17  program, they should receive access to the same curriculum they received when participating in

18  in-person instruction, not an alternative curriculum to the curriculum they were receiving when

19  participating in in-person instruction."  *Id*. at

20  **2   THE OPERATIVE FIRST AMENDED COMPLAINT**

21       On December 1, 2021, the day before the hearing on Plaintiffs' preliminary injunction

22  motion, Plaintiffs filed their FAC.  FAC, Dkt. 56.  Like the original complaint, the FAC alleges

23  that the Independent Study provisions of  AB 130 discriminate against students with disabilities

24  in comparison to other students because the "statute requires school districts to automatically

25  enroll non-disabled students in distance learning through Independent Study if their parents

26  determine that their 'health would be put at risk by in-person instruction,' but "in contrast,

27  students with disabilities face multiple hurdles in attempting to access the same program." *Id*. at

28  ¶ 2.  The FAC further alleges that the Independent Study program "is effectively closed to them

                                        5

1   because of the program design and absence of needed accommodations." *Id*., ¶ 1.  Plaintiffs thus

2   allege that "the exclusion of students with disabilities from access to distance learning through

3   Independent Study constitutes unlawful discrimination" in violation of Title II of the ADA and

4   Section 504 of the Rehabilitation Act. *Id*., ¶ 9, *see also* ¶¶ 100-104, 128-132.

5        The FAC requests declaratory and injunctive relief, including: (1) a declaration that

6   Defendants' conduct violates the ADA and Section 504; (2) an injunction ordering Defendants to

7   "comply" with the ADA and Section 504 and to "ensure that their contractors, agents, and assign

8   also comply;" and (3) an injunction requiring Defendants to establish a process for providing

9   compensatory education (a remedy available only under the IDEA). *Id*. at 32.

10                          **APPLICABLE LEGAL STANDARDS**

11        Defendants move for dismissal under Federal Rules of Civil Procedure, Rules 12(b)(1) and

12   12(b)(6).  Under Rule 12(b)(1), a court must dismiss a claim for lack of subject-matter

13   jurisdiction.  The party asserting federal subject-matter jurisdiction bears the burden of

14   establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).

15   Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim "where there is no

16   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

17   theory." *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007); *see Ashcroft v. Iqbal*, 556 U.S.

18   662, 678 (2009).  A court must accept as true the material factual allegations in the complaint.

19   *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).  However, a court need not accept as true

20   conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences." *In re*

21   *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Thus, a court should not "assume

22   the truth of legal conclusions merely because they are cast in the form of factual allegations."

23   *Navajo Nation v. Dep't of Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  Dismissal without leave

24   to amend is appropriate when the deficiencies in the complaint cannot be cured by

25   amendment.  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

26                                  **ARGUMENT**

27        Plaintiffs do not allege a viable cause of action against Defendants because: (1) Plaintiffs

28   lack standing because their alleged injuries are not traceable to Defendants' conduct or

                                        6

1    redressable against Defendants; (2) Plaintiffs failed to exhaust administrative remedies; (3) the

2    relief sought would contravene express provisions of the IDEA; (4) Plaintiffs fail to state a claim

3    for violation of the ADA/Section 504 because they seek an impermissible, fundamental alteration

4    of the State's education system; (5) Plaintiffs fail to state a claim under the ADA/Section 504

5    because the Independent Study Statute does not categorically exclude students with disabilities;

6    and (6) Plaintiffs failed to join necessary parties.

7    **I.**    **PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE NOT TRACEABLE TO DEFENDANTS' CONDUCT AND CANNOT BE REDRESSED IN THIS LAWSUIT**

8

9        Although they allege discriminatory exclusion from at-home educational placements in

10   violation of the ADA & § 504, *see* FAC ¶¶ 81-136, Plaintiffs cannot show that such injuries are

11   fairly traceable to any conduct of Defendants.  Moreover, because Defendants lack control over

12   LEAs in the provision of educational services to students with disabilities, Plaintiffs cannot obtain

13   relief from this Court that redresses the specific injuries alleged.  Because Plaintiffs fail to

14   demonstrate these critical standing elements, this Court lacks jurisdiction.

15        The Supreme Court has established an "irreducible constitutional minimum" of standing,

16   consisting of three elements: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly

17   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

18   favorable judicial decision.  *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018); *Lujan v.*

19   *Defenders of Wildlife*, 504 U.S 555, 560 (1992).

20        First, Plaintiffs cannot establish that their alleged injuries—wrongful exclusion from an at-

21   home educational placement—has any connection to Defendants' conduct.  If, as Plaintiffs have

22   alleged, LEAs are misinterpreting provisions in California's independent study framework to

23   improperly bar students with disabilities from that placement, *see, e.g.,* FAC ¶¶ 3-4, that conduct

24   cannot be fairly traced to the state-agency Defendants.  To the contrary, as explained in more

25   detail below, CDE has issued specific guidance to ensure that LEAs are aware that students with

26   disabilities have equal access to and may participate in Independent Study, so long as their IEP

27   team determines that such a placement can provide FAPE, as required under the IDEA.  *See* RJN

28   Exh. D.  If LEAs are ignoring the law and this guidance, and improperly excluding students who

<center>7</center>

1   otherwise qualify for Independent Study, that injurious conduct has nothing to do with the

2   Defendants. *See Look v. United States*, 113 F.3d 1129, 1132 (9th Cir. 1997) (finding no standing

3   where alleged injury not fairly traceable to defendant's conduct).

4       Likewise, where a student is denied an Independent Study placement because the student's

5   IEP team determines that FAPE cannot be provided in such a setting, Plaintiffs again fail to show

6   injurious conduct fairly traceable to Defendants.  Indeed, in this scenario, the federal IDEA's

7   mandatory procedural safeguards, and the LEA's adherence to those requirements, are the reasons

8   that Plaintiffs' demands for the Independent Study placements have been denied.  Defendants

9   engage in no "conduct" related to the individualized IEP process. *See, e.g.*, 34 C.F.R. 300.31(a).

10  Accordingly, to the extent such denials of Independent Study form the basis for this lawsuit, that

11  "injury" has no connection to any action taken by Defendants. *Look*, 113 F.3d at 1132.

12      Additionally, Plaintiffs cannot show that their injuries are redressable in this lawsuit.  As

13  explained, Plaintiffs' asserted ADA and § 504 injuries flow from inherently local conduct—the

14  denial (rightly or wrongly) of students with disabilities from participating in an Independent

15  Study placement.  California law places direct and sole responsibility for providing special

16  education services to individual students with LEAs, not Defendants.  Cal. Educ. Code § 48200.

17  The LEA is responsible for identifying students with disabilities, determining through the IEP

18  process which educational placements and related services are appropriate, and providing those

19  services.  Cal. Educ. Code §§ 56300, 56302, 56340, 56344(c).  Although Defendants have

20  general, systemic oversight of California's education system, they are not involved in providing

21  any direct special education services and do not have decision-making authority regarding the

22  appropriate placement or services for individual students.  Cal. Educ. Code §§ 56028.5, 56501(a).

23  Simply put, Defendants have no authority under state law to unilaterally dictate how LEAs

24  provide specific services to individual students.

25      Necessarily then, this lawsuit, in which Plaintiffs sued only state-level Defendants, cannot

26  result in relief that redresses Plaintiffs' specific injuries.  As for Plaintiffs' request that this Court

27  order Defendants to "ensure" that LEAs comply with the ADA and § 504, *see* FAC at 32, this

28  Court cannot order Defendants to exercise a power that they do not have.  That would violate

8

1   principles of comity and separation of powers.  *See generally*, *Bostock v. Clayton Cty., Georgia*,

2   140 S. Ct. 1731, 1738 (2020) ("If judges could add to, remodel, update, or detract from old

3   statutory terms inspired only by extratextual sources and our own imaginations, we would risk

4   amending statutes outside the legislative process reserved for the people's representatives.") ;

5   *Preskar v. U.S.*, 248 F.R.D. 576, 584 (E.D. Cal. 2008) (federal courts lacked authority to

6   unilaterally amend California Penal and Education Codes); *Butt v. State of California,*, 4 Cal.4th

7   at 695 ("[p]rinciples of comity and separation of powers place significant restraints on courts'

8   authority to order or ratify acts normally committed to the discretion of other branches or

9   officials.")  Moreover, by their requested injunctive relief, Plaintiffs are effectively asking the

10  Court to overrule the Legislature and nullify AB 130 and revive SB 98 for certain students, and

11  subordinate the IDEA to the ADA and Rehabilitation Act.  Thus, this relief would violate

12  separation-of-powers principles for that additional reason and cause substantial harm to the State.

13  Defendants have no state-law authority to ensure that LEAs act in a particular way with

14  respect to certain students.  Plaintiffs thus cannot show that a favorable decision in this lawsuit

15  will redress the specific denial-of-placement injuries asserted in their complaint. Thus, this Court

16  lacks jurisdiction because Plaintiffs cannot establish standing.  *Steel Co.*, 523 U.S. at 109-10.

17  **II.    PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY FAILED TO EXHAUST**
    **ADMINISTRATIVE REMEDIES UNDER THE IDEA AS A MANDATORY PREREQUISITE**
18  **TO THIS LAWSUIT**

19  Although Plaintiffs nominally allege unlawful discrimination, in substance they are

20  objecting to the IDEA's requirements for changing educational placements.  Because the

21  gravamen of Plaintiffs' ADA and Section 504 claims seeks relief for an alleged denial of FAPE

22  under the IDEA based on the IEP team's refusal to agree to the parents' proposed change of

23  educational placement to Independent Study, they were required to exhaust administrative

24  remedies prior to bringing this lawsuit.  However, the FAC contains no allegations that the named

25  student Plaintiffs, or the student clients of the organizational Plaintiffs, exhausted their

26  administrative remedies.  Thus, their lawsuit should be dismissed for failure to exhaust.

27  The purpose of the IDEA is to "ensure that all children with disabilities have available to

28  them a free appropriate public education that emphasizes special education and related services

9

1   designed to meet their unique needs." 20 U.S.C. §1400(d)(1)(A).  Whenever there is a

2   disagreement regarding a proposal, or refusal, to initiate or change the identification, evaluation,

3   or educational placement of an individual child, or the provision of a FAPE, a parent may request

4   an administrative "due process" hearing against the LEA.  Cal. Educ. Code § 56501(a); 20 U.S.C.

5   §§ 1415(b)(6)(A), (f)(1)(A).  Specifically, under Section 1415, any party may present a complaint

6   "with respect to any matter relating to the identification, evaluation, or educational placement of

7   the child, or the provision of a free appropriate public education to such child . . ." 20 U.S.C. §

8   1415(b)(6)(A).[3]  Filing the complaint is not enough to exhaust the administrative remedy; the

9   plaintiff must obtain a final decision from OAH.  *See* Section 1415(i)(2)(A).  Any party aggrieved

10  by the findings and decision of the ALJ may then file suit.  20 U.S.C. § 1415(i)(2).

11       When a suit seeks to challenge the adequacy of special education provided pursuant to an

12  IEP, a plaintiff must adhere to the procedures of the IDEA.  *See Fry v. Napoleon Community*

13  *Schools*, 137 S. Ct. 743, 752 (2017).  Significantly, here, exhaustion is required for all claims for

14  which relief could have been granted pursuant to Section 1415(f), which provides that:  ". . .

15  before the filing of a civil action under such laws [Section 504, ADA, and other federal laws

16  protecting the rights of children with disabilities] seeking relief that is also available under this

17  subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as

18  would be required had the action been brought under this subchapter [i.e., the IDEA]."  20 U.S.C.

19  § 1415(l).  Thus, in order to file a federal civil action under the ADA and section 504 of the

20  Rehabilitation Act that seeks relief available under the IDEA, a party must first exhaust the

21  IDEA's administrative remedy.  20 U.S.C. § 1415(l).

22       The law is clear that exhaustion of administrative remedies is required as long as the

23  gravamen of a complaint seeks redress for a school's failure to provide a FAPE, "even if not

24  phrased or framed in precisely that way" or whether or not "a complaint includes (or,

25  alternatively, omits) the precise words 'FAPE' or 'IEP'."  *Fry,* 137 S. Ct. 743 at 755; *see also*

---

26       [3] Under the IDEA, the person conducting the due process hearing must be impartial and
    independent from the State Education Agency.  20 U.S.C. § 1415(f)(1)(A), (f)(3)(A).  In
27  California, the CDE meets this obligation by contracting with the Office of Administrative
    Hearings (OAH) for the services of Administrative Law Judges (ALJs).  Cal. Educ. Code §
28  56504.5(a); Cal. Gov. Code § 27727.

1  *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 880 (9th Cir. 2011) (en banc), *cert. denied*, 132 S.

2  Ct. 1540 (2012), overruled in part on other grounds, *Albino v. Baca*, 747 F.3d 1162, 1171 (9th

3  Cir. 2014) (en banc) (where claim arises based on alleged denial of a FAPE, even if pled as

4  disability discrimination, "exhaustion is clearly required"); *Paul G. v. Monterey Peninsula*

5  *Unified Sch. Dist.*, 933 F.3d 1096, 1102-1102 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2672

6  (2020) (where gravamen of plaintiff's Section 504 claim was alleged denial of a FAPE, claim was

7  barred for failure to exhaust under IDEA).  If a lawsuit charges a denial of a FAPE, the plaintiff

8  cannot escape the exhaustion requirement through artful pleading.  *Fry*, 137 S. Ct. at 755.  In

9  *D.D. v. Los Angeles Unified School District,* the Ninth Circuit, en banc, recently held that, where

10  the remedial basis of a complaint brought exclusively under the ADA is the denial of FAPE,

11  exhaustion under the IDEA is required.  *D.D.,* 18 F.4th 1043, 1049-51, 1054-58 (9th Cir. 2021)

12  (en banc).  The Court explained that, although the Plaintiff  labeled his claim an ADA claim,

13  because the complaint focused on the "core components of a FAPE," such as the denial of

14  accommodations and supportive services needed to access an education, and the loss of

15  educational opportunity, the district court properly dismissed the complaint for failure to comply

16  with the IDEA's exhaustion requirement.  *Id*. at 1054-55, 1058.

17      Here, Plaintiffs' FAC similarly focuses on core components of a FAPE.  For example,

18  Plaintiffs have alleged that they currently receive a number of different services as part of their

19  IEPs, including one-to-one instructional aides, mental-health support, and specialized

20  developmental instruction, among others. [4]  *See generally* FAC, ¶¶ 46-51.  They further alleged

21  that these services are critical to their continued educational progress, and are primarily

22  concerned with how and when they will receive these IDEA-required special education services

23  through Independent Study.  FAC, ¶¶ 51-58.  Thus, when LEAs have offered Independent Study

24  without special education services, Plaintiffs have declined these offers as inadequate to meet

25  their needs under the IDEA.  (FAC, ¶¶ 61-69.)  Whether or not the LEA's offer of FAPE is

26

27  [4] Such specially designed instruction can include, among other things, utilization of specific instructional strategies, individualized mental health services, clinical interventions, and one-to-one instructional aides.  *See L.J. by and through Hudson*, 850 F.3d 996, 1004-05 (9th Cir.

28  2017).

11

1   appropriate to meet the student's needs is an issue for determination by an IDEA administrative

2   hearing officer.

3        Plaintiff's claim that California's statutory scheme for Independent Study is inconsistent

4   with the ADA is in fact an allegation that the IEP team's determination that the student cannot be

5   provided FAPE in that setting is wrong, and is thus subject to exhaustion.  Plaintiffs specifically

6   challenge the requirement in the Independent Study statue that students with IEPs must have a

7   determination that the change in placement can provide a FAPE, but that requirement is necessary

8   to comply with IDEA's procedural requirements.  20 U.S.C. §§ 1414(a)(1)(A), (a)(1)(D), (e); Cal.

9   Educ. Code, 51745(c).  Whether or not an LEA's failure to offer independent study denied FAPE,

10  and whether or not the state's statutory scheme on independent study somehow prevented an LEA

11  from offering FAPE, are matters for determination by an IDEA administrative hearing officer.

12  Plaintiffs' lawsuit seeks to circumvent the IDEA by bypassing the IEP process and the required

13  administrative process specifically designed to address disputes regarding placement and the

14  provision of FAPE.

15       Plaintiffs specifically allege that they are entitled to "compensatory education," FAC, ¶ 79,

16  a form of equitable relief available only under the IDEA's remedial scheme.[5]  *See, e.g., R.P. ex*

17  *rel. C.P. v. Prescott Unified Sch. Dist.,* 631 F.3d 1117, 1125-26 (9th Cir. 2011); *Student W. v.*

18  *Puyallup Sch. District No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994).  This further underscores that

19  their claims arise under the IDEA, and fundamentally seek relief for an alleged denial of FAPE.

20  See FAC, at 32.

21       The application of the Supreme Court's *Fry* test for determining whether the gravamen of

22  the complaint concerns the denial of FAPE further can only lead to the conclusion that this

23  lawsuit is concerned with denial of FAPE under the IDEA.  Under that test, a court asks whether:

24  (1) the plaintiffs could have brought essentially the same claim if the alleged conduct had

25  occurred at a public facility other than a school; and (2) whether an adult at the school (i.e., a non-

26  student employee or visitor) could have pursued the same claim.  *Fry*, 137 S. Ct. at 756.  Where

27  _____

28      [5] Plaintiffs have provided no authority suggesting such relief is authorized or appropriate
    under the ADA or Rehabilitation Act, but such relief is well-recognized under the IDEA.

12

the answers are "no," this suggests the gravamen is a denial of FAPE.

Here, both questions must be answered in the negative because, as discussed above, the claims concern the alleged failure to provide a particular educational placement and services specific to individual students, which are key components of an IEP.  Plaintiffs could not have not have bought these claims against a public entity not subject to the IDEA.  Nor could an adult at a school have brought such claims.

Further evidence that this lawsuit is fundamentally premised on a denial of FAPE is that at least three of the students identified in the FAC had, before filing this lawsuit, already invoked IDEA's administrative complaint procedures regarding their education before the OAH.  *See* RJN*,* Exhs. E-G.)  Prior pursuit of the IDEA's administrative remedies is "strong evidence that the substance of a plaintiffs' claim concerns denial of a FAPE, even if the complaint never explicitly uses that term." *Fry,* 137 S. Ct at 757; *see also D.D*., 18 F.4th at 1055.  Here, each of the administrative complaints filed by some of the identified students in the FAC shortly before filing this action alleges harm under the IDEA in addition to ADA and Section 504.  RJN, Exh. E, pp. 13-15; Exh. F, pp. 12-14; Exh. G, pp. 15-16.)  The prospective relief they seek is focused on the decisions of the students' IEP teams and any resulting denial of FAPE.  (*Id*., Exh. E, p. 15; Exh. F, p. 15; Exh. G, pp. 16-17.)  More specifically, each complaint requests that the OAH find that the LEA has denied the student FAPE since the beginning of the 2021-22 school year.  (*Id*. Exh. E, ¶ VI.1; Exh. F, ¶ VI.1; Exh. G, ¶ VI.1.)  Thus, Plaintiffs' concurrent administrative due process complaints support the conclusion that the gravamen of the lawsuit's claims seek relief for an alleged denial of FAPE under the IDEA.  *Fry,* 137 S. Ct at 757; *D.D*., 18 F.4th at 1055.

Because Plaintiffs' claims must be addressed under the IDEA, they are subject to the IDEA's exhaustion mandate.  *See, e.g*., *D.D*., 18 F.4th at 1049-51, 1054-55 (plaintiff was required to exhaust administrative remedies prior to bringing his ADA complaint because he alleged the LEA failed to provide necessary accommodations and supportive services to access his education, which are "core components of a FAPE"); *S.B. v. California Dep. Of Educ.,* 327 F. Supp. 3d 1218, 1253 (E.D. Ca. 2018) ("Plaintiffs' FAC and briefs in opposition to the motion to dismiss fail to articulate a separate and distinct basis how S.B. was denied equal access to the benefits of a

13

1  public education that is not based on FAPE"); *Soto v. Clark County Sch. Dist.,* 2017 WL 3174916

2  at *4 (D. Nev.), *aff'd*, 744 F.App'x 529 (9th Cir. 2018) (claim that student was "denied . . . the

3  opportunity to participate in or benefit from public education" could be addressed pursuant to the

4  IDEA.  The exhaustion requirement serves the important function of ensuring that a fact-finder

5  with subject-matter expertise can assess whether denial of FAPE occurred and, if so, develop

6  appropriate individualized relief, which may include compensatory education, both of which are

7  highly fact specific and individualized determinations.  *Hoeft v. Tuscon Unified Sch. Dist.*, 967

8  F.2d 1298, 1303 (9th Cir. 1992).  Courts may excuse a party's failure to exhaust administrative

9  remedies where: (1) exhaustion would be futile; (2) the educational agency has adopted a policy

10 or pursued a practice of general applicability that is contrary to law; or (3) it is improbable that

11 adequate relief can be obtained by pursuing administrative remedies.  *Doe v. Arizona Dep't of*

12 *Educ.*, 111 F.3d 678, 681, 683-84 (9th Cir. 1997) (finding exhaustion not excused); *Hoeft*, 967

13 F.2d at 1303 (same).  However, Plaintiffs have not alleged that they are excused from the

14 exhaustion mandate, and they have the burden of alleging and supporting that exhaustion is

15 excused.

16     Because Plaintiffs' claims necessarily and inescapably seek relief for an alleged denial of

17 FAPE under the IDEA, Plaintiffs are required to exhaust the IDEA's administrative process.

18 They fail to allege in their FAC that they have exhausted administrative remedies by completing

19 an OAH hearing and are aggrieved by the final written decision issued by the ALJ, which is their

20 burden in establishing exhaustion and the prerequisite to filing a civil action.  See 42 U.S.C., §

21 1415(i)(2)(A).  Their failure to exhaust mandates dismissal.  *D.D.*, 18 F.4th at 1054-1058.

22 **III.   THE COURT MAY NOT AWARD THE RELIEF PLAINTIFFS SEEK BECAUSE ANY SUCH**
   **COURT-ORDERED RELIEF WOULD CONTRAVENE THE EXPRESS PROVISIONS OF**
23 **FEDERAL LAW UNDER THE IDEA**

24     The federal IDEA mandates specific procedures when an individual student with

25 disabilities seeks a change in educational placement, like a move from in-person instruction to at-

26 home virtual instruction.  Plaintiffs here seek an impermissible judicial exemption from these

27 procedures.  They ask this Court for relief that would require Defendants to ensure that LEAs

28 afford students with disabilities an at-home placement, which under the IDEA is a change in

14

placement, without the required individualized determination of the IEP team of the appropriateness of such placement under the IDEA.  Because Plaintiffs seek relief that this Court may not grant without ignoring, and thus contravening, federal law, their lawsuit must be dismissed.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Ninth Circuit has repeatedly explained "that 'a change in educational placement relates to whether the student is moved from one type of program—i.e., regular class—to another type—i.e., home instruction.'"  *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1056-57 (9th Cir. 2012) (quoting *N.D. ex rel. Parents as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1116-17 (9th Cir. 2010)).  That is precisely what Plaintiffs seek here: a change from their current in-person placement to an at-home virtual placement.  The Ninth Circuit has defined "current education placement" as "the placement set forth in the child's last implemented IEP."  *N.E. ex rel. C.E. & P.E. v. Seattle Sch. Dist.*, 842 F.3d 1093, 1096 (9th Cir. 2016); *K.D. ex rel. C.L. v. Hawaii Dep't of Educ.*, 665 F.3d 1110, 1118 (9th Cir. 2011).  Plaintiffs have not alleged that any of the students affected by their proposed injunction have an at-home placement written into their last-implemented IEP.  Indeed, their requested relief—a court order requiring the availability of an at-home placement option—establishes the opposite.

Moreover, although Plaintiffs allege that they simply seek to maintain the distance learning instruction they received in the prior academic year, *see* FAC, at ¶ 13, that temporary statewide transition did not alter the IDEA placement status for students with disabilities, and is no longer available to any student.[6]  "System wide administrative decisions" in a state's delivery of education that apply to all students do not trigger a change in placement for purposes of the IDEA.  *N.D.*, 600 F.3d at 1116-17.  These types of "across the board" decisions that impact *all students*—disabled and non-disabled alike—"do[] not conflict with Congress's intent of

---

[6] The United States Department of Education's Office of Special Education Programs (OSEP) provided guidance that the "exceptional circumstances" in spring 2020 warranted "flexibility" in federal disability laws governing the needs to disabled students.  RJN, Exh. H. OSEP thus explained that the provision of a FAPE could include special education and other services provided through distance instruction like that described in the statutory scheme enacted in California for the 2020-21 school year.  *Id*.

15

protecting disabled children from being singled out." *Id.* at 1116.  California's closure of schools and subsequent transition of its education system to a distance-learning format for the 2020-2021 school year applied equally to all students, including those with IEPs. *Id.* at 1116-17.  And the same is true for California's system-wide return of its student population to in-person instruction in the 2021-2022 academic year. *Id.*  Indeed, in the context of the COVID-19 pandemic, a district court in New York reached this exact conclusion, ruling that New York City's systemic decision to transition to remote learning was one of "general applicability" and, as a result, did not effect changes in placement under the IDEA. *J.T. v. de Blasio*, 500 F.Supp. 3d 137, 188-90 (S.D.N.Y. 2020) (citing *N.D.*, 600 F.3d at 1116-17).

Accordingly, since the last-implemented IEPs for students affected by the proposed permanent injunction do not mandate at-home instruction, the current placement status quo for these students remains their pre-pandemic IEP placement—in-person instruction.  Necessarily then, what Plaintiffs seek here are non-systemic, individualized changes in placement, from the current status quo of in-person instruction to an at-home virtual instruction program. *M.P.*, 689 F.3d at 1056-57; *N.D.*, 600 F.3d at 1116.  Such changes in placement trigger application of the rigorous procedural protections of the IDEA, and prevent this Court from unilaterally ordering the requested relief.

To the extent Plaintiffs maintain that their requested relief merely implicates a change in location that does not trigger IDEA procedures, this is incorrect.  To be sure, location alone is not the dispositive factor.  In *Oliver C.*, for example, a student's transfer from one school district to another did not implicate a change in placement because the student remained in a classroom setting and his new school was deemed capable of implementing his existing IEP. *Oliver C. v. by and through Nichole C. v. Dep'y of Educ.*, 762 F.App'x 413, 414-15 (9th Cir, 2019).  The Ninth Circuit has explained, however, that a change in placement occurs "when there is a significant change in the student's program." *N.D.*, 600 F.3d at 1116.  That is exactly what Plaintiffs seek here—a change in the educational program being provided.  Indeed, the Ninth's Circuit has repeatedly recognized the fundamental changes inherent in shifting from in-person to at-home instruction in its repeated holdings that such programmatic alterations constitute a change in

16

1  placement.  *M.P.*, 689 F.3d 1047, 1056-57; *N.D.*, 600 F.3d at 1116; *accord Carrie I. ex rel. Greg*

2  *I. v. Hawaii Dep't of Educ.*, 869 F.Supp. 2d 1225, 1239 (D. Haw. 2012).  A move to at-home

3  instruction inherently implicates alterations in the means and method of delivery for the student's

4  educational services, triggering the IEP team's obligation to determine what supports and services

5  are appropriate in that new placement in order to provide of FAPE.  Even if the IEP team

6  ultimately determines that the supports and services needed in an Independent Study placement

7  are identical to those provided in the IEP for in-person instruction that does not mean a change in

8  placement has not occurred because those supports will still necessarily be delivered differently.

9      Plaintiffs ask this Court to order Defendants to require LEAs to effect individualized

10  changes in placements, but in complete *circumvention of* the IDEA's mandated determination of

11  the best educational placement for each individual student in advance of the change in placement.

12  Plaintiffs seek an order from this court that would mandate a change of placement for the affected

13  students, and then ask the LEAs to back into the determination of what supports and services can

14  be provided in that setting, disregarding the fact that there may be instances where FAPE cannot

15  be provided.[7]  This is a complete subrogation of the IDEA to the ADA and Section 504.

16  Controlling case law clearly states that this is the not law.

17      As the Ninth Circuit has squarely held, "Congress has specifically and clearly provided

18  that the IDEA *coexists with* the ADA and other federal statutes." *K.M. ex rel. Bright v. Tustin*

19  *Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013) (emphasis added).  Although students

20  have a right to be reasonably accommodated for their disabilities under the ADA and Section 504,

21  that right does not supersede or eclipse the separate requirements of the IDEA, which mandate

22  that those claims first be addressed within, and pursuant to, the IDEA's framework.  *Payne v.*

23  *Peninsula Sch. Dist.*, 653 F.3d at 875 (disabled student's challenge to school district's failure to

24  accommodate his special needs had to first be addressed under IDEA before student could seek

25  relief under the ADA).  Nor can these statutes be used as a discretionary tool for parents to

26  ───────────────
    [7] Plaintiffs are essentially demanding that the Court require IEP teams to provide FAPE to
27  students placed in Independent Study, even where the IEP team determines that FAPE cannot be
    provided to a particular student in Independent Study.  The LEA will be placed in the impossible
28  position of either allegedly violating the ADA by not placing the student in Independent Study or
    violating the IDEA by not providing FAPE to the student.

unilaterally force their preferred educational placement. *Cf. Crofts v. Issaquah Sch. Dist.*, __ F.4th __, 2022 WL 109011 at *7 , (9th Cir. Jan. 12, 2022) (school districts are not required to use a parent's preferred methodology for providing services, but rather the focus is on whether the district's chosen methodology is appropriate); *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987) (a school district's proposed placement is not inappropriate simply because the student's parents prefer an alternative placement).

Under Supreme Court and Ninth Circuit precedent, this Court cannot treat Plaintiffs' accommodation claims under the ADA as though they are entirely distinct or divorced from the rights, and corresponding obligations of the State and LEAs, mandated by the IDEA. The IDEA was enacted precisely to prevent the exact types of unilateral and unreviewed changes in placement requested here that may ultimately hinder a student's educational progress. This Court may not, under the auspices of the ADA and Section 504, order relief that violates the IDEA's separate protections and safeguards. Plaintiffs fail to state claims for relief that can be granted and, thus, their lawsuit must be dismissed. *See Twombly*, 550 U.S. at 566; *Iqbal*, 556 U.S. at 679.

## IV. PLAINTIFFS' ADA AND SECTION 504 CLAIMS FAIL BECAUSE PLAINTIFFS SEEK A FUNDAMENTAL ALTERATION OF THE STATE EDUCATION SYSTEM THAT THOSE STATUTES DO NOT REQUIRE

Plaintiffs also fail to state viable ADA and Section 504 claims because those statutes do not require the fundamental alteration to California's educational delivery system that Plaintiffs seek. Plaintiffs appear to seek two types of "accommodations" here. First, Plaintiffs seek an order that would require that a student with disabilities be placed in Independent Study at the unilateral request of the parent, without regard to whether the IEP team determines a FAPE could be provided to the student in Independent Study. FAC, ¶¶ 13, 100, 131. Second, Plaintiffs seek the alleged accommodation or modification of "meaningful access to distance learning programs that are comparable to the programs they received during the 2020-21 school year." FAC, ¶¶ 13, 70, 71. Plaintiffs' claims necessarily would require restructuring California's current public education scheme, but such fundamental alterations are not required by federal disability law. It would also require LEAs to provide Independent Study in a manner not provided to non-disabled students, essentially grafting a new programmatic requirement not imposed by current law.

1          Title II of the ADA and Section 504 generally require public entities to make "reasonable

2    modifications" to policies, practices, and procedures to avoid disability discrimination. *Payan v.*

3    *Los Angeles Community College Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Mark H. v. Lemahieu*,

4    513 F.3d 922, 937-38 (9th Cir. 2008).  However, such modifications are not required where the

5    requested change would "'fundamentally alter the nature of the service, program, or activity,'"

6    *Payan*, 11 F.4th at 738 (quoting 28 C.F.R. § 35.130(b)(7)(i)); *accord Townsend v. Quasim*, 328

7    F.3d 511, 518 (9th Cir. 2003); *see also Zukle v. Regents of the Univ. of Calif.*, 166 F.3d 1041,

8    1046 (9th Cir. 1999) (ADA and Section 504 do not require an institution to "make fundamental or

9    substantial alterations to its programs or standards" to accommodate students with disabilities.)  A

10   fundamental alteration is a change that "compromise[s] the essential nature" of the program.

11   *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (addressing fundamental alterations in Section

12   504 context); *see Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603-06 (1999) (addressing

13   fundamental alterations in ADA context).  When requesting accommodations under the ADA,

14   Plaintiffs bear the initial burden of demonstrating both (1) that a reasonable accommodation

15   exists and (2) that the accommodation would allow them to meet the educational institution's

16   essential eligibility requirements. *Wong v. Regents of the Univ. of Calif.*, 192 F.3d 807, 816 (9th

17   Cir. 1999).  Defendants can rebut this claim by demonstrating that the requested accommodation

18   is not reasonable because it would substantially alter the relevant academic program. *Id*. at 817.

19          With respect to the requested accommodation that students with disabilities be

20   automatically placed in Independent Study with necessary special education services and

21   supports, at the parents' request, this would clearly violate the IDEA and state law.  Despite their

22   allegations to the contrary, Plaintiffs are not just seeking accommodations under the ADA and

23   Section 504, but are seeking IDEA relief as well because they are requesting a change in

24   placement and special education supports in their IEPs, which is governed by laws that they seek

25   to bypass in this instance.  Regardless of whether a claim arises under the ADA, Section 504, or

26   the IDEA, when implementing any accommodation or form of special education, LEAs are

27   required to guarantee that their students receive a free and appropriate public education (FAPE).

28   20 U.S.C. § 1400(d)(1)(A).  Under the statutory scheme, a student's IEP team is empowered to

<div align="center">19</div>

1    make determinations about whether a particular placement would provide a FAPE.  20 U.S.C. §§

2    1412(a)(4), 1414(d); 34 C.F.R. 300.116.  Here, as discussed above, even prior to A.B. 130's

3    amendments to the Independent Study statute, students with disabilities could only be placed in

4    Independent Study if the IEP team determined it was an appropriate placement based on the

5    student's individual needs, Cal. Educ. Code, § 51745(c), consistent with the IDEA's requirement

6    that changes in placement be made by the IEP team.  Enjoining that provision of the Independent

7    Study statute in order to bypass the requirement that students with disabilities only be placed in

8    Independent Study with the IEP team's approval, would represent a fundamental alternation of

9    the State's education program and violate federal law.

10          Furthermore, the requested "accommodation" of students with disabilities receiving access

11   to distance learning programs comparable to the programs they received during the 2020-21

12   school year, would also constitute a fundamental alteration of the State's education program,

13   because the Legislature did not authorize distance learning for any students in the 2021-22 school

14   year.  Plaintiffs' requested relief directly targets the essential nature of the Legislature's chosen

15   education policies and procedures for the 2021-2022 academic year, including, most importantly,

16   a return to in-person instruction.  As detailed above, due to the COVID-19 pandemic, during the

17   2020-21 school year, all but a few LEAs in the State transitioned from an in-person instruction

18   model to a distance learning model for all students, disabled and non-disabled alike, under which

19   they were required to comply with numerous obligations relating to distance learning.  See Cal.

20   Educ. § 43503(b)(1)-(6).   This drastic change to California's historic instructional model of in-

21   person education for school-aged children was, from the outset, explicitly and deliberately

22   designed to be temporary, and to protect the health and safety of all students, families, teachers

23   and staff. *See* Cal Educ. Code § 43511(b) (distance learning statutes automatically became

24   inoperative on June 30, 2021, and are repealed by operation of law on January 1, 2022). The

25   statutory distance learning authorization was a specific, tailored, and limited response to once-in-

26   a-century circumstances.  This authorization has now lapsed, and the California Legislature has

27   made a deliberate systemic policy decision to return to its traditional model of in-person

28   schooling for the 2021-2022 academic year.  Because all schools are required to offer in-person

20

1    instruction during the 2021-22 school year, subject only to the Independent Study provisions, the

2    vast majority of students are back in the classroom.

3        AB 130 sets forth specific minimum requirements of an Independent Study program as a

4    condition of apportionment, but it otherwise does not restrict how an LEA structures the modality

5    or structure of its program.  Thus, an LEA could offer Independent Study in a manner that, from a

6    student's or parent's perspective, looks and feels like distance learning provided in 2020-21, or it

7    could offer something different in 2021-22 based on the availability of staff and depending on the

8    number of students who have sought an Independent Study option.

9        Plaintiffs' lawsuit seeks to overrule the Legislature through a court-ordered reversion to

10   distance learning, which was a time-limited (and now sunset) statutory authorization necessitated

11   by an unprecedented public-health crisis, only for students with disabilities who request it.  This

12   proposed judicial carveout directly undercuts the State's deliberate systemic policy choice to

13   return to in-person instruction as the default for all of California's public-school students,

14   including students with disabilities with IEPs, while strengthening the existing Independent Study

15   program to allow this alternative for students whose parents believe in-person instruction would

16   pose a health risk.  Indeed, it is evident from Plaintiffs' FAC that they do not seek mere

17   accommodation within California's current statutory scheme, but rather, a return to the type of

18   virtual instruction they experienced in the prior academic year. FAC ¶ 13.

19       The requested relief constitutes a fundamental alteration in two related respects: first, by

20   overriding the Legislature's determination to let sunset the authorization for distance learning,

21   and, second, by forcing LEAs to revert to the prior year program for only a subset of students,

22   rather than all students as occurred under distance learning in 2020-21, creating significantly

23   greater administrative, staffing, and implementation challenges, in light of LEAs' ongoing legal

24   obligation to other students in 2021-22.  Indeed, despite Plaintiffs' underlying premise that the

25   Independent Study statute discriminates against students with disabilities in comparison to

26   nondisabled students because it denies them alternative to in person instruction that it provides to

27   other students, *see, e.g.*, FAC at ¶¶ 2, 8, Plaintiffs are actually asking to be provided Independent

28   Study in a manner that is not provided to nondisabled students, because nondisabled students are

21

1    not entitled to the now-expired distance learning.  Moreover, Plaintiffs' requested relief would

2    further alter the Independent Study program by permitting them to remain in that placement so

3    long as they choose regardless of whether they are making satisfactory educational progress or

4    meeting attendance requirements.  In contrast, other students who are not making satisfactory

5    educational progress in Independent Study or are not meeting attendance requirements are not

6    entitled to stay in Independent Study.  Cal. Educ. Code §§ 51747(b)(d); 51749.5(a)(8).

7         Plaintiffs' demand that Independent Study be offered in the same manner as distance

8    learning last year violates the State's statutes and would require the creation or modification of an

9    educational program that is not offered to nondisabled students.  This goes beyond what is

10   required by the ADA or Section 504.  By requiring a specific mode of virtual instruction that is

11   not contemplated under California's in-person instructional model, Plaintiffs' requested relief

12   would fundamentally alter the essential nature of the State's delivery of public school instruction.

13   **V.    PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER THE ADA AND SECTION 504
        BECAUSE THE INDEPENDENT STUDY STATUTE DOES NOT CATEGORICALLY
14      EXCLUDE STUDENTS WITH DISABILITIES FROM PARTICIPATION**

15        Plaintiffs allege that the State's "design" of the Independent Study program excludes

16   students with disabilities.  FAC, ¶¶ 53-60.  Specifically, they allege that certain LEAs have taken

17   the position that Independent Study excludes students with disabilities who require a "modified

18   curriculum" and those who need adult assistance and other supports and accommodations to

19   learn.  *Id*.  Thus, Plaintiffs' arguments are based on their allegations that *LEAs* have denied

20   requests for students with disabilities to be placed in independent study based on these grounds.

21   If, as Plaintiffs' contend, IEP teams are mistakenly denying certain students with disabilities

22   Independent Study based on their incorrect interpretation of the statute, despite the law and

23   CDE's guidance to the contrary, that does not state a claim for a violation of the ADA or Section

24   504 against Defendants.  Instead, the remedy is for affected students to file a due process claim

25   against the LEA and seek a determination from an ALJ that the LEA misapplied the statute in

26   denying the request for a change in placement.

27        Plaintiffs allege that a large urban school district announced that it "will only offer the

28   general education curriculum without any special education services," and other students with

1    IEPs "have been denied Independent Study because they are on an alternate/alternative

2    curriculum."  FAC, ¶¶ 60.  Plaintiffs also affirmatively allege that the Independent Study statute

3    "excludes students with disabilities who require a modified curriculum."  FAC, ¶¶ 58-59.

4    Plaintiffs' interpretation of the provision is incorrect, as is the interpretation of any LEA that

5    interprets it to exclude students with disabilities from Independent Study.

6         Section 51745(a)(3) provides that "Independent study shall not be provided as an

7    alternative curriculum."  Cal. Educ. Code § 51745(a)(3).  That provision, with its "alternative

8    curriculum" limitation was added to the statute in 1989.  *See* S. B. 1563, Reg. Sess. (Cal. 1989),

9    Stats. 1989, c. 1089, § 5.  There is no clear indication on the face of section 51745 that

10   subdivision (a)(3) was intended to restrict the availability of independent study to students with

11   disabilities.  To the contrary, other provisions, both within that statute and the broader

12   independent study scheme, affirmatively point in the opposite direction.  Subdivision (c) of

13   section 51745, for instance, explicitly carves out an ability for students with IEP to participate in

14   independent study.  That provision states, "[a]n individual with exceptional needs, as defined in

15   Section 56026, shall not participate in independent study, unless the pupil's individualized

16   education program . . . specifically provides for that participation."  Cal. Educ. Code § 51745(c).

17   This allowance has been in the independent study framework since the late 1970s.  *See* former

18   Cal. Educ. Code § 51745(d) (West 1979); *see also* Cal. Stats. 1979, c. 1014, § 3.

19        Recent legislative additions to the statutory scheme likewise confirm the availability of

20   independent study for students with IEPs.  Indeed, in A.B. 130—the very legislation Plaintiffs

21   allege works to exclude them from at-home instruction—the Legislature added section

22   51747(g)(7), which explicitly contemplates the participation of students with disabilities in

23   independent study.  That provision mandates that written agreements for independent study

24   include, where applicable, "[a] statement detailing the academic and other supports that will be

25   provided to address the needs of . . . individuals with exceptional needs in order to be consistent

26   with the pupil's individualized education program . . . ."  Cal. Educ. Code § 51747(g)(7).

27   California's statutory framework for independent study thus clearly recognizes the ability of

28

1    students with disabilities to participate in independent study, provided that their IEP teams

2    approve the placement and amend the IEP accordingly.

3         Moreover, as confirmed by recently issued guidance, the CDE "does not interpret [the

4    "alternative curriculum"] language to preclude any students with disabilities from being placed in

5    independent study, because *Education Code* Section 51745(c) says they can."  RJN, Exh. D at 1.

6    Previously-issued guidance from CDE following passage of AB 130, similarly confirms that

7    students with disabilities who need adult assistance and other supports and accommodations to

8    learn are not excluded from Independent Study.  RJN, Exh. D (stating that Independent Study is

9    an option for all students with disabilities, provided that the student's needs are evaluated and it is

10   determined if a FAPE can be provided with supports in Independent Study and that the

11   availability of independent study for students with disabilities is not premised on a student's

12   ability to complete work "independently" or without the supports indicated in their IEPs.")  CDE

13   has also unequivocally stated that state law "does not authorize a school district to refuse to

14   consider providing independent study to a student solely on the basis of the student's disability."

15   *Id*. at 3.

16        CDE has thus clearly refuted any suggestion that section 51745 or the need for adult

17   support to learn act as any bar to Independent Study in the special education context. Instead, the

18   relevant statutes explicitly and repeatedly acknowledge the availability of independent study for

19   students with disabilities, subject to individualized IEP consideration of the appropriateness of

20   such a placement, as required by the IDEA.  Accordingly, if LEAs have denied Independent

21   Study to Plaintiffs solely based on the misunderstanding that Independent Study is not available

22   for students that need adult support to learn, or based on the "alternative curriculum" provision,

23   Plaintiffs' remedy is to pursue their claim against the LEA through the administrative process.

24   **VI.    PLAINTIFFS' FAILURE TO JOIN LOCAL SCHOOL DISTRICTS AS DEFENDANTS
             REQUIRES DISMISSAL OF THEIR LAWSUIT**

25

26        Under Rule 19 of the Federal Rules of Civil Procedure an action may dismissed for failure

27   to join all "required" parties.  Fed. R. Civ. P. 19(a)(1)(A).  Plaintiffs elected to name only state

28   Defendants in this action.  LEAs, however, are directly responsible for providing educational

1   services to individual students.  Plaintiffs' deliberate failure to join these critical parties requires

2   dismissal of this lawsuit.

3          Rule 19's compulsory-joinder analysis is a three-step process.  *E.E.O.C. v. Peabody*

4   *Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  The court must first determine whether a

5   person or entity is a "required party," meaning that their absence will act as a barrier to "complete

6   relief" for the existing parties, or will "impair or impede" their ability to protect their legal

7   interests.  Fed. R. Civ. P. 19(a)(1)(A)-(B); *Alto v. Black*, 738 F.3d 1111, 1125-26 (9th Cir. 2013).

8   Where a party is deemed "required," the court next considers whether joinder is "feasible"—i.e.,

9   whether venue and jurisdiction would be proper.  Fed. R. Civ. P. 19(a); *Alto*, 738 F.3d at 1126;

10  *Peabody Western Coal*, 400 F.3d at 779.  Finally, where joinder is not feasible, the court must

11  determine whether the action should be dismissed in "equity and good conscience" based on

12  considerations of prejudice to absent and existing parties.  Fed. R. Civ. P. 19(b)(1)-(4); *Republic*

13  *of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008).

14         As explained above, Defendants have no authority under state law to unilaterally dictate

15  how LEAs provide specific services to individual students.  And since an order of relief against

16  the state Defendants cannot bind LEAs conduct here, such an order cannot constitute "complete

17  relief."  Fed. R. Civ. P. 19(a)(1)(A).  Moreover, even if this Court's order could theoretically bind

18  the LEAs (a proposition for which Plaintiffs have cited no authority), failure to join the LEAs

19  would substantially "impede and impair" their ability to assert their own interests.  *See* Fed. R.

20  Civ. P. 19(a)(1)(B)(i).  From a feasibility standpoint, Plaintiffs and the other students certainly

21  know the identity of their own LEAs, and thus joinder poses no impediment to this Court's

22  jurisdiction.  *See* Fed. R. Civ. P. 19(a); *Peabody Western Coal*, 400 F.3d at 779.

23         Moreover, dismissal would not leave Plaintiffs without remedy because each student

24  remains free to seek a desired change in placement through the IEP process and may avail

25  themselves of the administrative due process hearing procedure.  Fed. R. Civ. P. 19(b)(4).

26                                    **CONCLUSION**

27         For the foregoing reasons, Plaintiffs' FAC should be dismissed without leave to amend.

28

                                         25

1

Dated:  January 31, 2022                          Respectfully Submitted,

2
                                                  ROB BONTA
3                                                 Attorney General of California
                                                  JENNIFER G. PERKELL
4                                                 Supervising Deputy Attorney General

5                                                 _/s/ Jennifer A. Bunshoft_
                                                  JENNIFER A. BUNSHOFT
6                                                 Deputy Attorneys General
                                                  _Attorneys for Defendants_
7
SF2021304708
8 Final Motion to Dismiss.docx

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

# CERTIFICATE OF SERVICE

Case Name:  **E.E.; A.J.; L.N.; through**          No.   **3:21-cv-7585**
            **guardian ad litem K.N., et al. v**
            **State of California; SBE; and**
            **CDE**

I hereby certify that on <u>January 31, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT with exhibits A-H**

- **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 31, 2022</u>, at San Francisco, California.

|   Giomara Guardado   |   */s/ Giomara Guardado*   |
|:---:|:---:|
| Declarant | Signature |

SF2021304708
43064598.docx